# EXHIBIT

# 7



# NATIONAL ARCHIVES

February 6, 2012

Daniel Epstein
Executive Director
Cause of Action
2100 M Street Suite 170-247
Washington, D.C. 20037

<u>Re:  Freedom of Information Act Appeal NGC12-012A</u>

Dear Mr. Epstein:

This is in response to your Freedom of Information Act (FOIA) appeal of January 5, 2012.  In the original request received from Amber Taylor, dated October 3, 2011, you asked for access to the records of the Financial Crisis Inquiry Commission (FCIC or Commission) that were transferred to the National Archives and Records Administration (NARA) from the House Committee on Oversight and Government Reform.  In our initial response of December 1, 2011, you were advised that in our view the records of the FCIC do not qualify as "agency records" for purposes of the Freedom of Information Act, as they were transferred into NARA's custody from the Legislative branch of government.  You were further informed that the Commission established a five-year restriction on public access to its non-public records, and that NARA will not accept requests for public access until February 11, 2016.

In your appeal, you argue that NARA has possession and control of the documents within the meaning of FOIA law, and therefore that FCIC's records now enjoy "agency record" status, citing to *Department of Justice v. Tax Analysts,* 492 U.S. 136 (1989), and related case law. Your appeal makes a secondary argument taking issue with NARA's invocation of 44 U.S.C. 2108(a) in support of applying access restrictions.  In your view, section 2108 of the Federal Records Act, constitutes insufficient authority for FCIC to invoke restrictions or for NARA to accept restrictions on access placed by the FCIC.  We understand this portion of your appeal to be alleging that NARA is holding out section 2108(a) as a "(b)(3)" withholding statute, as in your view section 2108(a) fails to meet the relevant FOIA test.

For the reasons stated below, I affirm NARA's original denial of your FOIA request for FCIC records on the grounds that these are legislative branch records that are not subject to the FOIA.

NATIONAL ARCHIVES *and*
RECORDS ADMINISTRATION

8601 ADELPHI ROAD
COLLEGE PARK, MD 20740-6001
*www.archives.gov*

Letter to Daniel Epstein, Page 2 of 5

A proper analysis of the legal issues raised by your FOIA appeal must begin with the factual circumstances regarding transfer of FCIC records into NARA's custody.

First, on February 10, 2011, contemporaneous with the imminent termination of the FCIC, the Chairman of the FCIC, Phil Angelides, wrote to the Archivist of the United States, David Ferriero, providing detailed instructions to "set forth the Commission's continued interest in government and public access to information created or gathered during its investigation," in which the Chairman "establishe[d] criteria under which these records should be made available." (See attached at Tab A.) As set out in the Chairman's letter, NARA is to make the FCIC's records available to the public "to the greatest extent possible consistent with the terms of this letter," beginning on February 13, 2016 (five years after the termination of the FCIC by statute). The letter also went on to detail specific instructions as to which records should not be disclosed after February 13, 2016, if they contain (a) personal privacy information; (b) confidential financial supervisory or regulatory information; (c) proprietary business information which remains confidential or contains trade secrets; or (d) information otherwise barred from disclosure as determined by the Archivist. The letter further states that "[b]ecause the Commission was established in the legislative branch, its records have not been subject to the Freedom of Information Act (FOIA), and we understand that the FOIA will not apply to Commission records even after they are transferred to NARA."

Second, accompanying the Chairman's letter was a signed Standard Form 258, "Agreement to Transfer Records to the National Archives of the United States," Accession No. NN3-148-11-001, signed and countersigned by representatives of the FCIC and NARA (attached at Tab B). The Agreement contains as Box 12 under "Records Information," in which in answer to the question "Are records fully available for public use," the corresponding box is checked "No." The Agreement also contains language striking out a reference to 5 U.S.C. 552 under "Terms of Agreement." Those terms go on to specify that the records are now the responsibility of the Archivist of the United States pursuant to 44 U.S.C. 2108 to continue to maintain, in fulfillment of the Archivist's obligations under the Federal Records Act.

As a matter of law, there is no question that the FCIC's records were exempt from the FOIA at the time of their creation. The FCIC was established by the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. 111-21, under the auspices of the Legislative branch. As such, the Commission's records were properly deemed "legislative branch records," excluded from FOIA, while in the possession of the FCIC during the entirety of the Commission's existence. See *United We Stand Am, Inc. v. IRS*, 359 F.3d 595, 597 (D.C. Cir. 2004).

x

You cite to *Tax Analysts* for the proposition that material constituting an "agency record" must be in the possession and control of an executive branch agency that is subject to FOIA. However, under longstanding D.C. Circuit precedent, the matter of "control" is determined by analyzing the legislative branch's intent contemporaneous with transfer of possession. In particular, under a line of authority starting with *Goland v. CIA,* 607 F.2d 339 (D.C. Cir. 1978), *vacated in part on other grounds,* 607 F.2d 367 (D.C. Cir. 1979), *cert. denied,* 445 U.S. 927 (1980), courts have seen fit to find that congressional-originated documents retain their status and are *not* considered to be "agency records" subject to FOIA, where the "conditions under which [the documents] were transferred to the agency" indicate that "Congress established '*contemporaneous* and *specific* instructions' to the agency limiting either the use or disclosure of the documents." *Center for National Security Studies v. CIA,* 577 F. Supp. 584, 588 (D.D.C. 1983) (quoting *Paisley v. CIA,* 712 F.2d 686, 692, 694 (D.C. Cir. 1983)), *vacated in part on other grounds,* 742 F.2d 201 (D.C. Cir. 1984) (emphasis in *Paisley*).

Here, based on the FCIC Chairman's letter stating explicitly "that the FOIA will not apply to Commission records even after they are transferred to NARA," NARA is on notice that the transfer evidenced legislative intent to maintain legislative control over the document's confidentiality. *Accord, Goland,* 607 F.2d at 347 (court finding "Congressional intent to maintain Congressional control over the document[s'] confidentiality"). As such, NARA does not consider that control has passed from the legislative branch sufficiently to establish that NARA has "free disposition," *id.* at 348, to treat these legislative branch records as being subject to FOIA. *Id.* at 348.

In our view, the fact that the records in question have been transferred to NARA's legal custody under the Federal Records Act is not otherwise dispositive of the FOIA access question. First, the D.C. Circuit has rejected the notion that "the treatment of documents for disposal and retention purposes under the various federal records management statutes determines their status under FOIA." *Consumer Federation of America v. Dep't of Agriculture,* 455 F.3d 283, 289 (D.C. Cir. 2006), *citing Bureau of Nat'l Affairs v. Dep't of Justice,* 742 F.2d 1484, 1493 (D.C. Cir. 1984).

Second, courts have long recognized that there are types of archival records in NARA's legal custody where access restrictions are controlled by the terms of other statutes or by donor intent. *See, e.g., Ricchio v. Kline,* 773 F.2d 1389 (D.C. Cir. 1985) (holding that access to Nixon materials in NARA's custody were controlled by the Presidential Materials and Preservation Act (PRMPA), 44 U.S.C. 2111 note, and not by FOIA). For example, NARA's older Presidential Libraries hold vast collections of Presidential materials created prior to the Presidential Records Act, 44 U.S.C. 2201, and to the PRMPA, that were owned originally by

Letter to Daniel Epstein, Page 4 of 5

the former Presidents and then donated to NARA under a deed of gift. There has never been a challenge that these presidential materials, transferred under donor agreements, are to be considered "agency records" subject to FOIA, and the mere fact that NARA is in possession of such records does not convert their status wholesale to such "agency records."

With respect to your secondary argument on appeal, we believe NARA's organic statute at 44 U.S.C. 2108(a) does, in fact, buttress our position that the Archivist of the United States has the authority to uphold and respect FCIC's instructions with regard to imposing restrictions on future access to what were legislative branch records in FCIC's custody.

> [W]hen the head of a Federal agency states, in writing, restrictions that appear to him to be necessary or desirable in the public interest with respect to the use or examination of records being considered for transfer from his custody to the Archivist, the Archivist shall, if he concurs, impose such restrictions on the records so transferred . . .. In the event that a Federal agency is terminated and there is no successor in function, the Archivist is authorized to relax, remove, or impose restrictions on such agency's records when he determines that such action is in the public interest.

Contrary to what you assert in your appeal letter, the FCIC is a "Federal agency" within the meaning of the Federal Records Act, 44 U.S.C. 2901(14) (the term includes establishments in the executive, legislative and judicial branches, with exceptions). This definition in the FRA of "Federal agency" differs significantly from the FOIA definition of "agency," 5 U.S.C. 552(F)(1), which is limited only to executive branch entities. Thus, the Archivist may act pursuant to section 2108 to uphold restrictions placed by a federal agency from the legislative branch. While in our view the FCIC could have imposed a stricter nondisclosure regime on its legislative branch records that were transferred to NARA under the FRA, section 2108 provides a statutory mechanism for the Archivist to accept *lesser* restrictions on access, such as FCIC's stated intent that its non-public records be disclosed in five years subject to conditions that would appear to be consistent with the FOIA. Your further references to section 2108 not meeting the requirements of an Exemption 3 statute under the FOIA, 5 U.S.C. 552(b)(3), are inapposite, as Exemption 3 comes into play only where "agency records" are at issue, which is not the case here.

Letter to Daniel Epstein, Page 5 of 5

This exhausts your administrative remedies.  Judicial review is available to you in the United States District Court for the judicial district in which you reside, in the District of Columbia, which is where the records reside.

Sincerely,

DEBRA STEIDEL WALL
Deputy Archivist of the United States

Enclosures

# Tab A

February 10, 2011

The Honorable David Ferriero
Archivist of the United States
National Archives and Records Administration
8601 Adelphi Road
College Park, MD 20740

Dear Mr. Ferriero:

Phil Angelides
*Chairman*

Hon. Bill Thomas
*Vice Chairman*

Brooksley Born
*Commissioner*

Byron S. Georgiou
Commissioner

Senator Bob Graham
*Commissioner*

Keith Hennessey
*Commissioner*

Douglas Holtz-Eakin
*Commissioner*

Heather H. Murren, CFA
*Commissioner*

John W. Thompson
*Commissioner*

Peter Wallison
*Commissioner*

Wendy Edelberg
*Executive Director*

When the Financial Crisis Inquiry Commission (the "Commission") terminates, by statute, on February 13, 2011, the records of the Commission will be transferred to the National Archives and Records Administration (NARA) for preservation and public access. This letter sets forth the Commission's continued interest in government and public access to information created or gathered during its investigation and establishes criteria under which these records should be made available.

The Commission has established a policy of making available to the public as much information as possible, while safeguarding personal privacy, law enforcement, private commercial, financial regulatory, and other sensitive information. The Commission's final report is highly detailed and discloses a significant amount of previously unavailable material. In addition, the Commission has released through its website many supplemental documents, including staff memoranda, documentary evidence, e-mails, witness statements, interviews, transcripts and summaries, audio and video files, and press releases. All of the records and information that the Commission has made available to the public should continue to be made publicly available by NARA. This includes the records that are accessible on the Commission's website, which NARA will maintain after February 13, 2011, and on the Commission's parallel website which the Commission will establish at Stanford University. Because the Commission was established in the legislative branch, its records have not been subject to the Freedom of Information Act (FOIA), and we understand that the FOIA will not apply to Commission records even after they are transferred to NARA.

The Commission recommends to NARA that records not already publicly available should be made available to the public, to the greatest extent possible consistent with the terms of this letter, beginning on February 13, 2016. The Commission encourages NARA to conduct a systematic review of the records that are not currently available to the public with the goal of releasing to the public as much information as is allowable by law and regulation on February 13, 2016, or as soon thereafter as possible. Records should not be disclosed immediately after February 13, 2016, if they contain (a) personal privacy information that the Commission agreed to protect from public disclosure for longer than 5 years; (b) confidential financial supervisory or regulatory information which remains sensitive at the time of release; (c) proprietary business information which remains confidential or contains trade secrets at the time of release, including any such information that the Commission has agreed will remain confidential for a longer period of time; or (d) information which is otherwise barred from public disclosure by law, as determined by the Archivist.

We understand that there will be an initial period of at least several months during which NARA's staff will be organizing and processing the Commission's records. During this period, access to the records should be provided to the ten members of the Commission (Phil Angelides, the Honorable Bill Thomas, Brooksley Born, Byron S. Georgiou, Senator Bob Graham, Keith Hennessey, Douglas Holtz-Eakin, Heather H. Murren, John W. Thompson and Peter J. Wallison) and the following members of the Commission staff and advisors: Wendy Edelberg, Peter Kadzik, Esq., Gretchen Newsom, Scott Ganz, Gary Cohen, Greg Feldberg, Chris Seefer, Maryann Haggerty, and Cassidy Waskowicz.   In addition, certain administrative staff of the Commission may have access as part of their duties to transfer the records to NARA. During the period when the FCIC transfers records to NARA and after February 13, 2011, it is important that the ten Commissioners and the designated members of the Commission staff and advisors have continuing access to the Commission's records once the records are transferred to NARA.

Thank you for your cooperation in carrying out the important task of preserving and providing access to the Commission's voluminous records.

Very truly yours,

Phil Angelides
Chairman
Financial Crisis Inquiry Commission

Cc:     Members, Financial Crisis Inquiry Commission
        Gary M. Stern, NARA
        Wendy Edelberg, Executive Director
        Cassidy Waskowicz, Deputy General Counsel

**Tab B**

## AGREEMENT TO TRANSFER RECORDS TO
## THE NATIONAL ARCHIVES OF THE UNITED STATES

*JRC*

**1. INTERIM CONTROL NO. (NARA Use Only)**

### TERMS OF AGREEMENT

The records described below and on the attached ____ pages are deposited in the National Archives of the United States in accordance with 44 U.S.C. 2107. ~~The transferring agency certifies that any restrictions on the use of these records are in conformance with the requirements of 6 CFR 502.~~

In accordance with 44 U.S.C. 2108, custody of these records becomes the responsibility of the Archivist of the United States at the time of transfer of the records. It is agreed that these records will be administered in accordance with the provisions of 44 U.S.C. Chapter 21, 36 CFR XII, 36 CFR (not 1256, and such other rules and regulations as may be prescribed by the Archivist of the United States (The Archivist). Unless specified and justified below, no restrictions on the use of these records will be imposed other than the general and specific

restrictions on the use of these records will be imposed other than the general and specific restrictions on the use of records in the National Archives of the United States that have been published in 36 CFR Part 1256 or in the *Guide to the National Archives of the United States*. The Archivist may destroy, donate, or otherwise dispose of any containers, duplicate copies, unused forms, blank stationery, nonarchival printed or processed material, or other non-record material in any manner authorized by law or regulation. Without further consent, the Archivist may destroy deteriorating or damaged documents after they have copied in a form that retains all of the information in the original document. The Archivist will use the General Records Schedule and any applicable records disposition schedule (SF 115) of the transferring agency to dispose of nonarchival materials contained in this deposit.

| | |
|---|---|
| **2A. AGENCY APPROVAL**<br>Signature _____ Date 2/11/11 | **3A. NARA APPROVAL**<br>Signature _____ Date 2/8/2011 |
| **2B. NAME, TITLE, MAILING ADDRESS**<br>Sarah Zuckerman<br>Financial Crisis Inquiry Commission<br>1717 Pennsylvania Ave, NW<br>Washington, DC 20006 | **3B. NAME, TITLE, MAILING ADDRESS**<br>Matt Fulgham<br>Assistant Director, Center for Legislative Archives (NARA)<br>700 Pennsylvania Ave, NW<br>Washington, DC 20408 |

### RECORDS INFORMATION

**4A. RECORDS SERIES TITLE**   Records of the Financial Crisis Inquiry Commission

**4B. DATE SPAN OF SERIES** 2009-2011   *(Attach any additional description)*

**5A. AGENCY OR ESTABLISHMENT**
Legislative branch commission

**5B. AGENCY MAJOR SUBDIVISION**

**5C. AGENCY MINOR SUBDIVISION**

**5D. UNIT THAT CREATED RECORDS**

**5E. AGENCY PERSON WITH WHOM TO CONFER ABOUT THE RECORDS**
Name: Sarah Zuckerman
Telephone Number: 202-292-1388

**6. DISPOSITION AUTHORITY:**
pending records schedule (NN1-148-  )

**7. IS SECURITY CLASSIFIED INFORMATION PRESENT? _X_ NO ___ YES**
LEVEL: ___ Confidential ___ Secret ___ Top Secret
SPECIAL MARKINGS: ___ RD/FRD ___ SCI ___ NATO ___ Other
INFORMATION STATUS: ___ Segregated ___ Declassified

**8. CURRENT LOCATION OF RECORDS**
_X_ Agency (Complete 8A only)
___ Federal Records Center (Complete 8B only)

**8A. ADDRESS:**
1717 Pennsylvania Ave, NW
Washington, DC 20006

**8B. FRC ACCESSION NUMBER**   **CONTAINER NUMBERS**   FRC LOCATION

**9. PHYSICAL FORMS**
_X_ Paper Documents
_X_ Paper Publications
___ Microfilm/Microfiche
_X_ Electronic Records
___ Photographs
___ Posters
___ Maps and Charts
___ Architng Drawings
___ Motion/Sound/Video
___ Other (specify):

**10. VOLUME:**
Cu. Mtr.: ___ Cu.Ft.: 293  Number: 293  Type: FRC
CONTAINERS:

**11. DATE RECORDS ELIGIBLE FOR TRANSFER TO THE ARCHIVES**
Feb. 2011

**12. ARE RECORDS FULLY AVAILABLE FOR PUBLIC USE?**
___ YES   _X_ NO   *(If no, attach limits on use and justification)*

**13. ARE RECORDS SUBJECT TO THE PRIVACY ACT?**
___ YES   _X_ NO
*(If yes, cite Agency System Number and Federal Register volume and page number of most recent notice and attach a copy of this notice.)*

**14. ATTACHMENTS**
___ Agency Manual Except
___ Additional Description
___ Privacy Act Notice
_X_ Other (specify): Access letter
___ Listing of Records Transferred
___ NA Form 14097 or Equivalent
___ Microform Inspection Report
___ SF (s) 135

### NARA PROVIDES

**5. SHIPPING INSTRUCTIONS TO AGENCIES/REMARKS REGARDING DISPOSITION**

**RG 148**

**6. RECORDS ACCEPTED INTO THE NATIONAL ARCHIVES OF THE UNITED STATES**
Signature _____ Date 3/11/11

**17. NATIONAL ARCHIVES ACCESSION NO.**
NN3-148-11-001

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

SF 258 (9/95)
Prescribed by NARA 36 CFR 1228