**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
CAUSE OF ACTION, INC.,                    )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          1:12-cv-1342 (JEB)
                                          )
NATIONAL ARCHIVES AND                     )
RECORDS ADMINISTRATION,                   )
                                          )
                    Defendant.            )
———————————————————————)


<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO**</u>
<u>**DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.   Statutory Background. ..............................................................................................2

    II.  Factual and Procedural Background. ........................................................................5

STANDARD OF REVIEW ..................................................................................................8

ARGUMENT ........................................................................................................................9

    I.   This FOIA Lawsuit Must Be Dismissed, Because Legislative Records Are Not
        Subject to FOIA. ....................................................................................................9

        A.  The FCIC Was a Legislative Agency, and Therefore Its Records Are Not
             Subject to FOIA. ............................................................................................10

        B.  Practical Considerations Also Confirm that FOIA Does Not Apply to
             Legislative Records Transferred to NARA's Custody. .........................................16

            1.   Interference with NARA's Administrative Scheme for Orderly
                 Processing Legislative Records. ....................................................................16

            2.   Improper Release of Sensitive Information. ...................................................18

    II.  Even Assuming NARA's Control of the Records Affects the Analysis, the
        Records Here Are Still Legislative Records Not Subject to FOIA. ...........................21

        A.  The Cases Considering Control as a Relevant Factor in Determining The
             Status of Records Do Not Apply in These Factual Circumstances......................21

        B.  Even Were Control a Relevant Factor, the FCIC Records Would Still Be
             Legislative Records Outside of FOIA.................................................................24

CONCLUSION......................................................................................................................26

# INTRODUCTION

Plaintiff Cause of Action, Inc. filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking access to records of the Financial Crisis Inquiry Commission ("FCIC")—a temporary commission established within the legislative branch. Cause of Action's lawsuit fails as a matter of law, however, because well-established precedent holds that FOIA does not apply to records of the legislative branch. *See id.* § 551(1)(A) (exempting "the Congress" from FOIA's definition of agency).

Although the FCIC records have now been transferred into the possession and custody of the defendant agency here—the National Archives and Records Administration ("NARA")—that fact is irrelevant to whether the FCIC records are legislative in nature. The mere deposit of records at NARA does not alter the records' original status. Indeed, all three branches of the federal government—the courts, Congress, and the executive—have confirmed that NARA's custody of records does not automatically make those records subject to FOIA. These binding precedents are conclusive. And even apart from this wealth of legal precedent, practical considerations also confirm that legislative records within NARA's custody are not subject to FOIA. Thus, the requested records here retain their original status as legislative records outside the reach of FOIA; NARA's control over the records is irrelevant.

Even if NARA's control of the records were a relevant factor, moreover, the records at issue here would still be considered legislative. When the FCIC transferred its records to NARA, the FCIC clearly intended to limit future access and disclosure of those records, and issued contemporaneous and specific instructions to that effect. Even under a control-based framework, therefore, the FCIC's records are outside the reach of FOIA. Cause of Action's lawsuit thus fails as a matter of law.

# BACKGROUND

## I.     STATUTORY BACKGROUND.

Pursuant to the Federal Records Act, the National Archives and Records Administration ("NARA") accepts for deposit "records of a Federal agency, the Congress, the Architect of the Capitol, or the Supreme Court determined by the Archivist of the United States to have sufficient historical or other value to warrant their continued preservation by the United States Government."  44 U.S.C. § 2107(a).  Thus, NARA accepts and preserves records from all three branches of the United States Government.

Particularly relevant to this case is NARA's acceptance of records from the legislative branch.  Although the substantive provisions of the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24, do not generally apply to the House, the Senate, or their official Committees, NARA nonetheless accepts those entities' noncurrent records for preservation.  *See id.* § 2118 (directing the transfer of such records "to the National Archives and Records Administration for preservation, subject to the orders of the Senate or the House of Representatives, respectively").  These records (hereinafter referred to as "Congressional records"), are deposited with NARA, but remain the property of the House and the Senate.  *See* Fulgham Decl. at ¶¶ 7-9.

In addition to Congressional records, NARA also accepts records from other government entities established within the legislative branch (hereinafter referred to as "legislative records"). Some of these legislative-branch entities are long-standing in nature—such as the Congressional Budget Office, the Library of Congress, the Government Accountability Office, and the Government Printing Office—whereas other entities are temporary in nature, such as commissions or panels that terminate as of a fixed date.  *See generally* Fulgham Decl. at ¶¶ 6-12.

Unlike the House and Senate, these legislative agencies *are* subject to the FRA's substantive provisions.  Specifically, the FRA applies to any "Federal agency," which, for FRA purposes, is defined as "any executive agency or *any establishment in the legislative or judicial branch* of the Government (except the Supreme Court, the Senate, the House of Representatives, and the Architect of the Capitol and any activities under the direction of the Architect of the Capitol)."  44 U.S.C. § 2901(14) (emphasis added).  Thus, although the substantive provisions of the FRA do not apply to the House and Senate, they do apply to other legislative agencies.

Under the FRA, each agency head is given certain duties pertaining to the creation, management, and disposal of federal records.  For instance, agency heads are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]"  44 U.S.C. § 3101.  Agency heads must also ensure the proper disposition of all federal records.  The FRA requires that the disposal of all federal records be approved by the Archivist of the United States (the head of NARA).  *Id.* § 3303; *see also* 36 CFR § 1225.10.  In order to efficiently manage the disposition process, agencies may create records schedules—negotiated with and approved by NARA—that govern recurring types of records.  44 U.S.C. § 3303(3); 36 C.F.R. §§ 1225.10-1225.26.  Those records schedules classify records as either permanent records of the United States (which are transferred to NARA and permanently preserved), or as temporary records (in which case the records are subject to destruction after a term of years).  *See* 36 CFR §§ 1225.14, 1225.16.

For legislative agencies that are temporary in nature, those agencies will first negotiate a records schedule with NARA, and then shortly before their termination will transfer their records to NARA for further preservation.  This transfer of legal custody occurs via a Standard Form 258

("SF-258"), entitled "Agreement to Transfer Records to the National Archives of the United States."  Once this form is signed by both the transferring agency and NARA, the records are within the legal custody of NARA.  *See* 44 U.S.C. §§ 2107, 2108.

As part of this transfer process, an agency head, with NARA's concurrence, may impose restrictions on future access to the records.  *See id.* § 2108(a).  If restrictions are placed on records, and the transferring agency is later terminated without a successor (as is usually the case with temporary legislative commissions), then "the Archivist is authorized to relax, remove, or impose restrictions on such agency's records when he determines that such action is in the public interest."  *Id.*

All legislative records transferred to NARA are administered by its Center for Legislative Archives ("the Center"), which is "responsible for processing, preserving and making accessible legislative branch records."  Fulgham Decl. at ¶ 1.  The Center for Legislative Archives has created a general administrative scheme for the processing, request, and release of legislative records.  *See* Fulgham Decl. at ¶¶ 19-24.  That general administrative process can be, and has been, tailored to the specific needs of individual records collections.  *Id.* at ¶¶ 25-29.

This administrative scheme for releasing records is necessary because, unlike most executive agencies' records, these legislative records are not subject to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*  Normally FOIA would require an executive agency to make its records available to anyone who properly requests them, unless the requested records (or portions of them) fall within particular exceptions.  *See* 5 U.S.C. § 552(a)(3), (b).  But FOIA does not apply to legislative records, because FOIA's definition of "agency" expressly exempts Congress and the courts.  *See id.* § 551(1)(A), (B).  Thus, the legislative records housed

in NARA's Center for Legislative Archives are not accessible through FOIA.  *See also* 36 C.F.R. § 1250.6; Fulgham Decl. at ¶ 17.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

The Financial Crisis Inquiry Commission ("FCIC") was created as part of the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617 (2009), and was a temporary commission expressly established within the legislative branch. *Id.* § 5(a).  The FCIC was created in order to "examine the causes, domestic and global, of the current financial and economic crisis in the United States." *Id.*  To fulfill that mission, the FCIC was granted certain investigatory powers, *id.* § 5(d), and was tasked with submitting a report to the President and Congress "containing the findings and conclusions of the Commission on the causes of the current financial and economic crisis in the United States." *Id.* § 5(h)(1).  The FCIC submitted its report on January 27, 2011, and pursuant to statute the FCIC terminated on February 13, 2011. *See* Compl. at ¶¶ 13-14.

Prior to its termination, the FCIC negotiated a NARA-approved records schedule classifying certain FCIC records as permanent.  *See* Fulgham Decl. at ¶ 30.  Several days before the FCIC's scheduled termination, FCIC Chairman Phil Angelides wrote to Archivist of the United States David Ferriero to inform NARA that the FCIC intended to restrict future access to some of its records.  *See* Compl. (ECF No. 1), Exh. 1.  Chairman Angelides made clear that the FCIC has embraced "a policy of making available to the public as much information as possible, while safeguarding personal privacy, law enforcement, private commercial, financial regulatory, and other sensitive information." *Id.* at 1.  Thus, Chairman Angelides stated that "[a]ll of the records and information that the Commission has made available to the public should continue to be made publicly available by NARA." *Id.*

For information that had not already been made public, however, the FCIC recommended that the records "should be made available to the public, to the greatest extent possible consistent with the terms of this letter, beginning on February 13, 2016." *Id.* Thus, the FCIC recommended at least a five-year restriction on all non-public information. Additionally, for certain categories of information, the FCIC imposed restrictions lasting beyond five years:

> Records should not be disclosed immediately after February 13, 2016, if they contain (a) personal privacy information that the Commission agreed to protect from public disclosure for longer than 5 years; (b) confidential financial supervisory or regulatory information which remains sensitive at the time of release; (c) proprietary business information which remains confidential or contains trade secrets at the time of release, including any such information that the Commission has agreed will remain confidential for a longer period of time; or (d) information which is otherwise barred from public disclosure by law, as determined by the Archivist.

*Id.* Chairman Angelides' letter also made clear that these restrictions were imposed "[b]ecause the Commission was established in the legislative branch," and therefore "FOIA will not apply to Commission records even after they are transferred to NARA." *Id.*

One day after Chairman Angelides' letter, NARA and the FCIC signed an SF-258 transferring the FCIC's records into NARA's legal custody. *See* Compl., Exh. 2. The SF-258 expressly attached Chairman Angelides' access letter, and stated that the records are not fully available for public use. *Id.* Additionally, the FCIC and NARA struck out language on the SF-258 referencing FOIA. *Id.* The signing of this SF-258 represented the transfer of the FCIC records into NARA's legal custody, along with NARA's concurrence in the restrictions set forth in Chairman Angelides' letter.

As alleged in the Complaint, at some point the FCIC came under scrutiny from the House Committee on Oversight and Government Reform ("the Oversight Committee"), and the

Oversight Committee requested various FCIC records.  *See* Compl. at ¶ 24.  NARA provided many or all of the requested FCIC records to the Oversight Committee.  *See id.* at ¶ 25.

On October 3, 2011, plaintiff Cause of Action, Inc., submitted a FOIA request to NARA seeking copies of all FCIC records that NARA had transmitted to the Oversight Committee.  *See* Compl., Exh. 3.  On December 1, 2011, NARA denied this FOIA request by letter stating that "the FCIC was a commission that was established within the legislative branch" and therefore "its records are not subject to the Freedom of Information Act[.]"  Compl., Exh. 4 at 1.  NARA stated that although the FCIC records will eventually become available through public access requests under the FRA, NARA would not accept such requests until February 11, 2016, based on the FCIC's five-year restriction of its records.  *Id.*

Cause of Action timely appealed this denial on January 5, 2012.  *See* Compl., Exh. 5. Cause of Action asserted that NARA had possession and custody of the FCIC records, and therefore the records were subject to FOIA.  *Id.* at 2. Cause of Action also asserted that 44 U.S.C. § 2108, the statutory basis for restrictions on access to the FCIC records, was not a valid withholding statute under FOIA's Exemption 3.  *Id.* at 3-4; *see* 5 U.S.C. § 552(b)(3).

NARA thereafter denied Cause of Action's appeal, again stating that the FCIC records were legislative records not subject to FOIA.  *See* Compl., Exh. 7.  The mere transfer of records to NARA's custody does not subject the records to FOIA, NARA said, because "courts have long recognized that there are types of archival records in NARA's legal custody where access restrictions are controlled by the terms of other statutes or by donor intent."  *Id.* at 3. Additionally, NARA stated that it was irrelevant whether § 2108 met the requirements of an Exemption 3 withholding statute under FOIA, because the records at issue here are not subject to FOIA in the first instance.  *Id.* at 4.

Cause of Action then filed this lawsuit against NARA on August 14, 2012. The Complaint alleges two counts: (i) that NARA violated FOIA by failing to disclose the requested FCIC records; and (ii) that NARA violated FOIA by failing to grant Cause of Action a fee waiver for its FOIA request. *See* Compl. at ¶¶ 43-49.

## STANDARD OF REVIEW

NARA moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a court must accept all factual allegations as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (internal quotation marks omitted).

When evaluating the sufficiency of the Complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Additionally, for purposes of a Rule 12(b)(6) motion, "documents that are referenced in, or are an integral part of, the complaint are deemed not 'outside the pleadings.'" *Norris v. Salazar*, ___ F. Supp. 2d ___, 2012 WL 3541710 at *3 n.9 (D.D.C. Aug. 17, 2012) (internal quotation marks omitted).

To the extent that the Court believes the attached declarations present information not properly considered on a Rule 12(b)(6) motion and that such information is necessary to the resolution of this motion, NARA also moves in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Under that rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

-8-

**ARGUMENT**

I.     **THIS FOIA LAWSUIT MUST BE DISMISSED, BECAUSE LEGISLATIVE RECORDS ARE NOT SUBJECT TO FOIA.**

FOIA expressly exempts "the Congress" from its definition of agency.  5 U.S.C. § 551(1)(A).  Both the Supreme Court and the D.C. Circuit have made clear that this reference to "the Congress" includes all entities within the legislative branch.  *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 145 (1980) (noting that the Library of Congress, a legislative agency, is not an agency under FOIA); *Wash. Legal Found. v. United States Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (interpreting the APA's definition of agency, which is the exact same statutory provision incorporated into FOIA, and stating "we have interpreted the APA exemption for 'the Congress' to mean the entire *legislative* branch").

Because Congress created the FCIC and housed it within the legislative branch, its records are therefore legislative records that are exempt from FOIA.  The fact that NARA, an executive agency, currently has legal custody of the FCIC's records is irrelevant to the status of those records.  For decades, all three branches of government—the courts, Congress, and the Executive—have agreed that the transition of records to NARA does not alter the records' original status.  Indeed, this principle is a fundamental tenet of the archival profession.  These precedents from all three branches of government are binding on this Court, and conclusively resolve the present lawsuit.

Even aside from these binding precedents, moreover, practical considerations also confirm that FOIA does not apply to legislative records.  Subjecting legislative records in NARA's possession to FOIA would significantly disrupt NARA's existing administrative scheme for processing and releasing the legislative records.  Additionally, granting FOIA access to the

records would fail to protect all of the relevant sensitivities, thereby releasing improper information and harming future legislative commissions.

A.   **The FCIC Was a Legislative Agency, and Therefore Its Records Are Not Subject to FOIA.**

It cannot be seriously disputed that the FCIC was a legislative agency.  *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, § 5(a) (2009) ("There is established *in the legislative branch* the Financial Crisis Inquiry Commission . . . to examine the causes, domestic and global, of the current financial and economic crisis in the United States." (emphasis added)).  The only question, then, is whether the FCIC's transfer of its records to NARA resulted in the records losing their legislative status.

It did not:  NARA's possession and custody of the FCIC records does not affect their status as legislative records.  Although NARA itself is an executive agency subject to FOIA, NARA also possesses and maintains custody over numerous collections of records that are not subject to FOIA.  "NARA is unique within the Federal government as its mission includes the preservation of records originating from all three branches of the government of the United States."  Mills Decl. at ¶ 7.  Many of those collections are not subject to FOIA as executive records, notwithstanding NARA's custody of the records.  For instance, NARA has legal custody over presidential records (both publicly owned and donated), judicial records, legislative records, and other donated materials.  *See* Mills Decl. at ¶¶ 13-24.  None of these records are governed by FOIA.  *Id.* at ¶ 11.  NARA's possession of these records is irrelevant:  "Under prevailing law and practice, access to records in NARA's legal custody always has depended on the source of the records and the method by which they were obtained."  *Id.*

Indeed, all three branches of government—the courts, Congress, and the Executive— have confirmed that NARA's legal custody of records does not alter their original status.  First,

binding D.C. Circuit precedent holds that NARA's legal custody of records does not make those records subject to FOIA.  In *Ricchio v. Kline*, 773 F.2d 1389 (D.C. Cir. 1985), the D.C. Circuit addressed whether FOIA could be used to access certain materials from President Nixon's time in office.   NARA had full legal custody of those materials pursuant to the Presidential Recordings and Materials Preservation Act ("PRMPA"), 44 U.S.C. § 2111 note § 101; *see also* Mills Decl. at ¶ 16.  Notwithstanding NARA's complete control of the records, the D.C. Circuit held that FOIA could not be used to obtain the records because they were covered solely by the PRMPA.  *See Ricchio*, 773 F.2d at 1395 ("We conclude that the proper method by which the appellant Ricchio may seek disclosure of the Watergate Force transcripts of the Nixon tapes is by proceeding under the [PRMPA] and that she cannot proceed under the [Freedom of] Information Act.").  Thus, binding D.C. Circuit precedent has already rejected the theory underlying Cause of Action's lawsuit—that all records within NARA's custody and control are subject to FOIA.

Moreover, Congress has likewise rejected this theory.  When passing the Presidential Records Act of 1978 ("PRA"), 44 U.S.C. § 2201 *et seq.*, Congress confirmed that records transferred to NARA's legal custody do not automatically become subject to FOIA.  Under the PRA, at the conclusion of each presidential administration (beginning with President Reagan), the administration's presidential records are transferred into NARA's legal custody and control. *See* 44 U.S.C. §§ 2202, 2203(f); *see also* Mills Decl. at ¶ 14.  The presidential records are generally unavailable to the public for a period of five years, with some categories of records potentially unavailable for up to twelve years.  *See* 44 U.S.C. § 2204(a), (b).  Subject to those restrictions, the presidential records then become available for public access pursuant to a modified version of FOIA that prohibits invoking exemption (b)(5) to withhold information:

> Subject to the limitations on access imposed pursuant to subsections (a) and (b), Presidential records shall be administered in accordance with section 552 of

> title 5, United States Code, except that paragraph (b)(5) of that section shall not be available for purposes of withholding any Presidential record, and for the purposes of such section such records shall be deemed to be records of the National Archives and Records Administration.

44 U.S.C. § 2204(c)(1).

Critically, the last clause of this provision would have been wholly unnecessary if presidential records became subject to FOIA as a result of NARA's custody and control over them. Had NARA's custody and control been sufficient to render presidential records subject to FOIA, there would have been no need for Congress to expressly state that "for the purposes of [FOIA] such [presidential] records shall be deemed to be records of the National Archives and Records Administration." *Id.* And because it is a "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant," *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted), Congress clearly understood that NARA's custody and control of the records was *not* sufficient to render them subject to FOIA.

The legislative history underlying this statutory provision further confirms Congress's understanding that presidential records would not have been otherwise subject to FOIA:

> While Presidential records are not currently covered by the Freedom of Information Act, they *effectively* become agency records for the purposes of this provision in applying FOIA requirements to them. As discussed above, however, *since Presidential records as defined by this Act are not actually agency records under the FOIA*, they may not be withheld from public release by the Archivist under the fifth exemption of the Freedom of Information Act, dealing with inter- and intra-agency records.

H.R. REP. NO. 95-1487, pt. 1, at 16 (1978) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5732, 5747 (hereinafter "PRA House Report"); *see also id.* at 11 (discussing how FOIA does not apply to presidential records, and stating that § 2204(c) of the PRA would "specially apply the FOIA to these non-agency records after a President leaves office"). Based on the statutory text

of § 2204(c)(1), as well as the legislative history underlying that provision, Congress clearly understood that presidential records were not subject to FOIA simply because NARA obtained custody and control over the records.  Rather, Congress had to include a statutory provision specially applying FOIA to those records.  Just as with the D.C. Circuit, therefore, Congress has rejected the notion that NARA's custody and control over records automatically subjects those records to FOIA.

Finally, the Executive Branch has also rejected this principle.  Binding NARA regulations confirm that not all records located at NARA are subject to FOIA.  *See* 36 C.F.R. § 1250.6 (stating that FOIA does not cover all of the records at NARA because "FOIA applies only to the records of the executive branch of the Federal government and certain Presidential records"). That regulation includes a chart listing the various types of records stored at NARA, and how to obtain access to those records:

| If you want access to ... | Then access is governed by . . . |
|---|---|
| **(a)** Records of executive branch agencies | This part and parts 1254 through 1260 of this chapter. FOIA applies to these records. |
| **(b)** Records of the Federal courts | Parts 1254 through 1260 of this chapter. FOIA does not apply to these records. |
| **(c)** Records of Congress | Parts 1254 through 1260 of this chapter. FOIA does not apply to these records. |
| **(d)** Presidential records (created by Presidents holding office since 1981). | This part and parts 1254 through 1270 of this chapter. FOIA applies to these records 5 years after the President leaves office. However a President may invoke exemptions under the Presidential Records Act which would extend this up to 12 years after the President leaves office. |
| **(e)** Documents created by Presidents holding office before 1981 and housed in a NARA Presidential library. | The deed of gift under which they were given to NARA. These documents are not Federal records and FOIA does not apply to these materials. |
| **(f)** Nixon Presidential materials | Part 1275 of this chapter. FOIA does not apply to these materials. |

*Id.*; *see also* 36 C.F.R. § 1250.2(e) ("FOIA request means a written request for access to *records of the executive branch of the Federal Government held by NARA*, including NARA operational records, or to Presidential records in the custody of NARA that were created after January 19, 1981, that cites the Freedom of Information Act." (emphasis added)).

When promulgating these regulations, NARA considered the very argument advanced by Cause of Action here—that all of the records in NARA's custody should be subject to FOIA. After NARA published a Notice of Proposed Rulemaking for the above regulations, an advocacy group known as Public Citizen submitted a comment arguing that "all records in the custody of the Archivist should be governed by FOIA," believing that "all archival records received under 44 U.S.C. 2107, including the records of Congress and judicial branch records that have been deposited with NARA for preservation[,] are subject to the FOIA."  *See* 66 Fed. Reg. 16374, 16374 (March 23, 2001).  NARA rejected this argument, however, stating:

> We believe that 44 U.S.C. 2107 allows the Archivist to accept for deposit Congressional and court records of historical value and that accepting these records does not make them records of the executive branch for purposes of FOIA. In addition, the courts have carved out court and Congressional records from the FOIA statute coverage.  (See *United States v. Spain, No.82-60-N, slip op. at 1 (E.D. Va. June 19, 1998) and Smith v. United States Congress, No. 95-5281, 1996 WL 523800, at *1(D.C.Cir. August 28, 1996)*))[.]

*Id.*  Accordingly, this principle—that records transferred to NARA's custody retain their original character and do not become subject to FOIA—is codified in a final regulation, which is entitled to deference from this Court.  NARA is the agency responsible for administering the Federal Records Act, of which chapter 21 of title 44 of the U.S. Code is a part, and is authorized to do so by promulgating regulations.  *See* 44 U.S.C. § 2104(a).  Thus, this principle is entitled to deference.  *See generally Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Moreover, this principle's codification in NARA's regulations is not surprising, given that the principle is based on "fundamental" tenets of the archival profession.  Mills Decl. at ¶ 25. Specifically, the tenets of original order and provenance require that records retain their original status even after they are transferred to an archives.  *Id.*  The tenet of original order is defined as

-14-

"the principle that records should be maintained in the order in which they were placed by the organization, individual, or family that created them."  *Id.* at ¶ 27 (internal quotation marks omitted).  This principle "preserve[s] the existing relationships and evidential significance" of the transferred records, and allows researchers to use the "record creator's mechanisms to access the records." *Id.* at ¶ 26 (internal quotation marks omitted).  NARA respects this principle by not intermixing its various types of records.  *Id.* at ¶ 28.  Even after the transfer of legislative records to NARA, therefore, those records are still maintained separately as legislative records.

Similarly, the archival tenet of provenance "requires that records of different origins (provenance) be kept separate to preserve their context." *Id.* at ¶ 29.  Again, NARA respects this tenet by maintaining each record group (and record sub-group) separately and not intermixing records of one origin with records that originated elsewhere.  *Id.* at ¶ 30.  NARA's practices, therefore, likewise confirm that legislative records retain their status as such, even after they have been transferred into NARA's custody.

At bottom, Cause of Action's FOIA lawsuit rests on a single premise—that legislative records transferred into NARA's legal custody become agency records subject to FOIA.  But all three branches of the Federal Government have expressly rejected that premise.  Here, Congress created the FCIC within the legislative branch, meaning that the FCIC created legislative records outside the reach of FOIA.  As the precedents discussed above establish, the fact that those records have now been transferred into NARA's custody for permanent preservation does not change the records' original status.  The above legal precedents are binding on this Court, and conclusively demonstrate that the FCIC records requested here are not subject to FOIA.  Cause of Action's lawsuit should be dismissed on this basis alone.

**B.     Practical Considerations Also Confirm that FOIA Does Not Apply to Legislative Records Transferred to NARA's Custody.**

Even apart from the legal precedents discussed above, practical considerations also demonstrate why Cause of Action's lawsuit must fail as a matter of law.  Subjecting legislative records to FOIA would not only disrupt NARA's administrative scheme for processing and releasing such records, but would also harm future legislative commissions by causing the improper release of sensitive information.

These types of practical considerations have previously motivated the D.C. Circuit to hold that particular records are outside of FOIA.  *See, e.g.*, *Ricchio*, 773 F.2d at 1394 (holding that permitting disclosure of the Nixon materials under FOIA, as opposed to NARA's existing administrative scheme, "'might frustrate the achievement of the legislative goals of orderly processing and protection of the rights of all affected persons'" (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 606 (1978)).  Similarly here, permitting FOIA access to legislative records would frustrate those same two goals.

**1.     Interference with NARA's Administrative Scheme for Orderly Processing Legislative Records.**

First, permitting immediate FOIA access would significantly interfere with NARA's orderly processing of the FCIC records.  NARA has established a detailed administrative scheme for processing and releasing legislative records, which will be implemented with respect to the FCIC records at issue here.  *See* Fulgham Decl. at ¶¶ 19-24, 29-30.  The first step in this scheme is for the Center for Legislative Archives, after it receives records from a legislative agency, to begin preliminary processing of the records.  *Id.* at ¶ 20.  Processing priorities are determined based on anticipated researcher and public interest in the records.  *See* Fulgham Decl. at ¶ 20.  This preliminary processing involves the Center creating lists of folder titles and directories, which are known as "finding aids" and are designed to "act as an aid to researchers in finding

pertinent material to their research[.]" *Id.*  The Center "also prepare[s] narrative descriptions of particular groupings of records, for eventual online posting and public use." *Id.*  These finding aids are "very valuable for allowing the researcher and archivist to locate and identify the records of interest." *Id.* at ¶ 22.

Applying FOIA to legislative records would significantly disrupt this administrative scheme.  The critical difference is that under FOIA the legislative records would be immediately available, whereas under the present scheme there is a five-year restricted period.  This five-year restricted period is critical for allowing NARA "to begin at least preliminary organizing and processing of records before access requests are submitted." *Id.* at ¶ 38.  Indeed, this five-year period was modeled on the PRA's five-year restricted period, which was also designed, at least in part, to allow NARA sufficient time to begin orderly processing the records. *See* 44 U.S.C. § 2204(b)(2) (establishing the five-year restricted period on access to presidential records); PRA House Report at 16 (describing this provision as a "grace period provided for archival processing of unrestricted records").  Just as with presidential records, this five-year period is necessary given the volume of recently created records that are transferred into NARA's custody at one time. *See* Fulgham Decl. at ¶ 37.  Subjecting legislative records to immediate FOIA access "would interfere with the Center's ability to orderly process the records and make them available to researchers in an organized fashion" because the Center would be "unable to undertake systematic organization, indexing, or finding aid development[.]" *Id.* at ¶ 38.[*]

---

[*] This interference is increased by the "particularly burdensome" nature of processing legislative records.  Fulgham Decl. at ¶ 39.  The FCIC records here were very recently created, meaning that they contain far more sensitivities than most other records collections within NARA.  "Most agencies do not transfer their records to NARA until they are 20 to 30 years old, during which time many of the sensitivities diminish significantly." *Id.*; *see generally* 44 U.S.C. § 2107(2) (stating that the Archivist may direct the transfer to NARA of "records of a Federal agency that have been in existence for more than thirty years").

Additionally, applying FOIA would interfere with the Center's ability to process the records according to broad public interest. Instead, the Center would be catering to the interests of whichever individual was at the top of the FOIA queue. *See id.* at ¶ 37. Applying FOIA to legislative records would thus "decrease the Center's ability to make the most widely requested records publicly available at the earliest possible date." *Id.*

Finally, these increased burdens placed on the Center would interfere with the Center's ability to fulfill other aspects of its overall mission, such as responding to requests from Congress. *See id.* at ¶ 38. The processing and release of records is extremely time-consuming and burdensome for the Center's staff, and "those burdens would only be increased if the records were subject to FOIA instead of NARA's current administrative scheme." *Id.* at ¶ 39. Applying FOIA to legislative records would thus interfere with the "comprehensive, carefully tailored and detailed procedure" that NARA has already created for the processing and release of legislative records. *Ricchio*, 773. F.2d at 1395.

## 2.    Improper Release of Sensitive Information.

In addition to the significant disruption of NARA's administrative scheme, applying FOIA to legislative records could also cause the improper release of sensitive information. This would be both harmful in its own right, and could also harm the effectiveness of future legislative commissions.

If legislative records were subjected to FOIA, the only information that could be withheld from a requester would have to be justified under one of the nine FOIA exemptions. *See* 5 U.S.C. § 552(b). Although most of the restricted information within legislative records could likely be withheld under one of these exemptions, there is still a very real subset of information that is currently restricted but may not be justified under a FOIA exemption. In effect, then,

applying FOIA could nullify restrictions that both the legislative agency head and the Archivist thought were "necessary or desirable in the public interest[.]"  44 U.S.C. § 2108(a).

For example, legislative commissions frequently obtain "highly sensitive information" based on "promises of confidentiality to individuals and organizations (from both the private and public sectors)[.]"  Fulgham Decl. at ¶ 40.  Under NARA's present administrative scheme, a legislative commission is easily able to restrict this information from public release.  *See, e.g.*, Compl., Exh. 1 (Chairman Angelides' Letter restricting the disclosure of "personal privacy information that the Commission agreed to protect from public disclosure for longer than 5 years" and "proprietary business information . . . that the Commission has agreed will remain confidential for a longer period of time").  Under FOIA, however, there may be no applicable exemption that protects information solely on the basis of a confidentiality agreement.

One illustrative example is from records of the 9/11 Commission.  There, the 9/11 Commission interviewed New York City first responders, and in order to facilitate those interviews "entered into an agreement with New York City to keep the interviews confidential for a period of at least 25 years[.]"  Fulgham Decl. at ¶ 40.  That restriction was approved by the 9/11 Commission and NARA when the records were transferred to NARA's custody, and NARA "intends to honor that agreement[.]"  *Id.*  Under FOIA, however, it is doubtful that any of the nine exemptions would justify withholding in full the entirety of those interviews.  Under the FOIA framework, then, at least some of the interviews might have to be disclosed, at least in part—notwithstanding the 9/11 Commission's promise to keep the interviews confidential for at least 25 years.

The improper disclosure of this information would be harmful in its own right, and would also harm future legislative commissions.  Needless to say, the individuals or entities that

provided sensitive information under a guarantee of confidentiality would likely be harmed by the disclosure of that information (that is presumably why they sought a confidentiality agreement in the first place).  *See id.* at ¶ 40 (acknowledging potential "harm to those who provided the information under guarantees of confidentiality by releasing their sensitive information").

Additionally, this improper disclosure would harm future legislative commissions.  For one thing, legislative commissions themselves may be "less likely to document their activities" if they believed their records were immediately available under FOIA.  Fulgham Decl. at ¶ 41. Moreover, "agencies and private parties that work with legislative commissions . . . could be less willing to share documentation in the future" if the records were immediately subject to public scrutiny.  Fulgham Decl. at ¶ 41. This prospect "could be especially chilling to future commissions trying to access non-government records, because those commissions could no longer offer a firm promise of confidentiality that will withstand a court challenge." *Id.*; *cf. Baez v. Dep't of Justice*, 647 F.2d 1328, 1336 (D.C. Cir. 1980) ("A failure to honor the agreements to maintain the confidentiality of this information . . . could be expected to dissuade foreign agencies from entrusting additional information, to the [government].").

These results only confirm that NARA's legislative records are not subject to FOIA. Subjecting legislative records to FOIA would harm individuals, as well as future commissions' transparency and effectiveness.   When Congress chose to establish the FCIC within the legislative branch, Congress implicitly adopted NARA's administrative scheme as the best framework for "orderly processing and protection of the rights of all affected persons." *Ricchio*, 773 F.2d at 1395 (internal quotation marks omitted).  Applying FOIA to legislative records would conflict with this judgment by Congress.  Even apart from the binding legal precedents

discussed in Section I.A, therefore, practical considerations also confirm that FOIA does not apply to legislative records in NARA's custody.

## II. EVEN ASSUMING NARA'S CONTROL OF THE RECORDS AFFECTS THE ANALYSIS, THE RECORDS HERE ARE STILL LEGISLATIVE RECORDS NOT SUBJECT TO FOIA.

For the foregoing reasons, NARA's legal custody and control of the FCIC records is irrelevant to the question whether those records are subject to FOIA. All three branches of the Federal Government have adopted that principle, and therefore binding precedent has established that NARA's control is irrelevant to the analysis. Cause of Action's lawsuit should be dismissed on this basis alone.

To be sure, there is a line of D.C. Circuit cases considering control as a relevant factor in assessing whether records are legislative. But those cases arise in a very different context—*i.e.*, an ongoing oversight relationship between Congress and an executive agency—and thus are inapplicable to the factual circumstances here. Moreover, even if NARA's control of the records was a relevant factor, the FCIC records here would still be legislative records outside the reach of FOIA. The FCIC, at the time of its transfer of records to NARA, clearly *did* intend to establish controls to restrict future access to its records. Even under a control-based framework, therefore, Cause of Action's lawsuit must still be dismissed.

### A. The Cases Considering Control as a Relevant Factor in Determining The Status of Records Do Not Apply in These Factual Circumstances.

The cases considering control as a relevant factor arise in the unique context of Congress's ongoing interaction with executive agencies, including Congress's exercise of its oversight functions. In those situations, a control-based framework is needed to allow Congress to keep secret its own records sent to agencies, as well as records agencies create in response to

confidential Congressional inquiries.   That framework is inapplicable to this case, where a legislative agency is simply depositing its records with NARA for permanent preservation.

The first D.C. Circuit case to consider control as a relevant factor in determining whether a record is legislative or executive was *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), *vacated in part on other grounds*, 607 F.2d 367 (D.C. Cir. 1979).   In *Goland*, a FOIA requester sought access to a congressional hearing transcript that the CIA possessed, but which Congress had marked "Secret" and was transcribed from a committee hearing closed to the public.   *Id.* at 347. The FOIA requester argued that the CIA's possession of the transcript was, by itself, sufficient to subject the transcript to FOIA.   But such a holding, the *Goland* Court said, would unnecessarily interfere with Congress's oversight role:

> Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules.   Yet Congress exercises oversight authority over the various federal agencies, and thus has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in accordance with Congress' originating intent. If plaintiffs' argument were accepted, Congress would be forced either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role.

*Id.* at 346.   Thus, the Court adopted a control-based framework, holding that documents within an agency's possession were nonetheless legislative in character if Congress intended to retain control over them.   *See id.* at 347.

A later decision applied this same framework to the converse situation—a FOIA request for agency-created documents that were sent to Congress, in response to a congressional inquiry. In *United We Stand America, Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004), the D.C. Circuit held that Congress intended to retain control over its confidential request for information, and therefore all parts of the agency-created response that would reveal Congress's request were outside FOIA.   *See id.* at 600 ("[U]nder all of the circumstances surrounding the IRS's creation

and possession of the documents, we find sufficient indicia of congressional intent to control, but only with respect to the Joint Committee's April 28 request and those portions of the IRS response that would reveal that request."). Thus, the D.C. Circuit expressly adopted the control-based framework to protect "the 'exchang[e]' of documents" between Congress and executive agencies. *Id.* at 599 (quoting *Goland*, 607 F.2d at 646, modification in original).

The concern underlying these cases—protecting Congress's ability to keep its records secret, while also allowing Congress to perform oversight over executive agencies—is inapplicable to the factual circumstances here. A control-based framework makes sense in the usual course, where "[m]any agencies . . . must work frequently and closely with congressional committees on matters of budget and policy or on individual cases." *Paisley v. CIA*, 712 F.2d 686, 696 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984). In order to protect the exchange of documents in that context, there must be some way to distinguish between congressional records possessed by agencies, and actual agency records subject to FOIA. But here, the FCIC did not send its records to NARA as part of an ongoing, supervisory relationship requiring the exchange of documents. Rather, the FCIC deposited its records with NARA for permanent preservation, as it was required to do under the FRA. When a temporary legislative agency is about to expire and is simply depositing its records for preservation, as it is required to do by statute, there is no need to distinguish between different classes of records: *all* of the agency's records retain their original character.

At bottom, the above D.C. Circuit cases are inapplicable due to NARA's "uniqueness as an Executive branch agency that holds legal and physical custody of widely disparate collections of records not strictly governed under the FOIA." Mills Decl. at ¶ 13. No other agency routinely accepts for deposit records from all three branches of government, as NARA does. *See* 44

U.S.C. § 2107(a); Mills Decl. at ¶¶ 7, 14-22.  Although control may be a relevant factor when evaluating a traditional executive agency's possession of a legislative document, that factor is inapplicable to NARA's collection of legislative records: the formal deposit of records with NARA does not alter their original character.  For all of the reasons set forth above, therefore, control is not a relevant factor in assessing whether NARA's legislative records are subject to FOIA.

**B.      Even Were Control a Relevant Factor, the FCIC Records Would Still Be Legislative Records Outside of FOIA.**

Even under a control-based framework, the FCIC records here would still be legislative records.  When the FCIC transferred its records to NARA, the FCIC clearly intended to establish controls to restrict future access to those records.  This intent is evident from FCIC Chairman Angelides' letter, as well as the SF-258 officially transferring the records to NARA.  Even were control a relevant factor, therefore, the FCIC records would still not be subject to FOIA.

Under the control-based framework, the legislative entity must "manifest[] its own intent to retain control" of the records for the records to retain their legislative character.  *Paisley*, 712 F.2d at 693. The focus is on legislative intent to control, rather than actual agency control.  *See United We Stand*, 359 F.3d at 603 (interpreting *Paisley* as "chang[ing] the focus from agency control to congressional intent").  Accordingly, legislative intent to control is typically embodied in "*contemporaneous* and *specific* instructions . . . limiting either the use or disclosure of the documents."  *Paisley*, 712 F.2d at 694.

Here, at the time of transfer, the FCIC clearly intended to exercise control over the future use and disclosure of its documents.  For one thing, FCIC Chairman Angelides' letter expressly stated "that the FOIA will not apply to Commission records even after they are transferred to NARA," thus providing clear evidence that the FCIC intended to control the disclosure of its

records.   Compl., Exh. 1 at 1.   Chairman Angelides' letter then went on to provide

"*contemporaneous* and *specific* instructions" regarding "disclosure of the documents." *Paisley*,

712 F.2d at 694.   Specifically, Chairman Angelides recommended that "records not already

publicly available should be made available to the public, to the greatest extent possible

consistent with the terms of this letter, beginning on February 13, 2016." Compl., Exh. 1 at 1.

Thus, the FCIC imposed a five-year restriction on all of its non-public records.  The FCIC also

imposed four specific restrictions lasting beyond the five-year period:

> Records should not be disclosed immediately after February 13, 2016, if they
> contain (a) personal privacy information that the Commission agreed to protect
> from public disclosure for longer than 5 years; (b) confidential financial
> supervisory or regulatory information which remains sensitive at the time of
> release; (c) proprietary business information which remains confidential or
> contains trade secrets at the time of release, including any such information that
> the Commission has agreed will remain confidential for a longer period of time;
> or (d) information which is otherwise barred from public disclosure by law, as
> determined by the Archivist.

*Id.*   These restrictions were accepted by NARA, pursuant to the signing of the SF-258 between

the FCIC and NARA.  *See* Compl., Exh. 2.  Clearly, then, Chairman Angelides' letter—expressly

incorporated into the SF-258—represents contemporaneous and specific instructions from the

FCIC regarding the use and disclosure of its records.

Even apart from the SF-258's express incorporation of Chairman Angelides' letter, that

form contains two additional indicia of the FCIC's intent to control future access to its records.

First, in the "Terms of Agreement" section, the FCIC and NARA struck out the reference to

restrictions on use of the records complying with FOIA.  *Id.*; *see also* Fulgham Decl. at ¶ 33

("The SF-258 was also specifically hand-annotated . . . to reflect the parties' intent to negate any

possibility that the Freedom of Information Act, 5 U.S.C. § 552, would apply to these

materials."). Second, box 12 of the form asks whether the "records [are] fully available for public use?", and the parties answered "No" to that question. *See* Compl., Exh. 2.

Taken together, the SF-258 and Chairman Angelides' letter clearly establish the FCIC's intent to establish controls over the future disclosure of its documents. Indeed, NARA itself views the FCIC as having intended to control future access to FCIC records. *See* Fulgham Decl. at ¶ 34 ("It is clear to me—based on my personal involvement in this process, Chairman Angelides' letter, and the subsequent signing of the SF-258 between NARA and FCIC—that the FCIC acted in signing the transfer documentation with the clear intent and desire to put controls on the future access to, and use and disclosure of, FCIC records."). Even if control is a relevant factor in the analysis, therefore, the FCIC records are still legislative in character. And because the requested FCIC records are legislative, Cause of Action cannot obtain access to them through FOIA. Thus, Cause of Action's lawsuit—predicated entirely on violations of FOIA—fails as a matter of law and should be dismissed.

## CONCLUSION

For the foregoing reasons, NARA's motion to dismiss for failure to state a claim, or in the alternative for summary judgment, should be granted.

Dated: October 31, 2012                    Respectfully Submitted,

                                           STUART F. DELERY
                                           Acting Assistant Attorney General

                                           RONALD C. MACHEN JR.
                                           United States Attorney

                                           ELIZABETH J. SHAPIRO
                                           Deputy Branch Director

                                           */s/ Daniel Schwei*
                                           Daniel Schwei
                                           Trial Attorney
                                           United States Department of Justice

Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel:   202-305-8693
Fax:  202-616-8470
daniel.s.schwei@usdoj.gov

*Attorneys for Defendant*