**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAUSE OF ACTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-cv-1342 (JEB) |
| | ) | |
| NATIONAL ARCHIVES AND | ) | **HEARING REQUESTED** |
| RECORDS ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND PLAINTIFF'S CROSS- MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Plaintiff, Cause of Action, respectfully opposes Defendant's Motion to Dismiss or in the alternative for Summary Judgment ("Def.'s Motion"), and files Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion") under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7(h), and requests that this Court issue an Order denying Defendant's Motion, and granting Plaintiff's Motion, thereby issuing judgment in favor of Cause of Action on the grounds that no genuine issue as to any material fact exists, and Cause of Action is entitled to judgment as a matter of law. Attached in support of Plaintiff's Cross-Motion are Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, and Plaintiff's Statement of Material Facts Not In Dispute in Support of its Motion for Summary Judgment. A proposed Order consistent with the relief requested herein is also attached.

## REQUEST FOR HEARING

Plaintiff, Cause of Action, hereby respectfully requests, pursuant to Local Rule 7(f), a hearing on its Opposition to Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment, and Plaintiff's Cross-Motion for Summary Judgment.

Dated:  December 19, 2012          Respectfully submitted,

/s/ Karen M. Groen
Karen M. Groen
(D.C. Bar No. 501846)

/s/  Daniel Z. Epstein
Daniel Z. Epstein
(D.C. Bar No. 1009132)
Cause of Action
1919 Pennsylvania Ave, NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
daniel.epstein@causeofaction.org
karen.groen.olea@causeofaction.org

*Counsel  for Plaintiff*

# TABLE OF CONTENTS

Page

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF ........................................................................................................ i

TABLE OF CONTENTS ...................................................................................................iii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT ........................................... 1

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF FACTS  ......................................................................................... 2

STANDARD OF REVIEW  ........................................................................................ 2

ARGUMENT  .............................................................................................................. 2

I.    Legislative records are not automatically subject to FOIA but may be transformed into
      agency records ................................................................................................... 2

      A.    Records transferred to NARA for archival can come into the possession and control
            of NARA  ................................................................................................. 3

            1.   NARA's reliance on the Presidential Recordings and Materials
                 Preservation Act ("PRMPA") and the Presidential Records Act
                 ("PRA") is misplaced. ........................................................................ 4

      B.    Subjecting the FCIC records to FOIA would  neither undermine NARA's
            administrative scheme nor result in the improper disclosure of sensitive
            information  ............................................................................................. 7

II.   The FCIC records became agency records when transferred into the possession and
      control of NARA  ............................................................................................. 9

      A.    The cases considering control as a relevant factor apply under these specific
            circumstances .......................................................................................... 9

      B.    Use trumps Angelides' intent in determining the status of the FCIC records ........... 11

III.  Defendant's Motion for Summary Judgment fails because it does not
      comply with Local Civil Rule 7(h) . ............................................................... 12

CONCLUSION ................................................................................................... 13

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ........................................................................ 14

MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ..................................................................................................................... 20

SUMMARY OF ARGUMENT ................................................................................. 21

STATEMENT OF FACTS ....................................................................................... 22

STANDARD OF REVIEW ...................................................................................... 27

ARGUMENT ........................................................................................................... 29

I.     For purposes of FOIA, the Archives possessed and controlled the Commission documents ............................................................................................................ 29

    A.     Neither Congress nor the FCIC intended for the Archives to relinquish its statutory authority and control under 44 U.S.C. § 2108 ........................................................ 31

    B.     NARA disposed of the Commission's records ...................................................... 33

    C.     NARA and its personnel read and relied upon the Commission's records .............. 35

    D.     The Commission's documents were integrated into the Archive's system ............. 37

II.    The FCIC records were formerly legislative records, not congressional records, and can be subject to FOIA ............................................................................................... 38

    A.     The FCIC records were formerly legislative records, not congressional records ..... 39

    B.     The Archives incorrectly applied case law in the District of Columbia Circuit regarding the status of congressional records ........................................................ 40

    C.     The instructions of former FCIC Chairman Phil Angelides to restrict access do  not govern the status of the FCIC records .................................................................. 41

CONCLUSION ....................................................................................................... 44

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Plaintiff, Cause of Action, Inc. ("CoA" or "Plaintiff"), pursuant to Fed.R.Civ.P. 12(d), 56(a) and (c), and Local Rule 7(h), hereby files this Memorandum of Points and Authorities ("Plaintiff's Opposition") in Opposition to Defendant National Archives and Records Administration's ("NARA" or "Defendant"), Motion to Dismiss or in the Alternative for Summary Judgment ("Defs.' Motion"). A proposed Order is attached hereto.

Plaintiff is filing a Motion to Strike the Declarations of Thomas E. Mills and Robert Matthew Fulgham, Jr. or in the Alternative to Take Limited Discovery. Defendants Motion contains no Statement of Material Facts Not in Dispute in violation of Fed. R. Civ. P. 56(c) and Local Rule 7(h)(1).[1]

## SUMMARY OF THE ARGUMENT

CoA disputes the argument presented in Defs.' Motion. Legislative records are not automatically subject to FOIA when transferred into the custody of NARA; however, they are transformed into agency records when an agency is in possession of and exercises control over the records in question. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989); *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996). Despite Defendant's assertion, records transferred to NARA for archival can come into the possession and control of NARA. Moreover, subjecting the FCIC records to FOIA would neither undermine NARA's administrative scheme nor result in the improper disclosure of sensitive information. In this instance, the FCIC records became agency records when transferred into the possession and control of NARA: the D.C. Circuit cases considering control as a relevant factor apply under these specific circumstances; and NARA's use of the records trumps Chairman Angelides' intent in determining

---

[1] Plaintiff reserves the right to amend its Opposition to include further statements of material facts in dispute.

their status.  Finally, Defendant's Motion for Summary Judgment fails because it does not comply with Local Civil Rule 7(h).

## STATEMENT OF FACTS

Plaintiff adopts and incorporates as if fully set forth herein its Statement of Facts, as set forth on pages 9-13 of Plaintiff's Memorandum in Support of its Cross-Motion for Summary Judgment, is incorporated herein by reference.

## STANDARD OF REVIEW

Plaintiff adopts and incorporates as if fully set forth herein its Standard of Review, as set forth on pages 14-16 of Plaintiff's Memorandum in Support of the Cross-Motion for Summary Judgment, is incorporated herein by reference.

## ARGUMENT

I.      **Legislative records are not automatically subject to FOIA but may be transformed into agency records.**

FOIA expressly exempts "the Congress" from its definition of agency, 5 U.S.C. § 551(1)(A).[2] Thus, Defendant correctly states that legislative records are not automatically subject to FOIA when transferred into the custody of an agency. Mot. to Dismiss at 1, 14, 15.  However, as *Tax Analysts* states and the *Burka* line expands, legislative records become subject to FOIA when an agency exercises control over the records transferred into its possession. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989); *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996); *see also Holy Spirit Ass'n v. CIA*, 636 F.2d 838, 840-42 (D.C. Cir. 1980) (holding that documents transmitted from Congress to the CIA for "safekeeping" became agency

---

[2] Defendants' Motion cites to *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 145 (1980) for the holding that this FOIA exemption covers all entities within the legislative branch.  Plaintiff's note that the Supreme Court did not specifically make this ruling, but recited this principal in its recitation of the U.S. District Court's ruling below.

records subject to FOIA: "Congress failed to express with sufficient clarity its intent to retain control").

### A.   Records transferred to NARA for archival can come into the possession and control of NARA.

While acknowledging that NARA is an executive agency subject to FOIA, Defendant maintains that "NARA is unique within the Federal government as its mission includes the preservation of records . . ." and that, for this reason, the FCIC records cannot become agency records subject to FOIA. Defs.' Mot. at 10.  However, the Supreme Court has clearly held that records obtained by and under the control of an executive agency are agency records subject to FOIA. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989).  Moreover, this test has been applied by the District of Columbia Circuit to congressional records transferred into the possession of executive agencies. *Paisley v. CIA*, 712 F.2d 686, 694-95 (D.C. Cir. 1983) (holding that records were subject to FOIA because official congressional committee did not manifest intent to retain control of documents when sent to CIA); *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 842-43 (D.C. Cir. 1980) (rejecting argument that records remained under control of Congress when transferred from official congressional committee to CIA for "safekeeping").

While "control" has no precise definition and "may well change as relevant factors assume varying importance," the D.C. Circuit has identified "four factors relevant to a determination of whether an agency exercises sufficient control over a document to render it an 'agency record.'" *CREW v. U.S. Dep't of Homeland Security*, 527 F. Supp. 2d 76, 92 (D.D.C. 2007) (quoting *Crooker v. U.S. Parole Comm'n*, 730 F.2d 1, 5 (1st Cir. 1984) and *Burka v. U.S. Dep't of Health & Human Serv.*, 87 F.3d 508, 515 (D.C. Cir. 1996)).  Application of the four *Burka* factors determines whether the FCIC records have come under the control of NARA.  Thus, Defendant's argument that legislative records cannot become agency records subject to FOIA fails as a matter of law.

2.   NARA's reliance on the Presidential Recordings and Materials
     Preservation Act ("PRMPA") and the Presidential Records Act
     ("PRA") is misplaced.

NARA's Motion vainly attempts to draw an analogy between the PRMPA and the PRA and its contention that the FCIC records are legislative records not subject to FOIA. This argument is erroneous on a number of levels.

In the first instance, the PRMPA, 44 U.S.C. § 2111 note § 101, and the PRA, 44 U.S.C. §§ 2202, 2203(f), and other Congressional statutes serve as the basis for Exemption 3 exclusions under FOIA, although NARA's control of the FCIC records, absent an Exemption 3 exclusion, or any other exclusion, would render such records subject to FOIA. 44 U.S.C. § 2204(c)(1) under the PRA reveals Congressional intent to subject agency records under NARA's control to FOIA. Any record under NARA's control is subject to FOIA unless a specific FOIA Exemption is applicable. Accordingly, as NARA concedes the issue of control, and does not claim a specific FOIA Exemption, their Motion fails as a matter of law.

Secondly, Defendant's citation to and discussion of *Ricchio v. Kline,* 773 F.2d 1389 (D.C. Cir. 1985) does not support their notion that despite NARA's complete control of the records, "FOIA could not be used to obtain the records because they were covered solely by the PRMPA." Defs.' Mot. at 11.  *Ricchio* did not address the question of whether the Presidential transcripts— when in the hands of NARA—were "agency records" subject to FOIA. *Ricchio*, 773 F.2d at 1391 ("The arguments of the parties have been largely directed to the correctness of the district court's ruling that the transcripts are not "agency records" under the Information Act. We pretermit that question. . . . ").  The fact of the matter is that NARA's custody and control had nothing to do with the Court's decision.  The Presidential transcripts were not subject to FOIA because Congress laid out in the PRMPA a "comprehensive, carefully tailored and detailed procedure" for the Nixon Presidential Materials, which obviated the application of FOIA:

> In the [PRMA] Congress provided a comprehensive, carefully tailored and detailed procedure designed to protect both the interest of the public in obtaining disclosure of President Nixon's papers and of President Nixon in protecting the confidentiality of Presidential conversations and deliberations … The underlying tapes themselves not only are not subject to the [FOIA] but concededly are covered by section 101(a) of the [PRMA].

*Id.* at 1395 (internal citation omitted).  That is, the narrowly tailored and comprehensive PRMA superseded FOIA because Congress clearly expressed its will that such records only be disclosed under the PRMA. *Ricchio's* ruling had absolutely nothing to do with NARA's custody and control of the records. The District of Columbia Circuit amplified *Ricchio's* doctrine of supersession in *Lake v. Rubin*, 162 F.3d 113, 116 (D.C. Cir. 1998) ("Congress has dealt with disclosure of the same information through 'comprehensive, carefully tailored and detailed' provisions 'designed to protect both the interest of' those seeking the information and the interest in 'confidentiality.'" (citing *Ricchio*) (other citation omitted); *see also, Gardner v. United States of America*, 213 F.3d 735, 741 (D.C. Cir. 2000); *Julian v. U.S. Dep't. of Justice,* 806 F.2d 1411, 1420 (9th Cir. 1986) (finding *Ricchio* "inapposite" in argument to displace FOIA by the Parole Commission and Reorganization Act of 1976 (PCRA), 18 U.S.C.S. § 4201 *et seq.*).

Thirdly, Defendant admits more than it knows when citing to the PRMPA, and the PRA and its legislative history at pages 11-13 of its Motion to Dismiss. NARA fails to recognize that Presidential records are not subject to FOIA not because of any issue even remotely involving custody or control by NARA, but because Congress has enacted legislation explicitly stating that such records are not subject to FOIA. Congress did not do so here under FERA, or under FCIC guidelines or rules. NARA speculates that the inclusion of the last sentence of 44 U.S.C. § 2204(c)(1)[3] by Congress would have been unnecessary if NARA's custody and control of Presidential records made such records subject to FOIA. Defs.' Mot. at 11-12. This is tortured logic indeed.  NARA fails to recognize, or apparently comprehend, that the White House is not an agency

---

[3] "… for the purposes of [5 U.S.C. 552(b)(5)] such [Presidential records] shall be deemed to be records of [NARA]."

for the purposes of FOIA, a determination made by Congress. FOIA applies to "the Executive Office of the President," 5 U.S.C. § 552(f), but this term does not include either "the President's immediate personal staff" or any part of the Executive Office of the President "whose sole function is to advise and assist the President." *Meyer v. Bush*, 981 F.2d 1288, 1292 n. 1 (D.C. Cir. 1993) (quoting H.R. Rep. No. 1380, 93d Cong., 2d Sess. 14 91974)); *see also*, *e.g.*, *Soucie v. David*, 448 F.2d 1067, 1075 (D.C. Cir. 1971).[4]

Lastly, NARA confuses and conflates accepting records for deposit at the Archives, and controlling those records and altering their format. These are completely different operational activities.[5] Toward this end, the Federal Regulations discussed by NARA at pages 13-14 of its Motion, are tailored specifically for Presidential, Judicial and Congressional records, for which Congress has enacted specific laws which govern whether FOIA is applicable or not. The essence of the issue is not whether Presidential, Judicial or legislative records "retain their original character" after transfer to NARA, but rather whether NARA has obtained these records and thereafter controlled the records by means of changing and altering their formatting, which NARA concedes it did for the purposes of transmission to the House Oversight Committee, and production for Peter J. Wallison's review. Defs.' Mot. at 14; Declaration of Peter J. Wallison ("Wallison Decl."), Pl's. Mat. Facts, Ex. 11, ¶¶ 14-15; Declaration of Daniel Z. Epstein ("Epstein Decl."), Pl's. Mat. Facts, Ex. 10, ¶¶ 7, 10-11.

## B. Subjecting the FCIC records to FOIA would neither undermine NARA's administrative scheme nor result in the improper disclosure of sensitive information.

NARA alleges that Plaintiff's demand would undermine its orderly scheme for processing legislative records.  FOIA affects NARA's existing administrative scheme for processing and

---

[4]  This means, among other things, that the parts of the Executive Office of the President known as the "White House Office" are not subject to FOIA, while other parts of said Executive Office are subject to FOIA.
[5]  NARA's citation to and discussion of regulations regarding access to certain types of records likewise misses the mark: the "character" of a record, be it from the Presidential, Judicial or legislative branch, can be changed by virtue of NARA's alteration of that record when under its control.

releasing records is at once irrelevant and immaterial to the present dispute.  First, NARA exercised

sufficient control over former legislative records, and in so doing transformed those records into

agency records subject to FOIA.  Second, the unique actions presented in this case, namely, the

decision of Sarah Zuckerman—assumedly at the direction of Chairman Angelides—to strike out the

FOIA provision of the Transfer Agreement, without putting that decision to a full vote of the FCIC,

was *ultra vires* and irrelevant to the administrative scheme at NARA for processing and releasing

records.  Third, NARA violated the "achievement of the legislative goals of orderly processing and

protection of the rights of all affected persons" when the Archivist deferred to a Commission's chair

decision that was not subject to the approval of the Commission.  Moreover, the public interest

involved in the achievement of legislative goals clearly balances toward disclosure.

The fact that the chief investigative committee of Congress sought these records also

indicates that these records are uniquely distinguishable from the vast collection of records received

by the Center for Legislative Archives.  NARA actively processed the FCIC records in order to

produce them to the House Committee on Oversight and Government Reform ("the Oversight

Committee").  NARA has already ordered and processed the records for submission to the

Oversight Committee. In fact, NARA formatted the FCIC records on searchable form on electronic

disks in the "form of database files, which were subsequently uploaded into Concordance, a form of

discovery management software, by the Oversight Committee."  Epstein Decl., Pl.'s. Mat. Facts,  ¶¶

7, 10-11. Cause of Action merely requests duplicates of those files—no material burden is presented

on NARA.  Orderly processing for purposes of this litigation occurred on the date records were

provided to the Oversight Committee.  Plaintiff is not seeking to have NARA expedite its orderly

processing of the records, including "systematic organization, indexing, or finding aid

development"—it merely seeks the same records provided to the Oversight Committee.  NARA is

duly mistaken in believing that CoA is asking for the burdensome processing of records.

NARA further alleges that applying FOIA to the FCIC records could cause the improper release of sensitive information. Defs.' Mot. at 18-21.  However, NARA's arguments in this regard are vague and highly speculative. Under FOIA Exemption 4, an agency can show that the information is (A) a trade secret or (B) information that is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential. 5 U.S.C. § 552(b)(4).  While admitting, as it must, that any restricted information within the FCIC records may be covered by one of FOIA's nine exemptions, Defendant goes on to state that "a very real subset of information" may not be protected under 5 U.S.C. § 552(b), then makes an illogical quantum leap in stating that "applying FOIA could nullify restrictions that both the legislative agency and the Archivist thought were 'necessary or desirable in the public interest[.]' 44 U.S.C. § 2108(a)."  Defs.' Mot. at 18-19. The apposite case law renders NARA's manufactured concerns in this regard disingenuous at best. *See, e.g., McKinley v. Bd. of Governors of the Fed. Reserve Sys.,* 849 F. Supp. 2d 47, 60-61 (D.D.C. 2012) (discussing the applicability of FOIA Exemption 4 to banks and other financial institutions as "persons" under 5 U.S.C. §§ 551(2), 552(b)(4)); *Holy Spirit Ass'n for the Unification of World Christianity v. CIA,* 636 F.2d 838, 842-44 (D.C. Cir. 1980) (discussing records generated by Congress and the CIA under FOIA Exemptions 1, 3, 5 and 6, as well as the constitutional protection of the legislative process under the Speech or Debate Clause of the Federal Constitution).

Finally, to reiterate, Plaintiff is not asking this court to rule that legislative commissions and their records are subject to FOIA.  CoA is only asking that FOIA be applied to records that are no longer legislative in nature because they have become sufficiently controlled by NARA.

## II.      The FCIC records became agency records when transferred into the possession and control of NARA.

Defendant alleges that a line of District of Columbia Circuit cases considering agency control as a relevant factor are not applicable under the specific circumstances of this case.

Alternatively, Defendant alleges that the FCIC records at issue remain legislative records exempt from FOIA because Chairman Angelides intended to retain control over the records.  NARA misrepresented and, accordingly, inaccurately applied the cases decided in the District of Columbia Circuit; thus, these arguments fail as a matter of law.  Moreover, the FCIC records were transferred into the custody and control of NARA and are, therefore, subject to FOIA.

### A. The cases considering control as a relevant factor apply under these specific circumstances.

Defendant alleges that a line of District of Columbia Circuit cases evaluating agency control arise only in the context of an ongoing oversight relationship between Congress and an executive agency. Defs.' Mot. at 21.  Thus, Defendant argues that NARA's control of the FCIC records is irrelevant to the status of the records. Defs.' Mot. at 21.  Defendant has, however, ignored District of Columbia Circuit cases evaluating agency control in other contexts.

First, *Paisley* does not purport to consider control only in the context of congressional oversight.  Defendant argues that "a control-based framework makes sense in the usual course, where "[m]any agencies . . .  must work frequently and closely with congressional committees on matters of budget and policy or on individual cases." Defs.' Mot. at 23 (quoting *Paisley v. CIA*, 712 F.2d 686, 696 (D.C. Cir. 1983)).  However, NARA provided no legal support for its assertion that control is considered only in the context of ongoing congressional oversight.

Second, Defendant has ignored *Burka v. HHS* and a line of subsequent cases not involving congressional oversight.  Despite Defendant's argument that control is considered only in the context of congressional oversight, the four *Burka* factors evidencing control were determinative as to the question of whether private records became agency records subject to FOIA.  In *Burka*, this Circuit held that data tapes created by a contractor were agency records subject to FOIA because the U.S. Department of Health & Human Services exercised extensive supervisory authority which evidenced "constructive control."  *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515

(D.C. Cir. 1996). *Burka* remains bedrock law in this Circuit and the U.S. District Courts for D.C. as a logical, and necessary, extension of *Tax Analysts*, as interpreted and applied. More recently, this Circuit relied on the *Burka's* control analysis when determining whether records created by Fannie Mae and Freddie Mac—then private entities—became agency records in the possession of the Federal House Finance Agency. *Judicial Watch, Inc., v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 927 (D.C. Cir. 2011).

Lastly, NARA has ignored a line of D.C. Circuit cases evaluating agency control in the context of judicial records. In *Carson v. U.S. Dep't of Justice*, this Circuit held that a presentence report originating in the federal court system became an agency record subject to FOIA in the hands of the Parole Commission. 631 F.2d 1008, 1011 (D.C. Cir. 1980). *Carson* held that the reports were agency records when transferred into the possession and control of the Parole Commission. *Id.* This Circuit also subsequently applied the control test in *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1461 (D.C. Cir. 1984) ("To the extent that the Parole Commission has control of the presentence report -- as we held in *Carson* -- the 'policies' of the Virginia District Court do not override appellant's right under FOIA to see the report.").

Defendant provides no support for its claim that cases considering control as a relevant factor arise in the "unique context" of Congress's ongoing interaction with executive agencies, i.e., congressional oversight. Agency control is relevant to the status of records, regardless of whether the records originated in Congress, the federal courts, an executive agency, or the private sector. In this instance, control is relevant to the status of records originating in an independent, legislative-branch commission.

### B. Use trumps Angelides' intent in determining the status of the FCIC records.

For the foregoing reasons, agency control is the relevant factor in assessing the status of the FCIC records transferred into the custody of NARA. Moreover, the D.C. Circuit has held that the

four *Burka* factors are relevant to a determination of whether an agency, in this case NARA, exercises sufficient control over documents to render them "agency records."  The *Burka* analysis is a "totality of the circumstances test," or a balancing test, in which FOIA's presumption of disclosure is in full effect: the term "agency records" shall not be "manipulated to avoid the basic structure of FOIA." *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). When evaluating the four *Burka* factors in their totality, use of the records is decisive; if there is a conflict between the first factor assessing intent and the three remaining factors assessing use, then "use trumps intent." *CREW v. U.S. Dep't of Homeland Security,* 527 F. Supp. 2d 76, 97 (D.D.C. 2007); *Judicial Watch v. U.S. Secret Serv.*, 803 F. Supp. 2d 51, 57-61 (D.D.C. 2011); *McKinley v. Bd of Governors of Fed. Reserve Sys.*, 849 F. Supp. 2d 47, 57-58 n.5 (D.D.C. 2012).

Even assuming that intent is decisive under certain circumstances, i.e., the clearly expressed intent of Congress, Chairman Angelides' intent is not determinative.  First, Congress did not clearly express its intent to control documents produced under the Fraud Enforcement Recovery Act of 2009 ("FERA").  Second, Chairman Angelides—who is not a Member of Congress—cannot not express the will of Congress.  Third, Angelides' intent to restrict access to the FCIC records is inconsistent with the statutory language of 44 U.S.C. § 2108(a).  Finally, his intent is inconsistent with congressional intent, as the purpose of the FERA was to use transparency to shine sunlight on the financial crisis. Pub. Law No. 111-21, § 5, 123 Stat. 1617 (2009).  The expressed intent of Chairman Angelides to retain control over the FCIC records is not a relevant consideration.

Taken together, Defendant's arguments that the FCIC records are exempt from FOIA fail as a matter of law.  Legislative records, in this case the FCIC records, become agency records subject to FOIA when an agency such as NARA exercises control over the records transferred into its possession.

### III.   Defendant's Motion for Summary Judgment fails because it does not comply with Local Civil Rule 7(h).

Defendant's Motion sets forth no statement of material facts not in dispute. Local Rule 7(h) provides, in pertinent part, that "[e]ach motion for summary judgment _**shall**_ be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which _**shall**_ include references to the parts of the record relied on to support the statement." L.Civ.R. 7(h) (emphasis added).  This Court has emphasized the importance of full compliance with Local Rule 7(h):

> Quite clearly, the rule does not permit a party to file an additional statement of material facts after the principal briefing on a party's motion for summary judgment has been completed and an opposition has already been filed. Such a filing not only contradicts the plain language of this rule, but also violates the principal intent behind the requirements LLCvR 7(h) to ensure that all parties are aware of and work from the same set of material facts in discussing and responding to the merits of the relevant motion(s) for summary judgment. Moreover, the Court repeatedly advised the parties that they are required to "comply _**fully**_ with Local Civil LCvR 7(h)" and that it "may strike pleadings not in Conformity with these rules." [citation omitted]

_Sloan v. Urban Title Servs., Inc.,_ 652 F.Supp.2d 51, 55-56 (D.D.C. 2009); _Baptiste v. Bureau of Prisons_, 554 F.Supp.2d 1, 2 (D.D.C. 2008) (motion for summary denied for failure to provide a statement of material facts not in dispute); _See also Lewis v. Schafer,_ 571 F.Supp.2d 54, 56 (D.D.C. 2008) (defendant's motion for summary judgment was construed by the Court solely as a motion to dismiss because defendant failed to file statement of material facts not in dispute, citing _Baptiste, supra_).

Accordingly, on this basis alone, the Defendant's Motion in the Alternative for Summary Judgment fails for violating Local Rule 7(h), and should be denied on that basis alone.

## **CONCLUSION**

For the reasons set forth above, and any to be advanced at a hearing thereon, Plaintiff, Cause of Action, Inc., hereby respectfully requests that this Court enter an Order denying Defendant's

Motion to Dismiss or in the Alternative for Summary Judgment.  An appropriate proposed Order is attached.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAUSE OF ACTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-cv-1342 (JEB) |
| | ) | |
| NATIONAL ARCHIVES AND | ) | |
| RECORDS ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff, Cause of Action, provides the following statement of material facts not in dispute, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7(h) of the Local Civil Rules of the United States District Court for the District of Columbia, in support of its motion for summary judgment in this case, which arises under the Freedom of Information Act, 5 U.S.C. § 552.

1. On March 19, 2012, Attorney General Eric Holder issued a policy statement that the Department of Justice "will defend a denial of a FOIA request *only if* (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the statutory exemptions, or (2) disclosure is prohibited by law. Attached as Exhibit 1 (emphasis added).

2. The Fraud Enforcement and Recovery Act of 2009 ("FERA"), enacted May 20, 2009, was passed by Congress in response to the financial crisis of 2008 with the stated purpose of "improv[ing] enforcement of mortgage fraud, securities and commodities fraud, financial institution fraud and other frauds related to Federal

assistance and relief programs, for the recovery of funds lost to these fraud, and for other purposes." FERA, Pub. L. No. 111-21, 123 Stat. 1617 (2009).

3.     Section 5 of FERA established the Financial Crisis Inquiry Commission ("Commission" or "FCIC") to examine the causes of the crisis and to report its findings before Congress. *Id.* §§ 5(a), 5(c), 5(h).  The Commission was also to report its findings to the President and, if appropriate, refer any potential violations of law to the Attorney General and State attorneys general. *Id.* §§ 5(c), 5(h).

4.     FERA explicitly prohibited Members of Congress and their staffs from serving as members of the Commission. *Id.* § 5(b)(2)(B).

5.     FERA did not expressly exempt the Commission, or other agencies in possession or control of FCIC records, from compliance with the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"). FERA, Pub. L. No. 111-21, 123 Stat. 1617 (2009).

6.     FERA required the Commission to issue its report on December 15, 2010. *Id.* § 5(h)(1).

7.     The Commission interviewed more than seven hundred (700) witnesses and conducted nineteen (19) days of hearings from September 17, 2009, to September 23, 2010, in cities across the United States. Fin. Crisis Inquiry Comm'n, The Fin. Crisis Inquiry Rep., Appendix B, 545, attached as Exhibit 2.

8.     The Commission's report, accompanied by dissents, was submitted on January 27, 2011. Press Release, Fin. Crisis Inquiry Comm'n, Financial Crisis Inquiry Commission Releases Report on the Causes of the Financial Crisis, (Jan. 27, 2011) *available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-news/2011-0127-fcic-releases-report.pdf, attached as Exhibit 3.

9.     FERA stated that the Commission "shall terminate 60 days after the date" on which the final report was submitted. FERA § 5(i)(1).  Upon its termination, no agency or

entity succeeded the FCIC in function. *Id.*  No provision of FERA dictated the preservation or dissemination of the Commission's records upon its termination. FERA, Pub. L. No. 111-21, 123 Stat. 1617 (2009).

10.   On February 10, 2011, FCIC Chairman Phil Angelides wrote the Archivist of the United States David Ferriero stating that the FCIC would soon be terminated and that the FCIC's records would be deposited with the National Archives and Records Administration ("the Archives" or "NARA"). Complaint ("Compl.") Ex. 1.  The letter requested that the Archives impose a five-year categorical bar on public access to all Commission records that were not yet publically available. *Id.*  It also stated that each Commissioner and certain staff should have immediate and continuing access to the records. *Id.*

11.   On February 11, 2011, the Commission transferred legal custody of its records to the Archives by completing Standard Form 258 ("SF-258"), an Agreement to Transfer Records to the National Archives of the United States. Compl. Ex. 2.

12.    The SF-258 explicitly states that records held by the Archives are governed by the Federal Records Act, and subject to the FOIA. Compl. Ex 2 ("Terms of Agreement"); Blank Standard Form 258, attached as Exhibit 4.

13.   The Commission's agent, Sarah Zuckerman, drew a line through the sentence in the SF-258, under the Terms of Agreement section, which stated that that the records are subject to the Freedom of Information Act. Compl. Ex. 2.

14.   The Terms of Agreement section of the  SF-258 provides that the transfer of FCIC records is in accordance with 44 U.S.C. § 2108. *Id.*

15.   The Commission ceased to exist on February 13, 2011. Compl. Ex. 1.

16.   Prior to termination, the FCIC shared select records to Stanford Law School for Stanford to make publicly available. *About the FCIC at Stanford Law School,*

FCIC.LAW.STANFORD.EDU, http://fcic.law.stanford.edu/about/stanford (last visited

Dec. 5, 2012). Attached as Exhibit 5.

17.     On February 18, 2011, the Committees on Oversight and Government Reform and

Financial Services of the House of Representatives requested that the Archives

provide copies of certain FCIC records in its custody. Attached as Exhibit 6.

18.     The Archives voluntarily released the FCIC records upon request by the Committees,

and without being subject to a congressional subpoena. Compl. ¶¶ 26-29;

Declaration of Daniel Z. Epstein ("Epstein Decl."), attached as Exhibit 10, ¶¶ 7-8.

19.     The Archives provided the FCIC records in an electronic database, and the

documents were in a searchable format. Epstein Decl., attached as Exhibit 10, ¶¶ 7,

10-11.

20.     On October 3, 2011, Cause of Action submitted a Freedom of Information Act

request to the Archives in order to review the records that the Commission submitted

to the Oversight and Financial Services Committees. Compl. Ex. 3.

21.     On the date of Cause of Action's request, the Archives was the possessor of the

FCIC documents at issue. Compl. Ex. 4.

22.     On December 1, 2011, the Archives denied Cause of Action's FOIA request, stating

the Commission's records were legislative in character and therefore beyond the

reach of FOIA. Compl. Ex. 4.  The Archives later acknowledged that the SF-258,

under the Terms of Agreement section, had been altered when the records were

deposited. Compl. Ex. 7.

23.     Cause of Action has exhausted its administrative remedies. Compl. Ex. 7.  Cause of

Action appealed its denial, Compl. Ex. 5, which the Archives affirmed, Compl. Ex.

7.  The denial of this request is the subject of the present litigation. Compl. Exs. 4-7.

24.    On July 13, 2011, the minority staff of the House Oversight Committee released a
       report impugning former Commissioner Peter Wallison for violating "the
       Commission's ethics provisions." Democratic Staff, An Examination of Attacks
       against the Financial Crisis Inquiry Commission 5, 12 (July 13, 2011). Attached as
       Exhibit 7.

25.    On March 13, 2012, former FCIC Commissioner Peter Wallison wrote NARA,
       requesting access to FCIC records in order to respond to the statements made in the
       July 13, 2012 report from the minority staff of the Committee on Oversight and
       Government Reform of the U.S. House of Representatives. Attached as Exhibit 8.

26.    On April 5, 2012, Commissioner Wallison wrote NARA General Counsel Gary Stern
       confirming a March 29, 2012, telephone call. Attached as Exhibit 9.

27.    In his letter, Mr. Wallison stated that Mr. Stern said Wallison "could look at what
       [NARA] sent to the Committee, but no one working on [Wallison's] behalf could do
       so." Ex. 9.

28.    In this same letter, Wallison said "you [Gary Stern] explained that NARA has the
       originals of all documents, including the materials provided to the Hon. Darrel (*sic*)
       Issa, Chairman of the Committee. You stated that NARA will allow me to review
       these records on-site, but that I am not allowed to engage counsel for that purpose."
       Ex. 9.

29.    On April 18, 2012, Mr. Stern responded to Mr. Wallison. Compl. Ex. 8.  Mr. Stern
       did not correct or dispute Wallison's statement that he was not allowed to access the
       records with counsel or that NARA had provided the FCIC documents to the House
       Oversight Committee. *Id.*  Instead, Mr. Stern affirmed that Wallison's access would
       be "limited to the persons named in the request letter from the former Chairman of

-18-

the Commission, and thus does not extend to other persons, including representatives

of the named persons." Compl. Ex. 8.

30.  Cause of Action is non-profit, non-partisan organization that uses investigative,

legal, and communications tools to educate the public on how government

accountability and transparency protects taxpayer interests and economic opportunity

and is concerned about how the Commission conducted its investigation of the

financial crisis. Epstein Decl., Ex. 10, ¶ 2.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CAUSE OF ACTION, INC.,                  )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )       1:12-cv-1342 (JEB)
                                        )
NATIONAL ARCHIVES AND                   )
RECORDS ADMINISTRATION,                 )
                                        )
                                        )
            Defendant.                  )
_____ )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Cause of Action ("CoA"), respectfully moves for summary judgment in this case, which arises under the Freedom of Information Act ("FOIA"). On February 13, 2011, the Financial Crisis Inquiry Commission ("Commission" or "FCIC") deposited its records with the National Archives Administration ("Archives" or "NARA"). CoA submitted a FOIA request to the National Archive Records Administration ("Archives" or "NARA") in a letter dated October 3, 2011 seeking all Commission documents that the Archives had voluntarily submitted to the House Committee on Oversight and Government Reform ("House Oversight Committee"). The Archives denied CoA's FOIA request by letter dated December 1, 2011, stating that the records CoA sought were not agency records subject to FOIA. CoA appealed by letter dated January 5, 2012. The Archives affirmed its denial of CoA's FOIA request by letter dated February 6, 2012, stating that CoA had exhausted its administrative remedies. Despite the Archives' contention, the Archives possesses and controls the Commission's records, making them agency records subject to FOIA. Accordingly, there is no genuine issue of material fact, and CoA is entitled to judgment as a matter of law. A Statement of Material Facts Not in Dispute ("Pl's. Mat. Facts") and a proposed Order are attached hereto.

## SUMMARY OF THE ARGUMENT

CoA asserts that, for purposes of FOIA, NARA possessed and controlled the FCIC records at the time of CoA's FOIA request on October 3, 2011.  FOIA does not define "agency records." Rather, the Supreme Court has articulated a two-part test to determine whether records are agency records subject to the FOIA: (1) the agency must create or obtain the records; and (2) the agency must control the records at the time of the FOIA request.  The District of Columbia Circuit has set forth a four-part test to evaluate whether an agency is in control of the records it possesses.  The essential element of this analysis, which balances all four factors under the totality of the circumstances, is that use of the records is decisive.  Simply put, "use trumps intent."

Applying the four factors in this particular case, neither Congress nor the FCIC intended for NARA to relinquish its statutory authority and control under 44 U.S.C. § 2108.  Congress did not express its intent to control the FCIC records under FERA.  The FCIC expressed its explicit intent, in writing, to transfer both physical custody and ultimate control of the records to NARA, without exception.  Moreover, NARA disposed of the FCIC records under its control by providing said records to the House Oversight Committee and the House Financial Services Committee, as well as former Commissioner Peter J. Wallison.  In so doing, and in other ways, NARA personnel read and relied upon the FCIC records.  This transfer of FCIC records by NARA was clearly in the legitimate conduct of NARA's official duties.  Lastly, the FCIC records were integrated into the Archive's system because the records were incorporated into NARA's computer system.

It is precisely the use and control of the FCIC records by NARA that subjects said records to FOIA.  While NARA argues that the records retained their character as legislative records not subject to FOIA, FCIC's genesis as a temporary legislative commission renders their records legislative, not congressional, records.  When NARA exercised its absolute degree of control over these records, they became agency records.  NARA confuses and conflates accepting records for deposit with fundamental control and altering of the format of these records.

Furthermore, NARA incorrectly, and illogically, applies case law in the District of Columbia Circuit regarding the status of Congressional records to the facts of this case. In so doing, NARA ignores the centrality of the four-factor test for determining agency records subject to FOIA. Toward this end, the instructions contained in a February 10, 2011, letter from Phil Angelides, then Chairman of the FCIC Commission, attempting to restrict future access to FCIC records from FOIA, do not carry the imprimatur of Congress nor express congressional intent with regard to such future disposition of the records.

## **STATEMENT OF FACTS**

Congress enacted the Fraud Enforcement and Recovery Act of 2009 ("FERA") in May 2009 in response to the banking and mortgage crisis of 2008 with the stated purpose of improving the enforcement of mortgage, securities and financial institution fraud, and for recovering funds lost to these frauds. Pub. Law No. 111-21, § 2, 123 Stat. 1617 (2009). In the final section of this statute, section 5 of FERA, Congress established the Financial Crisis Inquiry Commission ("Commission" or "FCIC") to examine the causes of the crisis and report its findings to Congress. 123 Stat. at 1625. The Commission was also to report its findings to the President and, if necessary, refer any potential violations of law it uncovered to the Attorney General. *Id.* at 1630. FERA explicitly required the Commission to issue its report on December 15, 2011. *Id.* Within 60 days of completing this task, FERA required that the Commission be terminated. *Id.* Upon its termination, no agency or entity succeeded the Commission in function. *Id.* No provision of FERA addressed the preservation or dissemination of the Commission's records after its termination. *Id*. at 1617-30.

To investigate the financial crisis, the Commission interviewed more than seven hundred (700) witnesses and conducted nineteen (19) days of hearings from September 17, 2009, to September 23, 2010, in cities across the United States. Pl's. Mat. Facts, Exs. 2-3. When the Commission issued its 662-page report on January 27, 2011, more than a month after the statutory deadline, it had exercised all its powers and fulfilled all its duties. Pl's. Mat. Facts, Ex. 3; FERA §

5(i).  With its Final Report complete, "the Commission's work comes to a close." FIN. CRISIS INQUIRY COMM'N, THE FIN. CRISIS INQUIRY REPORT xiii (2011).

On February 10, 2011, FCIC Chairman Phil Angelides wrote to the Archivist of the United States David Ferriero stating that the FCIC would soon be terminated and its records would be deposited with the National Archives and Records Administration ("the Archives" or "NARA"). Compl. Ex. 1.  The letter requested that the Archives impose a five-year categorical bar on public access to all FCIC records that were not yet publically available.  Compl. Ex. 1.  It also requested that the Commission's records would not be subject to the FOIA until February 13, 2016. Compl. Ex. 1.  Angelides asked that the Commissioners and certain staff have immediate and continuing access to the records.   Compl. Ex. 1.[6] ("[A]fter February 13, 2011, it is important that the ten Commissioners and the designated members of the Commission staff and advisors have continuing access to the Commission's records once the records are transferred to NARA.").  Although no provisions of FERA addressed the preservation or dissemination of the Commission's records, the FCIC gave copies of select records to Stanford Law School to create a website containing information that the Commission had made public during its investigation.[7]   Pl's. Mat. Facts, Ex. 5.

On February 11, 2011, the Commission transferred legal custody of its records to the Archives by completing a Standard Form 258 ("SF-258" or "Transfer Agreement"), an Agreement to Transfer Records to the National Archives of the United States. Compl. Ex. 2.  This form explicitly states that records held by the Archives are governed by the Federal Records Act and are subject to FOIA.  Compl. Ex. 2.  The SF-258 explicitly states, under the "Terms of Agreement" section at the top of the document, that "[t]he transferring agency certifies that any restrictions on

---

[6] This letter is almost a verbatim replica of the letter that the 9/11 Commission submitted to the Archives on August 20, 2004 requesting the Archives restrict public access.  Fulgham Decl., Tab D.

[7] A frozen copy of the FCIC website is also archived on CyberCemetery, an electronic archive of government web sites that have ceased operation.  CyberCemetery is hosted by the University of North Texas Libraries, which were designated as an Affiliate Archives of NARA in 2006.  Under this agreement, UNT Libraries provide access to the defunct web site while NARA holds legal accession rights. CyberCemetery, UNT Digital Library, http://digital.library.unt.edu/explore/collections/GDCC/ (last accessed on Dec. 14, 2012).

the use of these records are in conformance with the requirements of 5 U.S.C. 552."   Pl's. Mat.

Facts, Ex. 4; Compl. Ex. 2.  In contravention of the Instructions accompanying the SF-258, and

presumably violating the pattern and practice of both agencies and NARA[8], Commission employee

Sarah Zuckerman—at the direction of former FCIC Chairman Angelides—drew a line through the

language, quoted above, that subjected the records to FOIA.   Compl. Ex. 2.  Nothing in the

Instructions to the SF-258 allow for striking language embedded in the Terms of Agreement.[9]  Mr.

Fulgham's Declaration claims that Ms. Zuckerman's action in striking language from the

Agreement reflected "the parties intent to negate any possibility that the Freedom of Information

Act, 5 U.S.C. § 552, would apply to these materials." Fulgham Decl. at ¶ 33.  The central premise of

Defendant's Motion, however mistaken and misguided, that the FCIC records remain legislative

records not subject to FOIA, which NARA claims is absolutely clear and cannot be challenged, is

belied by the actions of both Ms. Zuckerman and NARA in executing the SF-258.  Simply put, if

the status of the FCIC records is as crystal clear as NARA contends, there would have been no need

for Ms. Zuckerman to strike the 5 U.S.C. § 552 language from the SF-258.  These facts are a

textbook example of overreach, on the part of both NARA and the FCIC, in attempting to exclude

records that are *prima facie* subject to FOIA from disclosure to the citizens of the United States,

violating the express will of Congress under both the FERA's and the FOIA's bias towards

disclosure—and as expressed by the current Executive Branch.   Pl's. Mat. Facts, Ex. 1.

Memorandum from Attorney General Eric Holder for Heads of Exec. Dep'ts and Agencies (Mar.

19, 2009) (on file with author) ("Holder Memo").

---

[8] NARA's Motion does not state whether such a practice, essentially altering the concrete essential terms of an agreement or contract, is normal procedure or part of the pattern and practice of either federal agencies or NARA in executing the SF-258. *See* Fulgham Decl. at ¶ 33.  It is clearly unusual to strike out a concrete, and essential, term of the Agreement, given that Part 12, and the attachment of the Angelides letter under Part 14, address the issue that so concerned the FCIC in the transmission of its records, i.e., that the public not have access under FOIA.

[9]  NARA does not include the Instructions portion of SF-258 in Tab A to the Fulgham Declaration. A sample SF-258, Instructions included, is attached  as Ex. 3 to the Statement of Material Facts Not In Dispute.

On February 13, 2011, the Commission ceased to exist.  Compl. Ex. 1.  On February 18, 2011, in response to alleged corruption within the Commission, both the House Oversight Committee and the House Financial Services Committee asked the Archives to provide all Commission records, particularly those containing "internal work product of the FCIC, including emails memoranda and financial accounting records."  Pl's. Mat. Facts, Ex. 6.  The Archives voluntarily released these records to the Committees without being subject to a congressional subpoena.  Declaration of Daniel Z. Epstein ("Epstein Decl."),  Pl's. Mat. Facts, Ex. 10 at ¶ 8.

On July 13, 2011, the minority staff of the House Oversight Committee released a report impugning former Commissioner Peter Wallison for violating "the Commission's ethics provisions."  Pl's. Mat. Facts, Ex. 7; Declaration of Peter J. Wallison ("Wallison Decl."), Pl's. Mat. Facts, Ex. 11 at ¶ 6.

On March 13, 2012, former Commissioner Peter Wallison wrote the Archives requesting access to the Commission's records in order to respond to the statements made in the July 2011 minority report.  Pl's. Mat. Facts, Ex. 7 at 9-12 and Ex. 8;Wallison Decl., Pl's. Mat. Facts, Ex. 11 at ¶ 6.

On April 5, 2012, Commissioner Wallison wrote to NARA General Counsel Gary Stern confirming the details of a phone conversation held between them on March 29, 2012.  Pl's. Mat. Facts, Ex. 9; Wallison Decl., Pl's. Mat. Facts, Ex. 11 at ¶ 12.  In his letter, Mr. Wallison stated that Mr. Stern told him that he could "look at what [NARA] sent to the Committee, but no one working on [Wallison's] behalf could do so."  Pl's. Mat. Facts, Ex. 9.  Mr. Wallison also stated that "you [Gary Stern] explained that NARA has the originals of all documents, including the materials provided to the Hon. Darrel[l] Issa, Chairman of the [House Oversight] Committee. You stated that NARA will allow me to review these records on-site, but that I am not allowed to engage counsel for that purpose."  Pl's. Mat. Facts, Ex. 9; Wallison Decl., Pl's. Mat. Facts, Ex. 11 at ¶¶ 11-12.

On April 18, 2012, Mr. Stern responded to Mr. Wallison. Compl., Ex. 8.  Mr. Stern did not correct or dispute that NARA had provided the FCIC documents to the House Oversight Committee; nor did Mr. Stern dispute that the Archives refused to allow counsel to accompany Wallison while he accessed Commission records.  Compl., Ex. 8; Wallison Decl., Pl's. Mat. Facts, Ex. 11 at ¶ 14.  Instead, Mr. Stern affirmed that Wallison's access would be "limited to the persons named in the request letter from the former Chairman of the Commission, and thus does not extend to other persons, including representatives of the named persons."  Compl., Ex. 8.

Neither the House Oversight Committee nor the House Financial Services Committee published a formal report about potential corruption within the Commission.  Cause of Action (CoA) is a non-profit, non-partisan organization that uses  "investigative, legal, and communications tools to educate the public on how government accountability and transparency protects taxpayer interests and economic opportunity." Epstein Decl., Pl's. Mat. Facts, Ex. 10 at ¶ 2. In this vein, CoA sought the documents that the Archives sent to the Committees to independently evaluate how the Commission conducted its investigation of the financial crisis. Compl. ¶ 3.

On October 3, 2011, CoA submitted a FOIA request to the Archives seeking the records that the Commission submitted to the Oversight and Financial Services Committees. Compl. Ex. 3. The Archives denied CoA's FOIA request on December 1, 2011, stating that the Commission's records were legislative in character and therefore beyond the reach of FOIA.  Compl. Ex. 4.  CoA exhausted its administrative remedies: it appealed its denial on January 5, 2012, which the Archives denied on February 6, 2012. Compl. Exs. 5, 7.  In its denial, the Archives cited the Transfer Agreement that had been altered when the records were deposited. Compl. Ex. 7.  The denial of this request is the subject of the present litigation.  Compl. at ¶¶ 5-42.

**STANDARD OF REVIEW**

"Congress enacted FOIA to promote transparency across the government." *Judicial Watch, Inc. v. U.S. Secret Service,* 803 F. Supp. 2d 51, 54 (D.D.C. 2011) (citing *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.*, 775 F. Supp. 2d 174, 179 (D.D.C. 2011). The Supreme Court has explained that FOIA is "a means for citizens to know 'what the[ir] government is up to.' This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 171-72 (2004) (internal citations omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

The current Executive Branch of the Federal Government has also weighed in on the standards to be followed by agency heads with regard to FOIA requests. "The [FOIA], 5 U.S.C. § 552, reflects our nation's fundamental commitment to open government . . . . As President Obama instructed in his January 21 [2009] FOIA Memorandum, 'The [FOIA] should be administered with a clear presumption: In the face of doubt, openness prevails.' This presumption has two important implications. First, an agency should not withhold information simply because it may do so legally. . . . Second, whenever an agency determines that it cannot make full disclosure of a requested record, it must consider whether it can make partial disclosure." Pl's. Mat. Facts, Holder Memo., Ex.1 at 1. Furthermore, the Attorney General directed that "the Department of Justice will defend a denial of a FOIA requests only if (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the statutory exemptions, or (2) disclosure is prohibited by law." *Id* at 2.

In a FOIA case, when evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "treat the complaint's factual allegations as true . . . and

must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted).  In defeating a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See also Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, notice pleading rules are "not meant to impose a great burden on plaintiff." *Dura Pharms., Inc. v. Broudo*, 554 U.S. 336, 347 (2005).  Moreover, "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, and plaintiffs may survive a 12(b)(6) motion even if "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citing *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Therefore, applying the above principles, if CoA demonstrates that it has stated a claim upon which relief can be granted, defendant's Rule 12(b)(6) motion must be denied.

When "a defendant files a motion under Rule 12(b)(6) that is supported by declarations and documentary evidence 'outside the pleadings [that] are presented to and accepted by the court, the motion must be treated as one for summary judgment and disposed of as provided in  *Rule 56*.'" *Walsh v. FBI*, 2012 U.S. Dist. LEXIS 166329, at *5 (D.D.C. Nov. 21, 2012) (emphasis added) citing *Calhoun v. Dep't of Justice,* 693 F. Supp. 2d 89, 90-91 (D.D.C. 2010) *quoting* Fed. R. Civ. P. 12(d).  "If the evidence presented 'is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper.'" *Id.* (citing *Etheridge v. FedChoice Federal Credit Union*, 789 F. Supp. 2d 27, 32 (D.D.C. 2011)).  The court "must draw all reasonable inferences in favor of a non-moving party." *Id.* (citing *Brown v. F.B.I.*, 675 F. Supp. 2d

-28-

122, 125 (D.D.C. 2009)).  The court must grant the motion if the requestor proves through

pleadings, affidavits and any discovery that there is no genuine issue of material fact. Fed. R. Civ.

P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Safety Research & Strategies v. U.S.*

*Dep't of Transp.*, No. 12-551, 2012 U.S. Dist. LEXIS 160187, at *4-5 (D.D.C. Nov. 8, 2012).

 "In considering a motion for summary judgment on a FOIA claim, a court may rely upon an

agency's affidavits so long as they 'contain sufficient detail' and 'are not controverted by contrary

evidence.'" *Walsh v. FBI*, No. 11-2214, 2012 U.S. Dist. LEXIS 166329, at *6 (D.D.C. Nov. 21,

2012) (citations omitted).  "Agency affidavits are afforded a 'presumption of good faith' and can be

rebutted only with evidence that the agency did not act in good faith." *Id.* (citing *Defenders of*

*Wildlife v. Dep't of the Interior,* 314 F. Supp. 2d 1, 8 (D.D.C. 2004)).

 Specifically, in a FOIA action regarding the meaning of "agency records," the agency, not

the requestor, bears the burden "to disprove, that the materials sought are not 'agency records' or

have not been 'improperly' withheld." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3

(1989), *citing* S. Rep. No. 813, 89th Cong., 1st Sess., 8 (1965); H.R. Rep. No. 1497, 89th Cong., 2d

Sess., 9 (1966).

## ARGUMENT

**I.**  **For purposes of FOIA, the Archives possessed and controlled the Commission documents.**

 Records are not subject to FOIA simply because they have been transferred into the custody

of an agency.  Defs.' Motion at 1, 14, 15.  Instead, as *Tax Analysts* states and the *Burka* line

expands, an agency must exercise control over the transferred records for those records to become

subject to FOIA. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989); *Burka v. U.S.*

*Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).  Under the *Tax Analysts* test,

the FCIC records were in NARA's possession and control.  This is so because under the *Tax*

*Analysts* test, the Transfer Agreement manifested NARA's intent to control the FCIC records,

NARA disposed of these records to third parties without FCIC permission, and NARA relied upon and integrated these records in uniquely preparing and formatting the records for former FCIC Commissioner Peter J. Wallison.  It is patently obvious, then, that NARA controlled the FCIC records at the time of CoA's FOIA request on October 3, 2011.

NARA's assertion that "[a]t bottom, Cause of Action's lawsuit rests on a single premise— that legislative records transferred into NARA's legal custody become Agency records subject to FOIA" reflects a fundamental misrepresentation of CoA's core argument as well as the pertinent case law in this Court and the District of Columbia Circuit. Defs.' Mot. at 15.  The transfer of legislative records does not magically convert them into agency records.  Rather, it is NARA's absolute possession and control of the FCIC records that compels the conclusion that those records are agency records as a matter of law.[10]  As a result of NARA's actions, the FCIC records have lost their protection from FOIA's bias towards disclosure.  The term "agency records" is not defined in FOIA.  In the absence of a statutory definition, the Supreme Court articulated a two-part test to assess whether records are "agency records" subject to FOIA.  First, the agency must either create or obtain the records, and second, the agency must control the records at the time of the FOIA request. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989).  The D.C. Circuit has articulated a four-part test to evaluate whether an agency is in "control" of the records it possesses:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Tax Analysts v. Dep't of Justice,* 269 U.S. App. D.C. 315, 845 F.2d 1060, 1069 (D.C. Cir. 1988); cited by *Burka*, 87 F.3d at 515.  *Burka* remains bedrock law in the D.C. Circuit and the U.S. District Court for D.C., as a logical, and necessary, extension of *Tax Analysts*, as interpreted and applied.

---

[10] NARA's control over the records even extended to the terms and conditions, as well as the format, under which the records were produced.  Wallison Decl., Pl's. Mat. Facts, Ex. 11 at ¶¶ 15-16; Epstein Decl.,Pl's. Mat. Facts, Ex. 10 at ¶¶ 10-11.  These terms were clearly inconsistent, depending upon the recipient.

The *Burka* analysis is a "totality of the circumstances test," or a balancing test, in which FOIA's presumption of disclosure is in full effect: the term "agency records" shall "not be manipulated to avoid the basic structure of FOIA …." *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006).  When evaluating the four *Burka* factors in their totality, use of the records is decisive; if there is a conflict between the first factor assessing intent, and the three remaining factors assessing use, "use trumps intent." *Judicial Watch v. U.S. Secret Serv.*, 803 F. Supp. 2d 51, 57-61 (D.D.C. 2011); *McKinley v. Bd of Gov. of Fed. Reserve*, 849 F. Supp. 2d 47, 58 n.5 (D.D.C. 2012).

### A. Neither Congress nor the FCIC intended for the Archives to relinquish its statutory authority and control under 44 U.S.C. § 2108.

The FCIC was a temporary legislative commission created by Congress in the Fraud Enforcement and Recovery Act of 2009 ("FERA"). Pub. Law No. 111-21, § 5, 123 Stat. 1617, 1625 (2009).  For the FCIC records to be subject to congressional control, Congress must offer express intent to that effect. *See Goland v. CIA*, 607 F.2d 339, 347 (D.C. Cir. 1979); *Paisley v. CIA*, 712 F.2d 686, 694-95 (D.C. Cir. 1983); *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 842-43 (D.C. Cir. 1980); *United We Stand v. IRS*, 359 F.3d 595, 601-02 (D.C. Cir. 2004).  Congress never expressed its intent to control the FCIC records in the FERA: they were not transferable under the congressional documents provision of the Federal Records Act.  44 U.S.C. § 2118; *Holy Spirit*, 636 F.2d at 843 ("[W]e hold that, even if these CIA-created records were once congressional documents . . . they subsequently lost their exemption as congressional records when Congress failed to retain control over them."); they were not marked "secret," Goland, 607 F.2d at 347; Congress provided no contemporaneous or specific instruction on how the documents were to be within its control, *Paisley*, 712 F.2d at 694-95; nor were the documents produced within or by an official congressional committee, *see, e.g.*, *United We Stand*, 359 F.3d at

601-02.[11]  Therefore, because Congress did not state otherwise when creating the FCIC, section

2108 of the Federal Records Act governs the deposit of the FCIC records.  Moreover, section

2108(a) of the Federal Records Act specifically governs the facts of this case when it describes the

Archives' authority to grant access to the records generated by a temporary agency that has no

successor in function—as was true of the FCIC. 44 U.S.C. § 2108(a).  Section 2108(a) gives the

Archivist discretion to modify any restrictions placed on access to the records, so long as those

restrictions are in the public interest. *Id.*

Furthermore, the Commission itself intended to relinquish control over the documents when

it deposited its records with the Archives.  In a letter dated February 10, 2011, Commission

Chairman Phil Angelides stated in a letter to the Archivist of the United States David Ferriero

("Angelides letter"):

> When the Financial Crisis Inquiry Commission (the "Commission")
> terminates, by statute, on February 13, 2011, ***the records of the
> Commission will be transferred to the National Archives and
> Records Administration (NARA) for preservation and public
> access.***

(emphasis added)  Compl. Ex. 1.  This letter expresses an explicit intent to transfer both physical

custody and ultimate control of Commission's records to NARA, without exception.  That is, Mr.

Angelides's specific intent was to "relinquish control over the records." *Burka v. U.S. Dep't of

Health & Human Servs.,* 87 F.3d 508, 515 (D.C. Cir. 1996); *Tax Analysts v. Dep't. of Justice,* 845

F.2d 1060, 1069 (D.C. Cir. 1988) (citation omitted), *aff'd on other grounds,* 492 U.S. 136 (1989).

Angelides's letter then describes the "criteria under which these records should be made

available."  Compl. Ex. 1.  The letter states Mr. Angelides's position that, with the exception of

certain FCIC records that the Commission had previously released to the public, NARA should

impose a five-year categorical ban on public access to FCIC records.  However, NARA selectively

---

[11] See discussion, *infra* at Section II., at 21-25, on why FCIC records are legislative, not congressional, and why FCIC is
a legislative entity, not an official congressional committee.

applied Angelides's restrictions, thereby taking control over the records by exercising its own

discretion.  For example, NARA denied former FCIC Commissioner Peter Wallison full access to

the documents, despite that fact that the Angelides letter specifically provided for such access.

Wallison Decl., Pl.'s. Mat. Facts, Ex. 11 at ¶¶ 9-10, 12, 14-15; Compl. Ex. 1.  Subsequently, in full

contradiction and disregard of Angelides's letter, NARA released the Commission records *in toto* to

both the House Oversight Committee and the House Financial Services Committee, as well as

respective staff for the Committees, in electronic format on electronic disks.  Epstein Decl.,  Pl.'s.

Mat. Facts, Ex. 10 at ¶¶ 10-11.  Unlike the letter in *United We Stand America, Inc.*, which set forth

"the Joint Committee's directive and expectation of confidentiality ….," Angelides's letter, in

relinquishing control of the FCIC records to NARA, allowed NARA to exercise its discretion, in

full control and use of the records, to violate the terms of the letter. 359 F.3d at 601-02.

**B.  NARA disposed of the Commission's records**

NARA not only had the legal ability to use the FCIC records; NARA also used its statutory

authority to modify restrictions placed on the records by former FCIC Chairman Phil Angelides and

voluntarily disposed of the records to the House Oversight and House Financial Services

Committees.  NARA received the FCIC records from the Commission on or around February 11,

2011, when a Commission employee and the Archivist signed the Standard Form 258 (SF-258),

granting NARA full custody of the records. Compl. Ex. 2.  In a letter accompanying the SF-258,

Angelides stated that the records already made available by the FCIC "should continue to be made

publicly available by NARA."  Compl. Ex. 1.  Angelides added that "access to the records should

be provided to the ten members of the Commission … and the following members of the

Commission staff and advisors … certain … administrative staff of the Commission."  Compl. Ex.

1.

On February 13, 2012, the FCIC was terminated by statute with no successor in function,

and, accordingly, the FCIC retained no copies of its records. FERA § 5(i); Compl. Ex. 1.  Upon

transfer to NARA by the FCIC of all records not already made public, NARA had exclusive and complete custody of the documents.  Compl. Ex. 1.  On or around February 18, 2011, the chairmen and ranking members of the House Oversight Committee and the House Financial Services Committee requested that NARA provide the Committees all the "internal work product of the FCIC, including e-mails, memoranda and financial accounting records."  Pl's. Mat. Facts, Ex. 6.  NARA was not legally compelled by subpoena to submit these documents, yet NARA produced many or all of the requested FCIC records to the Committees. Compl. ¶¶ 25-26;  Epstein Decl., Pl's. Mat. Facts, Ex. 10 at ¶¶ 6-11.  NARA provided these documents in a concatenated form, or a form in which they were otherwise "assembled, organized, cataloged, or combined" in a searchable manner. Compl. ¶ 27; Epstein Decl., Pl's. Mat. Facts, Ex. 10 at ¶¶ 10-11; *but see* Fulgham Decl. ¶ 38 (stating that were FCIC records to fall under FOIA, such requirement for production would "interfere with the [Archive's] ability to orderly process the records  and make them available to researchers in an organized fashion.").

On July 13, 2011, the Democratic Staff of the House Oversight Committee published a thirty-seven-page report examining the attacks against the FCIC, specifically alleging that the internal memoranda produced by NARA showed that former Commissioner Peter Wallison "violated the Commission's ethics provisions …"  Pl's. Mat. Facts, Ex. 7 at 5, 12-14.  On March 13, 2012, Wallison sought access to the FCIC records, with counsel, in order to collect information to respond to the defamatory allegations of the minority staff of the Oversight Committee.  Pl's. Mat. Facts, Ex. 8.  In a phone call on March 29, 2012, between Mr. Wallison and NARA General Counsel Gary Stern, Mr. Stern informed Mr. Wallison that he was permitted "to review these records on-sight ….," but that he was "not allowed to engage counsel for that purpose."  Pl's. Mat. Facts, Ex. 9 (Apr. 5, 2012 letter from Wallison to Stern); Compl. Ex. 8 (Apr. 18, 2012 letter from Stern to Wallison).  Wallison objected to this restriction, stating that if he were called to testify he would be accompanied by counsel and his counsel "…would certainly be entitled to examine and

draw from everything [he] might be entitled to see."  Pl's. Mat. Facts, Ex. 9. Former FCIC

Chairman Phil Angelides placed no such restriction on access to the records.  *See* Compl. Ex. 1.

These facts demonstrate not only that NARA had statutory authority to control the FCIC

records, as is made clear by Congress in 44 U.S.C. § 2018, but also that NARA exercised this

authority and used the records when it voluntarily disclosed them to the Oversight and Financial

Services Committees, and when it prohibited Commissioner Wallison from accessing records with

his counsel.

**C.  NARA and its personnel read and relied upon the Commission's records.**

NARA's statutory purpose is to preserve all records transferred into its custody. 44 U.S.C.

§§ 2108, 2110, 2203(f)(2).  On February 13, 2012, the original FCIC records were transferred from

the FCIC into the exclusive custody of NARA.  Compl. Ex. 1.  NARA provided the FCIC records to

Members and staff of both the House Oversight Committee and the House Financial Services

Committee. Epstein Decl.,  Pl's. Mat. Facts, Ex. 10 at ¶¶ 7-9.  Despite the fact that no subpoenas

were issued from these respective committees, NARA performed the following tasks in response to

February 18, 2011, letter from the Committees: (1) integrated the FCIC records into compatible

electronic format on electronic discs; (2) concatenated and/or otherwise assembled, organized,

catalogued, and combined the records in a searchable database format; (3) created database files for

certain of the FCIC records, which were subsequently loaded into Concordance, a form of discovery

management software, by the Oversight Committee; and (4) created database files of the FCIC

records. Epstein Decl.,  Pl's. Mat. Facts, Ex. 10 at ¶¶ 10-11; Complaint at ¶¶ 24-29.  Accordingly, it

is clear that NARA and its personnel, at a minimum, were required to both read and rely upon the

FCIC records in order to legally, competently and properly perform the tasks enumerated above in

providing the records to the respective Committees and their staff.  Furthermore, the Fulgham

Declaration makes it abundantly clear that NARA has read and relied upon the FCIC records at

issue: "As stated above, the [Archives] is currently preserving and proceeding to describe the

FCIC's records. In preparation for screening, we intend to consult with the agencies that provided information to the FCIC to better understand the sensitivities in the records and ensure consistent review in keeping with statutory requirements.[12] In sum, the [Archives] is duly processing FCIC records with the intent to eventually make the records publicly available to all." Fulgham Decl. at ¶ 35.  Mr. Fulgham, NARA's Assistant Director in the Center for Legislative Archives, has admitted that NARA has read and relied upon the FCIC documents.

The law in this Court and the District of Columbia Circuit is clear regarding the third *Burka* factor.  As stated by Judge Royce C. Lamberth in *CREW v. United States Dep't. of Homeland Security*, "[T]he Court concludes that use trumps intent." 527 F. Supp. 2d 76, 97-98 (D.D.C. 2007); *see also Judicial Watch, Inc. v. Fed. Hous. Fin. Agency,* 646 F.3d 924, 926 (D.C. Cir. 2011) ("Control means 'the materials have come into the agency's possession in the legitimate conduct of its official duties.'").  There can be no question that NARA's interactions with and use of the FCIC records is performed "…in the legitimate conduct of its official duties." *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 145 (1989).  These documents were legally, and legitimately, transferred under 44 U.S.C. § 2108(a), giving the Archivist the control to modify access and use of the documents it receives from a temporary legislative agency.  Defendant cannot dispute that it has read and relied upon the FCIC records in the legitimate and ordinary performance of its official duties and in furtherance of its mission as "the depository of the permanently valuable historical records and documents of the Federal Government of the United States of America."  Defs.' Motion, Mills Decl. ¶ 6.  For example, NARA's formatting of the FCIC records in electronic format on electronic disks, as well as the cataloguing, organizing and assembling of these records as database files in a searchable format, for production *in toto* to the House Oversight Committee, is indisputably action by NARA in the legitimate and ordinary performance of its official duties. *See*

---

[12] In contempt of question, NARA must have determined these same "sensitivities" when producing the FCIC records to the respective Congressional Committees, which exercise, at a minimum, would require reading and relying upon those records.

Epstein Decl.,  Pl's. Mat. Facts, Ex.10 at ¶¶ 7, 10-11.  The only legal conclusion that can be drawn, given the undisputed facts in this case, is that the third *Burka* factor weighs conclusively in favor of Cause of Action.

### D. The Commission's documents were integrated into the Archive's system

Documents are integrated into an agency's records if they are incorporated into an agency's computer system, *Judicial Watch, Inc. v. U.S. Secret Serv.*, 803 F. Supp. 2d 51, 60 (D.D.C. 2011) and accessed by agency employees, *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 289-90 (D.D.C. 2006).  Documents are not integrated if they are segregated for the purpose of FOIA exclusion. *United We Stand,* 359 F.3d at 607.  NARA's statutory purpose is to preserve all records transferred into its custody. 44 U.S.C. §§ 2108, 2110, 2203(f)(2).  On February 13, 2012, the original FCIC records were transferred from the FCIC into the exclusive custody of NARA.

NARA submitted the FCIC records to the House Committees in a searchable format as database files: the documents "… had been concatenated or otherwise assembled, organized, cataloged, or combined …" Compl. ¶ 27.  This demonstrates that the documents had already been integrated into the Archive's system and were made sufficiently searchable and accessible for the Committees to evaluate their content.  This is true despite NARA's claim that it needs at least five years to "…orderly process the records and make them available to researchers in an organized fashion." Fulgham Decl. ¶ 38.  Additionally, although the FCIC records are purportedly stored in the section of the Archives for legislative records, the Center for Legislative Archives, Mills Decl. ¶ 21, the purpose is for ease of preservation and storage, not to avoid the reach of FOIA. *Id.*  For these reasons, the FCIC records have been integrated into NARA's system.

Given these factors, the Commission's documents were under both the custody and control of NARA at the time of Cause of Action's FOIA request, and are therefore subject to FOIA.

II.     **The FCIC records were formerly legislative records, not congressional records, and can be subject to FOIA.**

Records obtained by and under the control of an executive agency are agency records subject to FOIA. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989).  Yet NARA inaccurately suggests that its custody and control of the FCIC records is irrelevant to the question of whether they are subject to FOIA. Defs.' Mot. at 21.  NARA claims that the relevant question is whether Commissioner Angelides clearly intended "to establish controls to restrict future access to its records." Defs.' Mot. at 21.  NARA misrepresents and, accordingly, incorrectly applies the D.C. Circuit cases discussed in its memorandum.  These cases apply to the control of congressional records, not legislative agency records. *See, e.g.*, *Paisley v. CIA*, 712 F.2d 686, 694-95 (D.C. Cir. 1983) (at issue are congressional documents sent to FBI and CIA); *Goland v. CIA*, 607 F.2d 339, 347 (D.C. Cir. 1978) (at issue was a congressional transcript sent to CIA).  The term "congressional records," refers to the records of "the House, the Senate, or their official Committees." H.R. Res. 5, 101st Cong. (1989) (enacted); S. Res. 474, 96th Cong. (1980) (enacted); Mot. to Dismiss at 2. Members of Congress sit on the official committees of the House and the Senate, including the standing committees, select committees, special committees, joint committees, and conference committees. Judy Schneider, Cong. Research Serv., RS20794, The Committee System in the U.S. Congress 1-2 (2003).  Official committees are housed on congressional property.  However, legislative agency records (hereinafter "legislative records") are records produced by a legislative entity that is not the House, Senate, or one of their official committees. 44 U.S.C. § 2901(14). Congressional records are beyond the reach of FOIA, 5 U.S.C. § 551(1)(A), and receive special protection under the Federal Records Act. 44 U.S.C. § 2118; *see also Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978) (noting Congress's "constitutional prerogative of maintaining secrecy"). Furthermore, congressional records are transferred pursuant to a special regime under which the records remain the "permanent property" of the House and "subject to the orders" of the Senate,

leaving the Archivist with no discretion to control congressional records. H.R. Res. 5, 101st Cong. (1989) (enacted as Rule VII of the Rules of the House of Representatives); S. Res. 474 96th Cong. (1980) (enacted as Rule XI of the Rules of the Senate); *see also* 44 U.S.C. § 2118.  Legislative records, in contrast, are subject to transfer under a different provision of the Federal Records Act, 44 U.S.C. § 2108(a), which gives the Archivist discretion to exercise control of these records independent of the depositing entity.  Accordingly, records transferred in this manner can be subject to FOIA if the receiving agency, in this case NARA, both obtains and exercises control over them. *Tax Analysts,* 492 U.S. at 144-45.

### A.  The FCIC records were formerly legislative records, not congressional records.

The FCIC records were—prior to transfer by the FCIC—legislative records, not congressional records.  The FCIC is not and was not an official congressional committee.  The FCIC is not identified within the official committee structure of Congress.[13]  Instead, it was a "temporary, independent investigative body created by law and made up of private citizens." *The House Explained*, U.S. HOUSE OF REP., http://www.house.gov/content/learn/ (click commissions) (last visited Dec. 13, 2012).  The FCIC was comprised of private citizens; no Member of Congress could serve on the Commission. FERA § 5(b)(2)(B).  Unlike official congressional committees, the FCIC was not located on congressional property, but took residence in private office space at 1717 Pennsylvania Avenue, N.W., Suite 800, Washington, D.C. 20006.[14]  Furthermore, the FCIC's documents were subject to transfer under 44 U.S.C. § 2108, and not § 2118 governing the transfer of congressional documents. Compl. Ex. 2.  Under this same provision of the Federal Records Act, § 2108, NARA has accepted the records of legislative branch support agencies including the Congressional Budget Office, the Government Printing Office, and the former Office of

---

[13] Comprehensive lists of the official committees can be found online. Committees, United States Senate, http://www.senate.gov/pagelayout/committees/d_three_sections_with_teasers/committees_home.htm (last visited Dec. 5, 2012; Committee Information, Office of the Clerk, U.S. House of Representatives, http://clerk.house.gov/committee_info/index.aspx (last visited Dec. 5, 2012).
[14] *See* Letterhead (Oct. 1, 2010), http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/TBTF/Dick%20Fuld%20Follow%20Up.pdf.

Technology Assessment. *See Center for Legislative Archives*, NAT'L ARCHIVES,

http://www.archives.gov/legislative/research/ (last visited Dec. 13, 2012).  The FCIC records were

legislative records, not congressional records.

 **B.  The Archives incorrectly applied case law in the District of Columbia Circuit
       regarding the status of congressional records.**

     NARA arbitrarily expands the holdings of three narrowly decided D.C. Circuit cases to

support its argument that FCIC records remain exempt from FOIA. *See* Defs.' Mot. at 21-26, *citing*

*United We Stand Am., Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004); *Paisley v. CIA*, 712 F.2d 686

(D.C. Cir. 1983); and *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978).  NARA cites these cases to

assert that the FCIC records remain legislative records exempt from FOIA because the FCIC

intended to restrict future access to those records.  Defs.' Mot. at 24.  However, in *Goland*, an

official standing committee of the U.S. House of Representatives sent a stenographic transcript of

its hearing—held in executive session—to the CIA for its internal reference. *Goland*, 607 F.2d at

347.  Because of the nature of its creation and the secrecy of the information, and because the

transcript was clearly marked "Secret" before being transmitted to the CIA, the D.C. Circuit

concluded that the transcript remained under the control of the House of Representatives. *Id.*  Under

the control of Congress, not the CIA, the transcript remained a congressional record exempt from

FOIA. *Id.*

     In *United We Stand America, Inc.*, an official joint committee of Congress submitted a

request for tax information to the IRS, stating that "*This document* is a Congressional record . . .

[and] may not be disclosed without the prior approval of the Joint Committee." 359 F.3d at 600-01

(emphasis added).  When the information submitted by the IRS to the Joint Committee was

requested under FOIA, the Court concluded that only the Joint Committee's request (and any

specific reference to that request) was congressional material exempt from FOIA. *Id.* at 601.  The

Court held that the IRS response was an agency record subject to FOIA: it was created and

possessed by the agency, and was not brought under the control of Congress since the Joint

Committee failed to express any intent to keep the response secret. *Id*. at 603.

In *Paisley*, an official select committee of the Senate created certain records but affixed no

"external indicia of control or confidentiality," despite having stamped at least seven other

documents as secret, and submitted no "contemporaneous and specific" instructions to the CIA

regarding its use of the documents. 712 F.2d at 694.  The D.C. Circuit concluded that the documents

sent to the CIA were agency records in the possession and control of the CIA, thus subject to FOIA,

because Congress expressed no congressional intent to maintain control over the records. *Id*. at 695.

Each of these cases insists upon Congress's "constitutional prerogative" to keep its records

secret. *Goland*, 607 F.2d at 346.  However, they do not support NARA's assertion that the chairman

of a temporary, unelected commission established within the legislative branch—but  reporting to

executive and legislative officials—can retain control of commission documents by proclaiming his

intent to do so.

### C.  The instructions of former FCIC Chairman Phil Angelides to restrict access do not govern the status of the FCIC records.

CoA asserts that NARA's argument regarding control of the documents in assessing

classification attempts to put the cart in front of the horse.  Indeed NARA's assertion that control as

a relevant factor only arises "in the unique context of Congress's ongoing interaction with executive

agencies . . . " is simply incorrect and disputed by the case law in this Court and the District of

Columbia Circuit.[15] Defs.' Mot. at 21.  Conspicuously absent from NARA's argument in this regard

is any mention of the *Burka* case and the four factor analysis so crucial to determining agency

control.  "Indeed, cases decided both before and after *Tax Analysts* that employed the four-factor

analysis to determine agency control did not involve documents that were created and possessed by

the agency 'in the legitimate conduct of its official duties.'" *United We Stand*, 359 F.3d at 602-03.

---

[15] *Burka*, for example, did not involve interactions between Congress and an agency, nor any Congressional oversight issues.

This case involves documents that were clearly possessed and conclusively utilized by NARA.  The issue of agency control cannot be separated from a proper analysis of whether the documents are subject to FOIA.

Chairman Angelides's instruction to restrict access to the FCIC records is inconsistent with congressional intent.  The purpose of the FERA was wholly public: it sought to ensure greater transparency and to protect the public from future financial fallout.  The FCIC was created by Congress to provide a thorough examination of "the causes, domestic and global, of the current financial and economic crisis in the United States." FERA § 5(a).  The FCIC was granted subpoena power and was authorized to send criminal referrals to the U.S. Attorney General and the state attorneys general. *Id.* §§ 5(c)(4), 5(d)(2).  At the end of its investigation, the FCIC was required to submit "to the President and to the Congress a report containing [its] findings and conclusions," and the chairman was required to appear before the Senate Banking Committee and the House Financial Services Committee. *Id.* § 5(h).  The purpose of the law was to shine sunlight on the financial crisis.  As professed by Senate Majority Leader Harry Reid when he announced his appointments to the Commission:

> "As President Obama has said on several occasions, sunlight is the best disinfectant. The American people are entitled to a thorough examination of what went wrong. The men and women who we appoint to this commission must help the public gain a full understanding of why our system failed us in the past and I am confident that we have chosen the right people to lead that effort. Learning from these mistakes of the past through a transparent process is an important part of America's road to full financial recovery."

Press Release, U.S. Senate Democrats, Reid, Pelosi Announce Appointments to the Financial Crisis Inquiry Commission (July 15, 2009) *available at* http://democrats.senate.gov/2009/07/15/reid-pelosi-announce-appointments-to-the-financial-crisis-inquiry-commission.  Speaker of the House Nancy Pelosi reiterated the importance of transparency when making her appointments to the Commission:

> "The American people deserve nothing less than a full explanation of why so many people lost their homes, their life's savings, and their hard-earned pensions. To avoid a financial crisis of this magnitude in the future, the commission will conduct a thorough, systematic, and non-partisan examination of the failures in both government and financial markets. The men and women we are appointing today bring great experience and credibility to the work of the Commission."

*Id.* As also described by Securities & Exchange Commission ("SEC") Chairman Mary Schapiro in her testimony before the FCIC, "[T]he work of the [FCIC] is essential to helping policymakers *and the public* better understand the causes of the recent financial crisis and build a better regulatory structure." *Testimony Concerning the State of the Financial Crisis: Before the Financial Crisis Inquiry Commission*, Jan. 14, 2010 (statement of Chairman Mary L. Schapiro, U.S. Securities & Exchange Commission) (emphasis added) *available at* http://www.sec.gov/news/testimony/2010/ts011410mls.htm.  However, NARA asserts that the FCIC records remain exempt from FOIA because the Commission intended to establish its control to restrict future access to the records.  Defs.' Mot. at 21.  NARA fails to recognize that neither Commissioner Angelides nor the FCIC represent the will of Congress.  At most, Commissioner Angelides's instructions were evidence of *his* intent to restrict access.  As established above, Congress intended for these records to be publicly available.  The instructions of Chairman Angelides letter do not carry the weight of Congress, nor is he authorized to unilaterally override the expressed will of Congress.

Finally, the intent of a former chairman of a temporary legislative agency terminated by Congress is not relevant to NARA's control.  As required by the enacting law, the FCIC ceased to exist on February 13, 2011. Compl. Ex. 1; FERA § 5(i)(1).  Prior to the FCIC's termination, all records were transferred to NARA.  Defs. Mot. at 5-6.  Upon the termination of the FCIC, the Archivist was authorized "to relax, remove, or impose restrictions on such agency's records." 44 U.S.C. § 2108(a).  As a result, NARA has unrestrained discretion to determine what, if any, restrictions should be placed on disclosure of FCIC records, so long as the Archivist believes that

the action is "in the public interest." *Id.*  The statute makes no reference to the intentions of the former agency head; there is no indication that any restrictions placed on the records prior to termination are binding on NARA. *Id.*  At the time CoA submitted its FOIA request, NARA had possession and control of the FCIC records.

## CONCLUSION

For the reasons set forth above, and any to be advanced at a hearing thereon, Cause of Action has demonstrated there is no genuine issue of material fact and is entitled to summary judgment as a matter of law.

DATED:  December 19, 2012

Respectfully submitted,

/s/ Karen M. Groen
Karen M. Groen
(D.C. Bar No. 501846)

/s/ Daniel Z. Epstein
Daniel Z. Epstein
(D.C. Bar No. 1009132)

CAUSE OF ACTION
1919 Pennsylvania Ave, N.W., Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
daniel.epstein@causeofaction.org
karen.groen.olea@causeofaction.org

*Counsel for Plaintiff*
