# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUSE OF ACTION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 1:12-cv-1342 (JEB) |
| v. | ) |
| | ) |
| NATIONAL ARCHIVES AND | ) |
| RECORDS ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## DECLARATION OF PETER J. WALLISON

I, Peter J. Wallison, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I was a Commissioner on the Financial Crisis Inquiry Commission ("FCIC" or "Commission"), which was created by Section 5 of the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. Law No. 111-21, § 5, 123 Stat. 1617, 1625-31 (2009).

1

2. I have personal knowledge of the facts set forth herein, based upon my service as an FCIC Commissioner, my communications with NARA, and my review of FCIC records at NARA on December 4, 2012.
3. The FCIC's purpose and mission was to investigate the causes of the U.S. financial crisis in 2008 through document and information review, witness interviews, public hearings, and internal discussion.  The FCIC was instructed to report its findings to the Congress and to the President, and to advise the Attorney General of the United States of any person that may have violated federal law in connection with the financial crisis.
4. Recognizing the importance of restoring public trust in the U.S. financial markets, the FCIC was established to provide a full and public account of the causes of the financial crisis.
5. The FCIC's majority report and the accompanying dissents were submitted to Congress and the President on January 27, 2011.
6. On March 13, 2012, I wrote to the National Archives and Records Administration ("NARA") requesting access to FCIC records needed to respond to statements comprising personal attacks on me in a July 13, 2011 report by the minority staff of the Committee on Oversight and Government Reform ("House Oversight

Committee"), United States House of Representatives, that utilized FCIC materials from NARA.

7. The personal attacks referenced in ¶ 6 were inaccurate and taken out of the context in which they were embedded, and specifically involved use of FCIC materials that NARA formatted and turned over to the House Oversight Committee.

8. My purpose in seeking access to the Commission records, with counsel, was to collect information to respond to the defamatory allegations against me by minority staff of the House Oversight Committee.

9. I wrote the March 13, 2012 letter referenced in ¶ 6 to the Honorable David S. Ferriero, Archivist of the United States, based in part on a letter to Mr. Ferriero dated February 10, 2011 from Phil Angelides, Chairman of the Commission, indicating that access, without restriction, to the FCIC's records should be granted to the FCIC's Commissioners.

10. In a telephone conversation with NARA General Counsel Gary Stern on March 29, 2012, Mr. Stern stated to me that NARA's policy is that any commissioner of any commission, including the FCIC, has the right to review documents in case, among other things, the commissioner is called to testify in a legal or congressional proceeding. Mr. Stern also stated that

NARA would allow me to review the FCIC records on-site, but that I would not be allowed to engage counsel or third parties to review or otherwise access and examine the documents, on-site or otherwise.

11. Mr. Stern further stated, in the March 29, 2012 telephone conversation referenced in ¶ 10, that NARA then possessed the originals of all FCIC documents, including the materials provided to the Honorable Darrell Issa, Chairman of the House Oversight Committee.

12. On April 5, 2012, I wrote a letter to Mr. Stern in which I requested, among other things, NARA's policy on restricting access to former commissioners to on-site inspection of commission documents without the assistance of counsel.

13. On April 18, 2012, Mr. Stern responded to my April 5th letter referenced in ¶ 12 and wrote that requests, such as mine from former commissioners preparing for hearings or other queries regarding a commission's work, have only recently come about. He further wrote that "[t]here is no statutory or regulatory requirement that the Archivist grant this request," but that the Archivist has determined, as a matter of NARA "policy" that former commissioners "and their senior staff" have "continued access to the records of the Commission" for

4

the limited purpose of responding to queries or preparing for Congressional testimony.

14. Mr. Stern's April 18, 2012 letter, referenced in ¶ 13, did not correct or dispute my assertion, in my March 13, 2012 letter, that NARA had provided the FCIC documents to the House Oversight Committee, nor did Mr. Stern dispute that NARA refused to allow counsel to accompany me while I accessed Commission records.

15. On December 4, 2012, I was permitted by NARA to view the FCIC records at NARA's facility in Washington, DC. NARA's General Counsel, Gary Stern, placed the following restrictions on my viewing of the FCIC records: (1) I could not make copies of the documents; (2) I could not print the documents. The records I reviewed appeared to be exact copies of FCIC documents.

16. In all of NARA's communications with me regarding access to FCIC documents and materials, NARA never said that there was an official or statutory policy concerning a former commissioner's right to engage counsel for assistance in the review of records.

**I declare under penalty of perjury that the foregoing Declaration is true and correct.**

_____

**PETER J. WALLISON**
**Executed this _18th_ day of December, 2012.**

5