**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

CAUSE OF ACTION, INC.,                        )
                                              )
                          Plaintiff,          )
                                              )
            v.                                )        1:12-cv-1342 (JEB)
                                              )
NATIONAL ARCHIVES AND                         )
RECORDS ADMINISTRATION,                       )
                                              )
                          Defendant.          )
_____)


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................2

I.  Binding Precedent Confirms That Legislative Records in NARA's Custody Are Wholly Outside The Reach of FOIA. ..............................................................................2

  A.  The D.C. Circuit's *Ricchio* Decision Conclusively Resolves the Present Lawsuit.........................................................................................................3

  B.  Congressional and Executive Precedents Also Conclusively Establish that Legislative Records Transferred To NARA Are Not Subject to FOIA. ..................5

  C.  Applying FOIA to Legislative Records Would Disrupt NARA's Administrative Scheme for Orderly Processing, and Risk the Disclosure of Improper Information..........................................................................................7

  D.  The FCIC Records Are Indistinguishable From NARA's Other Collections That Are Not Subject to FOIA. ............................................................10

II.  Cause Of Action's Proposed FOIA-Based Framework Is, By Its Own Terms, Inappropriate for Legislative Records Transferred to NARA.............................................13

III.  Even Under Cause Of Action's FOIA-Based Framework, NARA Is Still Entitled to Dismissal.........................................................................................................15

  A.  The FCIC Clearly Intended to Exercise Future Control Over the Records, and That Fact is Dispositive...................................................................................15

  B.  The Three Other Proposed Factors Also Weigh in NARA's Favor. ........................18

    1.  NARA's Ability to Dispose of the FCIC Records......................................19

    2.  NARA's Reliance Upon the FCIC's Records............................................20

    3.  Integration Into NARA's Files. .................................................................22

IV.  NARA's Motion is Fully Compliant with the Local Rules, and Is the Only Basis for Entering Judgment in this Case...........................................................................23

  A.  NARA's Motion Complies with Local Civil Rule 7(h). .......................................23

  B.  Cause of Action's Cross-Motion for Summary Judgment is Premature and Must Be Denied. .....................................................................................................25

CONCLUSION...................................................................................................................25

# INTRODUCTION

Plaintiff Cause of Action, Inc. has submitted a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records pertaining to the Financial Crisis Inquiry Commission ("FCIC"), which was a temporary commission established in the legislative branch. Although the FCIC's records have now been legally transferred to defendant National Archives and Records Administration ("NARA"), the FCIC's records remain legislative in character and thus exist wholly apart from FOIA. The FOIA disclosure scheme is effectively superseded, and instead the FCIC's records are governed by the Federal Records Act and NARA's administrative disclosure scheme. The FCIC records, like all legislative records transferred to NARA's custody, are not subject to FOIA.

Cause of Action cannot overcome this threshold defense. In arguing that the FCIC records are subject to FOIA, Cause of Action relies exclusively on cases interpreting the term "agency records" within the FOIA statute. These FOIA precedents are irrelevant, however, because NARA's collection of legislative records exists wholly outside of FOIA. Indeed, the D.C. Circuit has already confirmed that certain collections within NARA's custody exist wholly apart from FOIA, and Cause of Action concedes as much. Thus, Cause of Action's argument is both circular and unresponsive: it seeks to prove that FOIA has not been superseded by interpreting FOIA itself, rather than confronting NARA's actual argument.

Even under the FOIA-based framework that Cause of Action proposes, moreover, the particular FCIC records at issue here are not "agency records" subject to FOIA. The FCIC clearly intended to exercise control over the records, which is dispositive under the D.C. Circuit's caselaw governing legislative records. And even if the Court were to consider the other factors proposed by Cause of Action, those too weigh in NARA's favor. Even under Cause of

Action's framework, therefore, the FCIC records are legislative in character and not subject to FOIA.

In the end, Cause of Action has offered no persuasive reason why the FCIC records should be subject to FOIA's disclosure scheme, rather than the Federal Records Act scheme (as implemented by NARA's longstanding administrative processes).  By establishing the FCIC within the legislative branch, Congress implicitly adopted NARA's administrative disclosure scheme (rather than FOIA) as the appropriate mechanism governing public release of the FCIC records.  For numerous reasons, both legal and practical, the Court should honor this Congressional judgment, and dismiss Cause of Action's lawsuit for failure to state a claim.

## ARGUMENT

### I. BINDING PRECEDENT CONFIRMS THAT LEGISLATIVE RECORDS IN NARA'S CUSTODY ARE WHOLLY OUTSIDE THE REACH OF FOIA.

All three branches of the Federal Government—the courts, Congress, and the Executive—agree that legislative records, even after they have been transferred to NARA's custody, remain wholly outside of FOIA.  Cause of Action's response is to cite a series of FOIA precedents, and argue that legislative records can indeed "become agency records" subject to FOIA when the records are "under the control of an executive agency[.]"  Cause of Action's Br. at 3.

Cause of Action's argument fundamentally misses the mark.  FOIA and its accompanying precedents are irrelevant, because legislative records in NARA's custody exist wholly outside the FOIA universe.  Instead, these legislative records are governed by the Federal Records Act, and NARA's administrative implementation of that Act.  In effect, FOIA has been superseded with respect to legislative records transferred to NARA.

Cause of Action effectively concedes this very point in its discussion of the D.C. Circuit's decision in *Ricchio v. Kline*, 773 F.2d 1289 (D.C. Cir. 1985).  Moreover, Cause of Action fails to seriously challenge the Congressional and Executive authorities confirming that legislative records are not subject to FOIA, and Cause of Action's attempts to distinguish the FCIC records are both legally and factually flawed.

**A.    The D.C. Circuit's *Ricchio* Decision Conclusively Resolves the Present Lawsuit.**

The D.C. Circuit has already confirmed the correctness of NARA's central argument in this lawsuit—that some of NARA's holdings exist wholly outside of FOIA.  *See Ricchio*, 773 F.2d at 1391; *see also* NARA's Opening Br. (ECF No. 8-1) at 11, 16-21.  Cause of Action's attempts to distinguish *Ricchio* are unpersuasive, and in fact only confirm the correctness of NARA's arguments.

In *Ricchio*, the D.C. Circuit addressed a FOIA request for access to certain Nixon materials, which had been transferred to NARA's custody and control pursuant to the Presidential Recordings and Materials Preservation Act ("PRMPA"), *see* 44 U.S.C. § 2111 note.  The court held that the materials could not be accessed through FOIA, and instead could be accessed only through the PRMPA's disclosure provisions.  *Ricchio*, 773 F.2d at 1391.  Effectively, FOIA had been displaced and was irrelevant to the lawsuit; instead, only the PRMPA governed disclosure. *See id.* (declining to address whether the materials are "agency records" under FOIA, and instead holding that "the [PRMPA] is the sole basis upon which the transcripts may be disclosed").

Cause of Action concedes this interpretation of *Ricchio*.  Specifically, Cause of Action agrees that "*Ricchio* did not address the question of whether the Presidential transcripts . . . were 'agency records' subject to FOIA," because *Ricchio* instead held that the PRMPA "superseded FOIA" and "obviated the application of FOIA[.]"  Cause of Action's Br. at 4-5.

This concession is dispositive.  Just as the Nixon materials exist outside of FOIA, so too does NARA's collection of legislative records.  Specifically, NARA's implementation of the Federal Records Act "supersedes" FOIA with respect to legislative records transferred to NARA for preservation.  In other words, the specific disclosure scheme of the Federal Records Act (and NARA's administrative implementation of that Act) trump the general disclosure scheme of FOIA.  *See Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 149 (D.C. Cir. 1986) (stating that a disclosure scheme could supersede FOIA if it "established some rules and procedures— duplicating those of FOIA—for individual members of the public to obtain access to [government] documents"); *cf. Lake v. Rubin*, 162 F.3d 113, 116 (D.C. Cir. 1998) ("[W]e believe that the specific provisions of § 6103 rather than the general provisions of the Privacy Act govern the disclosure of the sort of tax information requested here." (citing *Ricchio*, 773 F.2d at 1395)).  Under *Ricchio* and its progeny, therefore, NARA's administrative disclosure scheme of legislative records is exclusive; FOIA does not apply to those records.

Cause of Action is indeed correct that "NARA's custody and control [of the Nixon materials] had nothing to do with the [*Ricchio*] Court's decision."  Cause of Action's Br. at 4.  And that is because *Ricchio* was not applying a FOIA-based framework interpreting the term "agency records."  Instead, *Ricchio* held that the Nixon materials existed wholly *outside* of FOIA, and thus a FOIA-based inquiry was unnecessary.  Similarly here, Cause of Action's reliance on FOIA precedents—likewise interpreting the term "agency records"—is unpersuasive.  Just as *Ricchio* declined to address the "agency records" question (in order to hold that the materials were wholly outside FOIA's reach), so too should this Court decline to address the "agency records" issue.  Every one of Cause of Action's arguments exists within this FOIA-based framework, and are thus non-responsive to NARA's *Ricchio* argument.

At bottom, *Ricchio* holds that some of NARA's collections exist wholly outside FOIA. For the reasons stated in NARA's opening brief (at 10-21), both legal and practical considerations confirm that NARA's legislative records also exist wholly outside FOIA. The *Ricchio* decision is dispositive, and confirms that the Court should dismiss Cause of Action's FOIA lawsuit for failure to state a claim.[1]

**B.     Congressional and Executive Precedents Also Conclusively Establish that Legislative Records Transferred To NARA Are Not Subject to FOIA.**

Cause of Action fails to seriously dispute the Congressional and Executive authorities discussed in NARA's opening brief (at 11-15), further proving that NARA's collection of legislative records is not subject to FOIA.

First, regarding NARA's statutory argument involving the text of the Presidential Records Act, Cause of Action offers a perplexing response. NARA's argument is that a particular phrase in 44 U.S.C. § 2204(c)(1) would be unnecessary if Congress understood all records within NARA's custody and control to be agency records. *See* NARA's Opening Br. at 11-13. Cause of Action's response is that the particular phrase in § 2204(c)(1) is irrelevant, because "the White House is not an agency for the purposes of FOIA[.]" Cause of Action's Br. at 5-6.

This argument is non-responsive and once again confirms the correctness of NARA's position. There is no dispute that many offices within the White House create only presidential

---

[1] Cause of Action also contends (at 4) that *Ricchio* is inapposite because the PRMPA, as well as the Presidential Records Act, 44 U.S.C. § 2201 *et seq.*, are actually Exemption 3 statutes within the meaning of FOIA, *see* 5 U.S.C. § 552(b)(3). This argument is false. For one thing, it is inconsistent with Cause of Action's admission that, in *Ricchio*, the Court held that the PRMPA wholly exempted records from FOIA's reach. *See, e.g.*, Cause of Action's Br. at 4 ("The Presidential transcripts were not subject to FOIA" because the PRMPA "obviated the application of FOIA[.]"). Moreover, even a cursory examination of *Ricchio* reveals that the court did not engage in the traditional Exemption 3 analysis, and instead held that the materials existed outside of FOIA. *See Ricchio*, 773 F.2d at 1391, 1394-95; *see also Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1169-70 (D.C. Cir. 1998) (Henderson, J., concurring) (describing the *Ricchio* decision as holding "that the FOIA does not govern disclosure" of the Nixon materials).

records, which are not subject to FOIA.  The critical issue for this case, however, is whether those presidential records become subject to FOIA when transferred to NARA's custody and control at the conclusion of a President's time in office.  *See* 44 U.S.C. §§ 2202, 2203(f).  Based on the last phrase in § 2204(c)(1), it is clear that Congress does *not* view the presidential records as becoming subject to FOIA simply because they are transferred into NARA's custody and control.  So too in this case, legislative records do not become subject to FOIA simply because they are transferred into NARA's custody and control.

Cause of Action's argument actually confirms NARA's position in this case.  Cause of Action contends that, because presidential records were created by an entity not subject to FOIA (the White House), those records always remain outside of FOIA.  *See* Cause of Action's Br. at 5-6.  If presidential records remain outside of FOIA even after their transfer to NARA, as Cause of Action maintains, then the same should hold true for legislative records.[2]

Second, Cause of Action ignores several Executive Branch precedents confirming that legislative records are not subject to FOIA.  *See* NARA's Opening Br. at 13-15.  Cause of Action dismisses all of these authorities on the basis that "NARA confuses and conflates accepting records for deposit at the Archives, and controlling those records and altering their format." Cause of Action's Br. at 6.

This response is difficult to understand.  As will be discussed in more detail below, *see* Section I.D, this purported distinction is meaningless.  But more fundamentally, this distinction has nothing to do with the regulations and other authorities discussed in NARA's opening brief. The fact remains that Cause of Action's lawsuit is premised on a theory that legislative records

---

[2] It is true that "Congress has enacted legislation explicitly stating that such [presidential] records are not subject to FOIA."  Cause of Action's Br. at 5.  But Congress also expressly stated that legislative records are not subject to FOIA.  *See* 5 U.S.C. § 551(1)(A); NARA's Opening Br. at 9.

within NARA's custody and control are subject to FOIA.   This theory, however, has been rejected by formal NARA regulations—which Cause of Action does not dispute are entitled to deference, *see* NARA's Opening Br. at 14—as well as principles fundamental to NARA's operation.   Consistent with these Executive authorities, therefore, the Court should hold that NARA's legislative records exist wholly outside of FOIA.[3]

### C.  Applying FOIA to Legislative Records Would Disrupt NARA's Administrative Scheme for Orderly Processing, and Risk the Disclosure of Improper Information.

Not only do the legal precedents discussed above compel the conclusion that NARA's legislative records exist outside FOIA, but practical considerations also confirm this approach. Specifically, NARA has already established an administrative scheme governing the disclosure of legislative records.   Supplanting this administrative scheme with FOIA's disclosure scheme would not only be wasteful, but would also disrupt NARA's orderly processing of legislative records, and would risk the disclosure of sensitive information.

Cause of Action first responds with a paragraph laying out four quick arguments, seemingly unrelated to each other, but apparently intended to argue that these practical considerations are "irrelevant and immaterial to the present dispute."   Cause of Action's Br. at 7. To be sure, NARA agrees that the Court can dismiss this lawsuit based solely on the legal precedents discussed above.   But these practical considerations are at least potentially relevant, as they are precisely the ones considered by the *Ricchio* court.   *See Ricchio*, 773 F.2d at 1395

---

[3] Cause of Action also seeks to downplay NARA's regulations by arguing that the regulations "are tailored specifically for Presidential, Judicial and Congressional records, for which Congress has enacted specific laws which govern whether FOIA is applicable or not." Cause of Action's Br. at 6.   For the reasons discussed above in connection with the Presidential Records Act, however, it is irrelevant whether Congress has enacted a specific law governing the FOIA status of those records prior to those records' transfer to NARA.   Moreover, this argument is simply not true: Congress has not enacted specific laws governing the FOIA status of judicial records, presidential records from administrations ending before President Reagan (with the exception of President Nixon), or other donated records.   *See* Mills Decl. at ¶¶ 13-20.

(holding that the materials are not subject to FOIA because the application of FOIA "might frustrate the achievement of the legislative goals of orderly processing and protection of the rights of all affected persons" (internal quotation marks omitted)).

Cause of Action next argues that neither harm would actually occur here, because the requested FCIC records were already provided to the House Committee on Oversight and Government Reform ("the House Oversight Committee") and thus there would be no burden on orderly processing, and also because all of the sensitive financial information can be protected through Exemption 4. This response is both legally and factually flawed. On the legal front, Cause of Action's response is unduly narrow because it focuses solely on the current FOIA request, and solely on the FCIC records collection. The status of NARA's legislative records is a matter of law, however, that cannot vary with each individual FOIA request or individual commission. The proper inquiry must instead ask, as a general matter, whether application of FOIA to legislative records could lead to the two harms identified by NARA. And on that question, Cause of Action does not refute the detailed explanations offered by NARA. *See* Fulgham Decl. at ¶¶ 36-42.

Cause of Action's arguments are also factually flawed. As an initial matter, there is no basis for crediting Cause of Action's speculation about the low likelihood of the harms occurring, instead of crediting the detailed explanations offered by a NARA official with over twenty years' experience at NARA and who clearly has the proper expertise to make these predictions. *See* Fulgham Decl. at ¶ 3.

Moreover, Cause of Action's speculation about the low likelihood of these harms fails as a matter of logic. Regarding the interference with NARA's orderly processing, Cause of Action argues that "NARA has already ordered and processed the records for submission to the

Oversight Committee," and therefore "no material burden is presented on NARA." Cause of Action's Br. at 7. But this argument fails to recognize the difference between providing unredacted duplicate copies of the files to the House Oversight Committee, versus processing the files under FOIA in order to redact all of the information under the relevant exemptions. *See* Supplemental Fulgham Decl. (filed herewith) at ¶ 6. The latter is obviously far more burdensome, and is what NARA would be forced to do if legislative records were generally subject to FOIA. Thus, Cause of Action is indeed "asking for the burdensome processing of records." Cause of Action's Br. at 7.[4]

As for the improper disclosure of sensitive information, Cause of Action's sole response is to argue that sensitive financial information in the FCIC records can be withheld under FOIA's Exemption 4, *see* 5 U.S.C. § 552(b)(4). It is true that much of the sensitive information in the FCIC records could likely be withheld under that exemption, but there is no guarantee that *all* sensitive information will be protected. In fact, Cause of Action ignores the concrete example provided by NARA officials—namely, the potential inability to protect information that is obtained by a legislative commission under a promise of confidentiality. *See* NARA's Opening Br. at 19; Fulgham Decl. at ¶ 40 (discussing this possibility, particularly with respect to the 9/11 Commission and their interview of New York City first responders).

In sum, applying FOIA to NARA's legislative records would interfere with NARA's orderly processing of those records, would risk improper disclosure of information, and would harm future legislative commissions generally. *See* NARA's Opening Br. at 15-20. These

---

[4] Cause of Action also ignores NARA's discussion of the other harms that would follow from subjecting legislative records to FOIA. For instance, NARA could no longer "make the most widely requested records publicly available at the earliest possible date," because NARA would instead have to prioritize individuals' preferences. Fulgham Decl. at ¶ 37. Additionally, applying FOIA would interfere with NARA's ability to "undertake systematic organization, indexing, or finding aid development" of the records. *Id.* at ¶ 38.

practical considerations only confirm the legal authorities discussed above—*i.e.*, that legislative records transferred to NARA are not subject to FOIA.

     **D.**     **The FCIC Records Are Indistinguishable From NARA's Other Collections That Are Not Subject to FOIA.**

Throughout its brief, Cause of Action argues that the FCIC records are different from the remainder of NARA's collections not subject to FOIA, because NARA somehow "altered" the FCIC records as part of its transmission of copies of those records to the House Oversight Committee. *See, e.g.*, Cause of Action's Br. at 6, 6 n.5, 8, 21, 30, 34. The transmission of copies of records to the House Oversight Committee is legally irrelevant, however, and in any event Cause of Action vastly overstates any "alteration" or "formatting" of the records that occurred. The FCIC records are no different than NARA's other collections not subject to FOIA.

First, the mere fact that NARA provided copies of certain FCIC records to the House Oversight Committee does not change the legal status of the records as falling outside of FOIA. NARA's longstanding practice has been to provide current government officials from all three branches of the government with access to records—including otherwise closed federal records—that are needed to conduct their official governmental business. This practice makes good sense, given that government officials, including Congress and the Courts, regularly require access to NARA's archival records in order to fulfill their official duties. *Cf. Nixon v. Adm'r of GSA*, 433 U.S. 425, 452 (1977) ("An incumbent President should not be dependent on happenstance or the whim of a prior President when he seeks access to records of past decisions that define or channel current governmental obligations.").

Virtually all of NARA's holdings are subject to some form of special-access provisions for current government officials. For instance, presidential records are subject to a statutory special-access provision, *see* 44 U.S.C. § 2205, and the Nixon materials are subject to regulatory

special-access provisions.  *See* 36 C.F.R. §§ 1275.32-34.  Here, NARA's transmission of copies of certain FCIC records to the House Oversight Committee was entirely proper and consistent with the special-access procedures governing federal records (and other non-presidential donated materials).  *See* NARA Interim Guidance 1605-2, *Special Access by Government Officials to Classified and Unclassified, Closed Federal Records in NARA's Legal Custody* (Mar. 21, 2006), *available at* http://www.archives.gov/foia/directives/ig1605-2.html.  Given that virtually all of NARA's holdings are subject to some form of special access—including the Nixon materials, which the D.C. Circuit has already held are outside of FOIA—this fact alone cannot distinguish the FCIC records from other NARA holdings not subject to FOIA.

Moreover, the D.C. Circuit has already held, based on convincing policy reasons, that providing records to Congress should not affect a court's analysis.  *See Murphy v. Dep't of Army*, 613 F.2d 1151, 1155-58 (D.C. Cir. 1979) (holding that the provision of information to Congress does not waive any FOIA exemptions with respect to the public at large, due to the "public policy [of] encourag[ing] broad congressional access to governmental information"); *see also Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 603-04 (D.C. Cir. 2001).  Thus, NARA's provision of FCIC records to the House Oversight Committee is legally irrelevant to this lawsuit.

Second, Cause of Action vastly overstates the extent of any "alteration" or "formatting" that occurred in this process, and whatever did occur is certainly not significant enough to affect the analysis.  For starters, it should go without saying that NARA does not alter its records,[5] given that NARA's mission involves the preservation of those records.  *See* Mills Decl. at ¶ 7; *cf.* 36 C.F.R. § 1230.12 (discussing criminal penalties for the unlawful alteration of federal records).

---

[5] The long-term preservation of electronic records may, of course, involve updating or migrating the software format of records in order to ensure that the records remain accessible as computer software and hardware evolves.

Furthermore, the only "formatting" that Cause of Action alleges to have occurred is that NARA provided the FCIC records to the House Oversight Committee "in the form of database files, which were subsequently uploaded into Concordance, a form of discovery management software, by the Oversight Committee."  Compl. (ECF No. 1) at ¶ 28; *see also* Epstein Decl. (ECF No. 11-10) at ¶ 10.   These allegations are mistaken.   NARA was not the entity that uploaded the files into a Concordance database; that function was performed by the House Oversight Committee's own staff.  *See* Supplemental Fulgham Decl. at ¶¶ 3-4.   NARA's involvement was simply to provide the House Oversight Committee with exact, unaltered duplicates of the relevant FCIC records—as the House Oversight Committee requested.  *See* Letter from House Oversight Committee to NARA (ECF No. 11-6) at 1 (requesting that NARA produce "identical copies of the internal work product of the FCIC"); *see also* Supplemental Fulgham Decl. at ¶¶ 3-5 (discussing how, even though NARA converted the FCIC e-mail files into a different file format, NARA still provided exact duplicates of all FCIC files to the House Oversight Committee).   This simple duplication of the FCIC records is a far cry from the "alteration" and "formatting" that Cause of Action alleges.[6]   Thus, the Court should dismiss Cause of Action's lawsuit for failure to state a claim, because the requested records are not subject to FOIA.

---

[6] Even accepting Cause of Action's allegations as true, they would not affect the analysis. Uploading the FCIC records into a Concordance database still would not meaningfully distinguish the FCIC records collection from others within NARA's custody.  Numerous records within NARA's custody (but outside FOIA) have been digitized into a more usable electronic format.  *See, e.g.*, Virtual Library, Nixon Presidential Library & Museum, *available at* http://www.nixonlibrary.gov/virtuallibrary/index.php; Fulgham Decl. at ¶¶ 26-27 (stating how approximately 35% of the 9/11 Commission records have now been processed, many of which are now digitally available through the website located at Tab F).  This mere act of digitization cannot be sufficient to subject the FCIC's records to FOIA.

II.   **CAUSE OF ACTION'S PROPOSED FOIA-BASED FRAMEWORK IS, BY ITS OWN TERMS, INAPPROPRIATE FOR LEGISLATIVE RECORDS TRANSFERRED TO NARA.**

As alluded to above, Cause of Action primarily relies on cases setting forth what constitutes an "agency record," as that term is used in FOIA.  The leading case, Cause of Action says, is *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996), which establishes a control-based framework, as well as a four-factor test "to evaluate whether an agency is in control of the records it possesses."  Cause of Action's Br. at 21.  As discussed in Section I.A, above, this FOIA-based framework is inapplicable, because NARA's legislative records exist wholly outside the FOIA universe.  Even apart from this threshold legal reason, however, Cause of Action's proposed FOIA framework is inapplicable on its own terms.

First, as discussed in NARA's opening brief (at 21-24), this control-based framework arose in the Congressional oversight context.  The particular concern animating this framework—distinguishing between different classes of records (congressional vs. executive)— is simply not present when a temporary legislative agency, at the conclusion of its term, transfers its records to NARA for preservation.  *See* NARA's Opening Br. at 23-24.

Cause of Action responds that the relevant precedents do not expressly limit themselves to only the Congressional oversight context.  *See* Cause of Action's Br. at 9-10.  Additionally, Cause of Action argues that control is a relevant factor in a wide variety of other contexts—such as evaluating the FOIA status of private records and judicial records.  *Id.*

It is true, as Cause of Action argues, that nothing in the precedents expressly limits the control-based framework to the Congressional oversight context.  But Cause of Action does not dispute that the concerns motivating the control-based framework are inapplicable to the present context—the transfer of records to NARA for preservation.  Thus, there is an ill fit between Cause of Action's proposed analysis and the context in which this case arises.  It does not make

sense to apply a four-factor test, intended to distinguish between different types of records in situations where information is being repeatedly exchanged, in a context where NARA is fulfilling an entirely separate role—*i.e.*, fulfilling its unique role within the federal government as a repository for records.  *See* Mills Decl. at ¶ 7; *see also* Cause of Action's Br. at 41 (acknowledging that the control-framework cases are intended to protect "Congress's 'constitutional prerogative' to keep its records secret").  The concerns underlying the control-based framework are not present here, which only confirms the control-based framework's inapplicability.

Furthermore, NARA is not arguing that control has been considered as a relevant factor *only* in the context of Congressional oversight.  Rather, NARA contends that this control-based framework, originally arising in the context of Congressional oversight, ought not to be extended to these circumstances.  The concern animating the control-based framework (the need to distinguish between different classes of records) applies equally with respect to executive agencies' possession of private and judicial records.  But that concern has no applicability with respect to a temporary legislative agency transferring its records to NARA for preservation.  *See* NARA's Opening Br. at 23-24.  Thus, the control-based framework should be rejected here.

Finally, it bears emphasizing that all of Cause of Action's precedents arise in a context where the requested records are either subject to FOIA, or subject to no disclosure scheme whatsoever.  The FCIC records, by contrast, will still be subject to NARA's administrative disclosure scheme regardless of whether FOIA applies or not.  *See generally* Fulgham Decl. at ¶¶ 19-24, 41.  Any doubt on the inapplicability of the control-based framework, therefore, should be resolved in NARA's favor.

III.   **EVEN UNDER CAUSE OF ACTION'S FOIA-BASED FRAMEWORK, NARA IS STILL ENTITLED TO DISMISSAL.**

Even were the Court to conclude that a control-based framework applied, NARA would still be entitled to dismissal.  The FCIC clearly intended to exercise control over the future disclosure of its records, and that fact alone warrants dismissal.  Even apart from this critical first factor, the three other factors in Cause of Action's proposed FOIA-based framework also weigh in NARA's favor.

A.   **The FCIC Clearly Intended to Exercise Future Control Over the Records, and That Fact is Dispositive.**

When the FCIC transferred its records to NARA, the FCIC clearly intended to impose restrictions on future access to those records.  These restrictions are evident from Chairman Angelides' letter to NARA, as well as the SF-258 form between the FCIC and NARA.  *See* NARA's Opening Br. at 24-26.  This clear evidence of intent to control is dispositive; the FCIC records are legislative in character.

Cause of Action offers a long series of arguments in response, none of which is persuasive.  First, Cause of Action argues that "Congress did not clearly express its intent to control [the FCIC] documents," and "Chairman Angelides—who is not a Member of Congress— cannot . . . express the will of Congress."  Cause of Action's Br. at 11; *see also id.* at 31-32.  But the D.C. Circuit's cases do not require Congress itself to express the intent to control; it is sufficient for an agent acting on behalf of Congress to express that intent.  *See, e.g.*, *United We Stand Am., Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004) (holding that Congress expressed its intent to control, relying solely on a letter from the Chief of Staff of a Joint Committee). Here, Congress's agent was Chairman Angelides, exercising his authority as an agency head to impose restrictions (with NARA's consent) on access to records.  *See* 44 U.S.C. § 2108(a).  Pursuant to

both the D.C. Circuit's caselaw and the Federal Records Act, therefore, the relevant intent to control may be expressed by a legislative agency head.[7]

Second, Cause of Action argues that the FCIC is an expired legislative commission, and therefore NARA, not the FCIC, currently has complete control over the FCIC records.  *See* Cause of Action's Br. at 32, 43-44.  Under the D.C. Circuit's precedents, however, the relevant inquiry is whether the legislative entity intended to exercise control over the records *at the time of transfer*.  *See Paisley v. CIA*, 712 F.2d 686, 694 (D.C. Cir. 1983) (examining whether documents were transferred to the CIA "in such a way as to manifest any intent by Congress to retain control," but finding no intent to control based on a lack of "*contemporaneous* and *specific* instructions . . . limiting either the use or disclosure of the documents"); *see also United We Stand*, 359 F.3d at 603 (interpreting *Paisley* as "chang[ing] the focus from agency control to congressional intent").

Here, at the time of transfer to NARA, the FCIC clearly intended to set forth restrictions on the use and disclosure of the FCIC records.  *See* NARA's Opening Br. at 24-26.  Moreover, at the time of transfer (February 11, 2011, *see* Compl. Exh. 2), the FCIC had not yet expired. Compl. at ¶ 14 (stating that the FCIC terminated on February 13, 2011).  Thus, at the time of

---

[7] Relatedly, Cause of Action repeatedly highlights how the FCIC records are legislative records, rather than Congressional records.  *See* Cause of Action's Br. at 31-32, 38-41.  This distinction is certainly accurate, but is also wholly irrelevant.  Cause of Action does not meaningfully dispute that all legislative entities are exempt from FOIA.  *Compare* NARA's Opening Br. at 9, *with*, Cause Of Action's Br. at 2 n.1; *see also Mayo v. Gov't Printing Ofc.*, 9 F.3d 1450, 1451 (9th Cir. 1993).  And because the entire legislative branch is exempt from FOIA, temporary legislative commissions are entitled to maintain control over their records just as much as Congress itself.  Furthermore, Cause of Action appears to argue that only the two houses of Congress and their official committees are entitled to maintain control over their records.  *See* Cause of Action's Br. at 40-41, 43.  If anything, this argument about the inapplicability of the congressional records line of cases only proves NARA's threshold argument—that the control-based framework is inapplicable, because legislative records transferred to NARA are not subject to FOIA as a matter of law.

transfer, the FCIC did, in fact, exercise control over the use and disclosure of the documents.  *See* 44 U.S.C. § 2108(a) (stating that, for agencies still in existence that have restricted access to their records, the Archivist "may not relax or remove such restrictions without the written concurrence of the head of the agency from which the material was transferred").  In short, the relevant time for examining a legislative agency's intent to control is at the time of transfer—not the present day, as Cause of Action suggests—and here, the FCIC clearly intended to, and did in fact, exercise control over the use and disclosure of its records.

Next, Cause of Action asserts that "the [FCIC] itself intended to relinquish control over the [FCIC] documents when it deposited its records with [NARA]."  Cause of Action's Br. at 32. Cause of Action attempts to support this argument by selectively quoting only the very first sentence of Chairman Angelides' letter, which states that the FCIC records will be transferred to NARA "for preservation and public access."  Cause of Action's Br. at 32.  This single sentence, Cause of Action says, "expresses an explicit intent to transfer both physical custody and ultimate control of Commission's records to NARA, without exception."  *Id.*

This argument is frivolous.   The very next sentence of Chairman Angelides' letter confirms that his letter "establishes criteria under which [the FCIC] records should be made available."  Compl. Exh. 1 at 1.  The next three paragraphs then describe, in detail, the various access restrictions that should be placed on the FCIC records.  *Id.* at 1-2.  Even Cause of Action admits that Chairman Angelides' letter imposed restrictions on the FCIC records.  *See* Cause of Action's Br. at 32-33.  The notion that the Angelides letter—not to mention the SF-258 and other indicia of control discussed in NARA's opening brief—could somehow be construed as "relinquishing control of the FCIC records" is absurd.  Cause of Action's Br. at 33.

Finally, Cause of Action argues that Congress created the FCIC to promote transparency, and this general Congressional purpose somehow trumps the access restrictions imposed on the FCIC records.  *See* Cause of Action's Br. at 11, 41-43.  This argument is meritless.  Whatever the purpose underlying the creation of the FCIC, that type of abstract, general purpose cannot trump the specific statutory authority granted to Commissioner Angelides and NARA to impose access restrictions on the FCIC records.  *See* 44 U.S.C. § 2108(a).

In sum, when the FCIC transferred its records to NARA for permanent preservation, the FCIC acted "with the clear intent and desire to put controls on the future access to, and use and disclosure of, FCIC records."  Fulgham Decl. at ¶ 34.  Even under Cause of Action's FOIA-based framework, this fact is dispositive.  The most analogous FOIA cases—the ones distinguishing between congressional and executive records—all hinge on whether the legislative entity expressed an intent to control the document at the time of transfer.  *See United We Stand*, 359 F.3d at 597 ("In this circuit, whether the IRS response is subject to FOIA turns on whether Congress manifested a clear intent to control the document."); *see also Paisley*, 712 F.2d at 693-94; *Goland v. CIA*, 607 F.2d 339, 346-48 (D.C. Cir. 1978).[8]  Here, because the FCIC clearly intended to exercise control over the use and disclosure of its records even after transfer to NARA, Cause of Action's lawsuit must be dismissed even under a FOIA-based framework.

**B.      The Three Other Proposed Factors Also Weigh in NARA's Favor.**

Even apart from the FCIC's intent to retain control over the FCIC records (which is itself dispositive), the three other factors in Cause of Action's proposed framework also confirm that

---

[8] Although Cause of Action asserts that the third *Burka* factor is the most important, *see* Section III.B.3, below, that is only true with respect to "documents [that] are created by an agency employee and located within the agency[.]"  *Bureau of Nat'l Affairs v. Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984).  Obviously, the FCIC records were not created by NARA. And in this context, where records have been transferred from one agency to another, control is the dispositive factor.  *See id.* ("In certain contexts, such as where a document is created by one agency and transferred to a second agency, control or possession is the critical analysis.").

the FCIC records are legislative, and thus outside of FOIA.  Those three other factors are: NARA's ability "to use and dispose of the record as it sees fit"; the extent to which NARA personnel "have read or relied upon the document"; and "the degree to which the document was integrated into [NARA's] record system or files."  *Burka*, 87 F.3d at 515 (internal quotation marks omitted).  Under this *Burka* framework, all four factors must weigh in Cause of Action's favor for the records to be considered "agency records" subject to FOIA.  *See Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988) (requiring that "all four factors be present"), *aff'd on other grounds*, 492 U.S. 136 (1989).

### 1.    NARA's Ability to Dispose of the FCIC Records.

NARA's longstanding practice has been to honor the access restrictions imposed on records, even for records whose originating agency has expired.  *See* Mills Decl. at ¶ 35 ("To the best of my knowledge, I know of no instance in the history of the National Archives since its inception in 1934 where the Archivist of the United States or his staff intentionally overrode or contravened the expressed intent of a donor of records with respect to the imposition of restrictions on access.").  In effect, then, NARA is not absolutely free to dispose of the FCIC records as it sees fit.  NARA must still, out of respect for the originating entity, take into account the access restrictions imposed by the FCIC.

Cause of Action asserts that NARA is indeed free to dispose of the FCIC records, as shown by NARA's provision of records to the House Oversight Committee, and by NARA's refusal to permit former Commissioner Wallison to review the FCIC records with counsel.  *See* Cause of Action's Br. at 34-35.  Neither of these facts alters the analysis.  First, providing records to the House Oversight Committee was consistent with another longstanding practice at NARA—*i.e.*, providing special access to current government officials.  *See* Section I.D, above. There is nothing improper about assisting current government officials in the exercise of their

duties and responsibilities, and the Court should not discourage NARA from doing so by ruling that such actions will cause records to become subject to FOIA.

Second, NARA's refusal to permit former Commissioner Wallison's counsel to review the FCIC records only proves NARA's commitment to honoring the FCIC's restrictions.  Chairman Angelides' letter—agreed to by NARA and incorporated into the SF-258—states that the ten former Commissioners may access the records, but it does not provide for access by the former Commissioners' representatives (such as counsel).  Adhering to the FCIC's access restrictions hardly proves that NARA is free to dispose of the records as it sees fit.  Thus, this second *Burka* factor also weighs in NARA's favor.

### 2.     NARA's Reliance Upon the FCIC's Records.

Cause of Action fundamentally misunderstands the application of this third *Burka* factor, regarding NARA's reliance on the requested records.  Specifically, Cause of Action argues that NARA has read and relied upon the FCIC records when it provided the House Oversight Committee with access to the records, and also when the Center for Legislative Archives began its organization and processing of these records.  *See* Cause of Action's Br. at 35-36.  Because these actions were "in the legitimate and ordinary performance of [NARA's] official duties," Cause of Action says, this "third *Burka* factor weighs conclusively in favor of Cause of Action." *Id.* at 36-37.

This argument incorrectly applies the third *Burka* factor.  It is true that NARA's official duties include processing, preserving, and providing access to the FCIC records, and that NARA has begun to undertake those actions.  NARA has not, however, read or relied upon the FCIC records when conducting its *own* operations or agency decisionmaking.  And *that* is what the third *Burka* factor's inquiry is about—were the underlying records relied upon as part of an executive agency's own decisionmaking process?

This interpretation of the third *Burka* factor is confirmed by a recent D.C. Circuit decision, holding that records from Fannie Mae and Freddie Mac were not agency records, even after those entities were placed under conservatorship by the Federal Housing Finance Agency. *See Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924 (D.C. Cir. 2011). In that case, the third *Burka* factor was "fatal to [the plaintiff's] claim," because the underlying documents shed no light on executive agency decisionmaking:

> The public cannot learn anything about agency decisionmaking from a document the agency neither created nor consulted, and requiring disclosure under these circumstances would do nothing to further FOIA's purpose of "open[ing] agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). . . . Although we appreciate Judicial Watch's interest in how much money Fannie and Freddie gave to which politicians in the years leading up to our current financial crisis, satisfying curiosity about the internal decisions of private companies is not the aim of FOIA, and there is no question that disclosure of the requested records would reveal nothing about decisionmaking at the FHFA.

*Judicial Watch*, 646 F.3d at 927-28; *see also Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) (describing the inquiry as whether "employees acting within the scope of their employment relied upon the document *to carry out the business of the agency*" (emphasis added, internal quotation marks omitted)). The FCIC records at issue here similarly shed no light on how NARA conducts its operations, or the decisionmaking processes of NARA. Thus, NARA has not "relied upon" the FCIC records in the *Burka* sense of the phrase. *Cf. Burka*, 87 F.3d at 515 (holding that the third factor was met because the agency "read and relied significantly on the information in *writing articles and developing agency policies*" (emphasis added)).

Furthermore, Cause of Action's interpretation of this third factor would prove far too much. Cause of Action is essentially arguing that records are subject to FOIA when NARA has screened the records or made them publicly available. But NARA routinely performs these functions on its record collections, including those collections that are not subject to FOIA. For

instance, NARA engaged in extensive screening of the Nixon materials.  *See generally* 36 C.F.R. § 1275.46; *Nixon*, 433 U.S. at 450-52 (discussing the screening process undertaken pursuant to the PRMPA).  Yet the D.C. Circuit in *Ricchio* had no trouble concluding that the Nixon materials were not subject to FOIA.  Thus, NARA's screening of records cannot be sufficient to subject particular records to FOIA.  Such a rule would render virtually all of NARA's holdings—including presidential records, donated materials, and judicial records—subject to FOIA, which is clearly not the case.

At bottom, this factor only confirms NARA's uniqueness as an executive agency responsible for preserving the nation's permanently valuable records.  *See* Mills Decl. at ¶ 7. NARA's own operational files—those that govern and relate to how NARA itself makes decisions and conducts its business—are subject to FOIA.  But at least some of NARA's other collections—containing files that NARA does not rely upon as part of its own decisionmaking processes—are not subject to FOIA, such as the FCIC records at issue here.

### 3.    Integration Into NARA's Files.

The final *Burka* factor is whether the records have been integrated into the agency's file systems.  As Cause of Action notes, "[d]ocuments are not integrated if they are segregated for the purpose of FOIA exclusion."  Cause of Action's Br. at 37.[9]  Here, the FCIC records are indisputably segregated from NARA's other files.

For all of its record collections (both legislative and non-legislative), NARA practices the principles of provenance and original order, which are fundamental principles of the archival

---

[9] Cause of Action's citation for this proposition is actually to the dissenting opinion in *United We Stand*, 359 F.3d at 607 (Henderson, J., dissenting).  The majority based its decision on other grounds, however, and thus NARA agrees with Cause of Action that this proposition is an accurate statement of the law.

profession.  Mills Decl. at ¶ 25; *see* NARA's Opening Br. at 14-15.  Together, these principles ensure that NARA duly segregates all of its various records collections.

With respect to the FCIC records, they are stored within the Center for Legislative Archives, which means they are segregated from other FOIA-accessible holdings at NARA. Mills Decl. at ¶ 23; Fulgham Decl. at ¶ 1.  The FCIC records are then further segregated into a records group devoted solely to legislative commissions, with a sub-group devoted solely to the FCIC.  *See* Mills Decl. at ¶ 30.  Thus, the FCIC records are clearly segregated within NARA, and specifically segregated from other FOIA-accessible collections.

Cause of Action's response is to again rely on the provision of records to the House Oversight Committee.  But again, Cause of Action's argument rests on a mistaken factual premise; NARA was not the entity that organized the documents into a searchable Concordance database.  *See* Section I.D, above.  And in any event, NARA's processing of the records for the House Oversight Committee is irrelevant to this fourth factor—whether NARA segregates the original FCIC records apart from NARA's other FOIA-accessible collections.

Cause of Action thus cannot satisfy any of the four factors established by the *Burka* decision.  Even under Cause of Action's own framework, therefore, the FCIC records are legislative in character, and outside the reach of FOIA.  Cause of Action's lawsuit—which is predicated entirely on violations of FOIA—must be dismissed.

## IV.   NARA'S MOTION IS FULLY COMPLIANT WITH THE LOCAL RULES, AND IS THE ONLY BASIS FOR ENTERING JUDGMENT IN THIS CASE.

### A.   NARA's Motion Complies with Local Civil Rule 7(h).

Cause of Action contends that NARA's motion to dismiss or in the alternative for summary judgment should be denied because it was not accompanied by a statement of material facts not in dispute.  *See* Cause of Action's Br. at 12.  This argument is meritless.

NARA's motion was styled as a motion to dismiss under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.  Nothing in the Federal Rules or Local Rules requires a statement of material facts in connection with such a motion.  To be sure, NARA's motion also argued in the alternative for summary judgment.  But that argument was presented solely in the alternative, and NARA's consistent position has been that this lawsuit should be resolved on a motion to dismiss.  The Court should not require a party to file a statement of material facts before converting a motion to dismiss into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) (stating that if a motion under Rule 12(b)(6) presents material outside the pleadings, "the motion *must* be treated as one for summary judgment under Rule 56" (emphasis added)).

That is particularly true here, where there is no practical reason for requiring a statement of material facts.  NARA's motion presents a threshold legal question about whether the lawsuit may proceed.  No discovery has been taken, and all of the relevant facts are either in the Complaint, incorporated into the pleadings, or subject to judicial notice.  A statement of material facts in connection with such a straightforward motion is plainly unnecessary and not required by either the Federal Rules or Local Rules.

Notwithstanding the lack of any obligation to do so, NARA hereby submits a statement of material facts in connection with this filing, in the event that the Court converts NARA's motion to dismiss into a motion for summary judgment.  As a result, Cause of Action cannot claim any prejudice, particularly because NARA's opening brief also contained a detailed statement of the facts.  *See* NARA's Opening Br. at 5-8; *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 857 F. Supp. 2d 129, 136-37 (D.D.C. 2012) (refusing to deny a motion for summary judgment based on the omission of a statement of material facts, because the plaintiff

did not suffer any prejudice).  In short, there is no basis or rationale for denying NARA's motion

based on Local Civil Rule 7(h).

      **B.**    **Cause of Action's Cross-Motion for Summary Judgment is Premature and Must Be Denied.**

NARA's motion to dismiss presents a threshold issue for the Court's resolution—*i.e.*,

whether the records requested by Cause of Action are agency records subject to FOIA.  Cause of

Action both opposed this motion, and also cross-moved for summary judgment.

Cause of Action's cross-motion is obviously premature.  If the Court agrees with NARA,

Cause of Action's lawsuit should be dismissed.  If the Court disagrees with NARA (and holds

that the FCIC records are subject to FOIA), the case would then move on to document searches

and processing pursuant to FOIA.  Under no circumstances would Cause of Action be entitled to

outright judgment before FOIA processing even begins.  Regardless of how NARA's motion is

resolved, therefore, the Court should deny Cause of Action's cross-motion as premature.

## CONCLUSION

For the foregoing reasons, Cause of Action's cross-motion for summary judgment should

be denied, and NARA's motion to dismiss for failure to state a claim, or in the alternative for

summary judgment, should be granted.

Dated:  January 11, 2013                 Respectfully Submitted,

                                 STUART F. DELERY
                                 Principal Deputy Assistant Attorney General

                                 RONALD C. MACHEN JR.
                                 United States Attorney

                                 ELIZABETH J. SHAPIRO
                                 Deputy Branch Director

                                 */s/ Daniel Schwei*
                                 Daniel Schwei
                                 Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel:   202-305-8693
Fax:  202-616-8470
daniel.s.schwei@usdoj.gov

*Attorneys for Defendant*