UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAUSE OF ACTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-cv-1342 (JEB) |
| | ) | |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) ) | **HEARING REQUESTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Cause of Action, Inc. ("CoA" or "Plaintiff"), pursuant to Local Rule 7 and Federal Rule of Civil Procedure 56, submits this reply in support of its Cross-Motion for Summary Judgment. On December 19, 2012, plaintiff filed its Cross-Motion for Summary Judgment ("Pl.'s Cross-Mot."). On January 11, 2013 defendant National Archives and Records Administration ("NARA") filed its Opposition ("Def.'s Opp'n"). Plaintiff's Reply follows.

**INTRODUCTION**

On October 3, 2011, CoA submitted a Freedom of Information Act ("FOIA") request for specific records of the Financial Crisis Inquiry Commission ("FCIC" or "the Commission") that were transferred into NARA's custody. CoA asserts that, under the relevant tests for determining whether agency records are subject to FOIA, NARA both possessed and controlled the FCIC records at the time of CoA's FOIA request. CoA disputes defendant's arguments that its Motion for Summary Judgment was premature; that the FCIC records were legislative records wholly outside the reach of FOIA; and that NARA did not control the records at the time of the FOIA request. The FCIC records were in the possession and control of NARA, exposing them to

the disclosure regime of FOIA. On this basis, the Court should grant CoA's Cross-Motion for Summary Judgment.

## ARGUMENT

### I. CAUSE OF ACTION'S CROSS-MOTION FOR SUMMARY JUDGMENT WAS PROCEDURALLY PROPER.

Defendant argues that CoA's motion for summary judgment is "obviously premature" because the case would proceed to FOIA document production if the court held "that the FCIC records are subject to FOIA." Def.'s Opp'n at 25. Defendant presupposes that its dispositive motion allows the court to hold that the FCIC records *are* subject to FOIA. In making this argument, defendant has ignored an important procedural point. CoA must submit its dispositive cross-motion in order for the Court to conclude that the FCIC records are subject to FOIA. Under defendant's motion, the Court can decide in favor of defendant by holding that the records are *not* subject to FOIA, or it can decide against defendant by holding that at defendant has not satisfied the 12(b)(6) standard, there are material facts in dispute, or defendant is not entitled to judgment as a matter of law. Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 1. If the Court decided against defendant, it would not hold that the FCIC records are subject to FOIA. Moreover, if defendant's Motion for Summary Judgment was alone denied, the parties would move into discovery, during which they would have the opportunity to depose witnesses and otherwise assess the accuracy of the facts presented. It is only CoA's cross-motion that gives the Court the opportunity to rule that records in question are subject to FOIA because they are in the possession and control of NARA.

Defendant also appears to misapprehend where the parties are in this litigation. Defendant argues that CoA does not appreciate the difference between providing unredacted copies to the House Oversight and Financial Services Committees versus processing the records

under FOIA exemptions.  Def.'s Opp'n at 9 (stating that the latter is "obviously more burdensome").  CoA perfectly well understands this distinction, and CoA understands that the distinction is immaterial at this stage.  The question presented to this Court is whether the FCIC records are subject to FOIA as a matter of law, not whether processing FOIA requests would be burdensome for NARA.  As with all records subject to disclosure under FOIA, NARA would have the opportunity to contest disclosure, in whole or in part, under one or more of FOIA's statutory exemptions.

NARA's claim—that requiring its employees and officers to process the FCIC records would be greatly disruptive—is spurious.  *See* Fulgham Decl. ¶ 38.  NARA creates the appearance that it has only a few employees capable of processing the records, Fulgham Decl. ¶¶ 37-38 (stating it has only 6.5 full-time employees and subjecting the FCIC records to FOIA would "interfere with the Center's ability to orderly process the records."); however, these employees are dedicated exclusively to the Legislative Center.  Defendant failed to mention that NARA has a separate FOIA processing unit, distinct from its other departments, as required by law.  5 U.S.C. §§ 552(j)-(*l*) (requiring executive agencies to designate a Chief FOIA Officer, FOIA Public Liaisons, and FOIA Request Center that receives all FOIA requests); *see also* NARA's website, http://www.archives.gov/foia/foia-guide.html.  NARA's FOIA officers are presumptively capable of analyzing the FCIC records for FOIA exemptions, as they do with other FOIA requests.  NARA has provided no evidence that its FOIA officers would be unable to evaluate the FCIC documents for FOIA exemptions.  Nor has NARA made the case that its Legislative Center staff would be responsible for processing FOIA requests.[1]  Defendant operates under that assumption without proving it.

---

[1] If the Legislative Center does not process FOIA requests for FCIC records, then Mr. Fulgham's claim that his Center's administrative scheme would be disrupted by such requests is problematic, at best. *See* Fulgham Decl. ¶¶ 30-42.

Furthermore, defendant's argument that CoA's request would undermine NARA's "systematic organization, indexing, or finding aid development" is unfounded. *See* Fugham Decl. ¶ 38; Mills Decl. ¶ 25. The application of FOIA to the FCIC records does not affect these processes. The FCIC records sought by CoA have already been formatted and provided to the House Oversight and Financial Services Committees. If CoA's request is granted, NARA would only be obligated under CoA's request to submit those records—in their current format—to be processed by the FOIA Request Center for FOIA exemptions.

Finally, defendant argues that because its motion for summary judgment is in the alternative, it is not required to supply a statement of material facts not in dispute under Local Rule 7(h) until after this Court converts the motion. To be sure, however, defendant supplied a statement of material facts as an addendum to its opposition and reply. Defendant's procedural claim is mistaken. When a party moves for summary judgment in the alternative but fails to provide a statement of material facts, the facts presented by the opposing party will be treated as true. *See, e.g.*, *Sing v. Napolitano*, 710 F. Supp. 2d 123, 126 n.3 (D.D.C. 2010). Given this rule, CoA's statement of facts should be treated as true.

## II. RECORDS IN NARA'S CUSTODY AND CONTROL ARE WITHIN THE REACH OF FOIA.

### A. **The D.C. Circuit's *Ricchio* Decision Is Not Applicable to the Present Lawsuit.**

The Financial Crisis Inquiry Commission's ("FCIC" or the "Commission") records became agency records subject to the disclosure requirements of the FOIA when they entered into NARA's custody *and* control. Pl.'s Cross-Mot. at 9-12. Defendant attempts to subvert this argument by claiming that *Ricchio v. Kline* is dispositive. Def.'s Opp'n at 3 *citing Ricchio v. Kline*, 773 F.2d 1389 (D.C. Cir. 1985) (Presidential Recordings and Materials Preservation Act ("PRMPA") superseded FOIA as the only method for seeking disclosure of the Nixon

4

transcripts). Unlike the Presidential Recordings and Materials Preservation Act in *Ricchio*, which superseded and displaced FOIA, there is no basis to conclude that the FCIC records in NARA's custody and control exist wholly outside of FOIA's reach.

Defendant claims that, like in *Ricchio*, this Court should "decline to address the 'agency records' question." Def.'s Opp'n at 4. In *Ricchio*, the D.C. Circuit declined to address whether the Nixon transcripts, then in the custody of NARA, were agency records subject to FOIA. 773 F.2d at 1391. The "'agency records' question" was irrelevant given the circumstances: Congress enacted the PRMPA to expressly supersede any application of FOIA to the Nixon transcripts. *Id*. at 1395. The *Ricchio* court explained that the PRMPA was comprehensive and carefully designed because the statute identified seven factors that NARA must incorporate into regulations governing public access to Nixon's records. *Id*. at 1393. The seven factors of the PRMPA were more specific than those of FOIA and included "the need to provide the public with the full truth, at the earliest reasonable date, of the abuses of governmental power popularly identified under the generic term 'Watergate'" and "the need to provide public access to those materials which have general historical significance." *Id.* The *Ricchio* court narrowly tailored its holding to apply only in the context of a comprehensive and carefully designed disclosure regime, like the Presidential Recordings and Materials Preservation Act. *Id.* at 1395. The PRMPA satisfied this standard because it was "designed to protect both the interest of the public in obtaining disclosure of President Nixon's papers and of President Nixon in protecting the confidentiality of Presidential conversations and deliberations." *Id*. at 1395. By enacting such a comprehensive disclosure regime for the Nixon records in NARA's possession, Congress superseded FOIA.

By claiming that the Federal Records Act ("FRA") similarly supersedes FOIA, defendant fails to recognize *Ricchio*'s heightened burden of "comprehensiveness"—a burden that the FRA

5

does not meet. *See Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 149 (D.C. Cir. 1986) (holding that a subsequent statute may not be held to supersede FOIA except to the extent that it does so expressly)[2]; *Julian v. U.S. Dep't of Justice*, 806 F.2d 1411, 1420 (9th Cir. 1986) (holding that neither Fed. R. Crim. P. 32 nor 18 U.S.C. § 4208 "approximate the specificity or particularity required to displace FOIA").[3] Unlike the Presidential Recordings and Materials Preservation Act, the FRA is not a sufficiently comprehensive, carefully tailored and detailed disclosure regime. Where the Presidential Recordings and Materials Preservation Act required NARA to issue new rules for public access to the Nixon records it possessed, the FRA has no such requirement; instead, the FRA merely established a framework for federal agencies to manage records.[4] Defendant acknowledges as much when it states that under the FRA, "each agency head is given *certain* duties pertaining to the creation, management, and disposal of federal records." Def.'s Mot. at 3 (emphasis added). FOIA, however, also imposes duties on executive agencies, requiring them to make records available to any person who properly requests them. Def.'s Mot. at 4-5. The requirements of the FRA and FOIA are coterminous, and not mutually exclusive as they were in *Ricchio*. This is made clear by NARA's Standard Form 258, a form agreement that federal agencies execute to transfer records into NARA's custody. Def.'s Mot. at 3-4. The Standard Form 258 explicitly states that records held by NARA are

---

[2] *See also* the court's comparison of IRC § 6103 ("It would be another matter if § 6103 established some rules and procedures -- duplicating those of FOIA -- for individual members of the public to obtain access to IRS documents. But it does not.") with IRC § 6110 ("Significantly, Congress did not leave us to speculate whether it was comprehensive enough to constitute an implicit pro tanto repeal of FOIA; the last subsection specifies that the prescribed civil remedy in the Claims Court shall be the exclusive means of obtaining disclosure.").

[3] *See also Essential Info. v. U.S. Info. Agency*, 134 F.3d 1165, 1172 (D.C. Cir. 1998) (Tatel, J., dissenting) ("In the thirteen years since *Ricchio*, we have not applied it to any other statute. We rejected reasoning similar to *Ricchio*'s in *Church of Scientology*.... The Ninth Circuit refused to apply *Ricchio* to Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 4208 …. *Ricchio* has no applicability here either.")

[4] *See* Marie V. O'Connell, "A Control Test for Determining 'Agency Record' Status Under the Freedom of Information Act," 85 Colum. L. Rev. 611, 614 n.30 (Apr. 1986) ("Agency employees who process FOIA requests have been advised that 'the Federal Records Act was passed for records management purposes, while FOIA was passed to strengthen the public's right to know…' U.S. Dep't of Justice, FOIA Counselor: What Is An 'Agency Record'?, FOIA Update, Fall 1980, at 5 (emphasis in original).").

governed by the Federal Records Act ("FRA") and by FOIA. Compl., Ex. 2; Pl.'s Cross-Mot., Ex. 4. Yet, defendant argues that the FRA supersedes FOIA, a position inapposite with the Standard Form 258—which NARA drafted—and with *Ricchio*. By creating the Standard Form 258, NARA recognizes that the FRA is coterminous with FOIA's disclosure requirements. Accordingly, there is no basis for defendant's argument that "the specific disclosure scheme of the Federal Records Act (and NARA's administrative implementation of that Act) trump[s] the general disclosure scheme of FOIA." Def.'s Opp'n at 4.

Defendant NARA has failed in its attempt to rely on the D.C. Circuit's narrow holding in *Ricchio*. The FRA does not supersede FOIA. For this reason, the "'agency records' question" is properly before this Court.

### B. Congressional and Executive Precedent Do Not Establish That Records Transferred into the Custody and Control of NARA Are Exempt From FOIA.

Defendant NARA refuses to acknowledge CoA's argument that transferring the FCIC records into NARA's control and custody presents a unique situation. *See* Def.'s Opp'n at 6. The FCIC was a temporary, investigative commission established within the legislative branch; as such, its records were *then* exempt from FOIA. Pl.'s Cross-Mot. at 21. However, the FCIC records were transferred into the custody of NARA immediately before its disbandment. Pl.'s Cross-Mot. at 33-34. The FCIC soon ceased to exist, and its records are not only in NARA's custody, but are also under its control. Pl.'s Cross-Mot. at 21. CoA does not argue that all legislative records held by NARA are subject to FOIA—nor has CoA "ignored" NARA's archival regime. *C.f.* Def.'s Opp'n at 6. CoA argues that the FCIC records became agency records subject to FOIA when they entered NARA's custody and control. *See* Pl.'s Cross-Mot. at 30. On these bases, NARA's "control" is the relevant question before this Court.

### III. UNDER *BURKA*, NARA EXERCISED CONTROL OVER THE FCIC RECORDS.

The *Burka* analysis is a totality of the circumstances test, in which FOIA's presumption of disclosure remains in full effect. *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) (the term "agency records" shall "not be manipulated to avoid the basic structure of FOIA").

#### A. Chairman Angelides' Letter Is Neither Dispositive Nor Indicative of Congressional Intent Regarding Disposition of the FCIC Records.

Defendant argues that "the FCIC clearly intended to impose restrictions on future access" in the February 11, 2011 letter from Chairman Angelides to the National Archivist. Def.'s Opp'n. at 15. NARA argues that the terms of this letter and the modified Standard Form 258 are dispositive on the intent prong, because they demonstrate the FCIC's intent to retain future control of its records. *Id.* This argument fails for the reasons set forth below.

First, Congress expressed no intent to retain control over all legislative agency records, e.g., the FCIC records, when it enacted the Federal Records Act ("FRA"), *see* 44 U.S.C. § 2108(a); nor did Congress express its intent for the FCIC to retain control over its records upon the Commission's termination. *See* Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), *et seq*. Without Congress clearly expressing intent to control the FCIC records, the Archivist's discretion and authority under the Federal Records Act ("FRA") is at issue. 44 U.S.C. § 2108(a).[5] That section of the FRA provides in pertinent part:

> [W]hen the head of a Federal agency states, in writing, restrictions that appear to him to be necessary or desirable in the public interest with respect to the use or examination of records being considered for transfer from his custody to the Archivist, the Archivist shall, if he concurs,[,] impose such restrictions on the records so transferred, and may not relax or remove such restrictions without the written concurrence of the head of the agency from which the

---

[5] Section 2108 is expressly referenced under the "Terms of Agreement" in Standard Form 258.

> material was transferred. . . . **In the event that a Federal agency is terminated and there is no successor in function, the Archivist is authorized to relax, remove, or impose restrictions on such agency's records when he determines that such action is in the public interest.**

44 U.S.C. § 2108(a) (emphasis added). Accordingly, since the FCIC no longer exists and has no successor in function, NARA has discretion to determine what, if any, restrictions should be placed on disclosure of FCIC records, if the Archivist determines that such action is "in the public interest." *Id.* The Archivist exercised his discretion under 44 U.S.C. § 2108(a) when he formatted and transferred the FCIC documents to the House Oversight and Financial Services Committees after February 18, 2011. *See* Epstein Decl. ¶¶ 7, 10-11; Fulgham Supp'l Decl. ¶ 4. NARA also exercised its discretion under 44 U.S.C. § 2108(a) when it prohibited former Commissioner Wallison from accessing the FCIC records with counsel. *See* Pl.'s Cross-Mot. at 29-33. Absent any indication by Congress that either Congress or the FCIC would retain control over the FCIC records after their deposit with the Archivist, the FRA governs. Under the FRA, NARA exercises exclusive control over the FCIC records.

Second, NARA ignores the nature of FCIC during and after it transferred its records to NARA.[6] FCIC was a temporary commission created by FERA with a specific purpose and a specific expiration date—the Commission ceased to exist on February 13, 2012. Moreover, a non-existent legislative commission exercises control over nothing. The transfer of records by the FCIC on February 11, 2011 meant that, upon its expiration, the FCIC retained neither possession nor control of its records, notwithstanding any restrictions placed upon future access. In contrast, every entity analyzed under the first *Burka* factor is an extant agency. *See, e.g.*, *CREW v. U.S. Dep't of Homeland Security,* 527 F. Supp. 2d 76, 97 (D.D.C. 2007) (Department

---

[6] An FCIC staff person executed Standard Form 258 on behalf of the Commission, and in so doing also altered a material term of the "Terms of Agreement" regarding restrictions placed on documents transferred to NARA in light of FOIA.

of Homeland Security); *Judicial Watch v. U.S. Secret Service,* 803 F. Supp. 2d 51, 57-61 (D.D.C. 2011) (Secret Service); *McKinley v. Board of Governors of Fed. Reserve System,* 849 F. Supp. 2d 47, 57-58 n.5 (D.D.C. 2012) (Federal Reserve). This important distinction supports the conclusion that the FCIC relinquished control over its records upon their transfer to NARA.

Third, the successive declarations put forward by NARA, to the extent they are deemed credible, indicate the extensive level of control NARA exercised in processing, formatting and reviewing the FCIC records. *See* Fulgham Decl. ¶¶ 30-42; Fulgham Supp'l Decl. ¶¶ 3-4. NARA produced no declaration, affidavit, or other statement from Chairman Angelides, any FCIC Commissioner, any staff member, or other individual connected with FCIC as to the nature and/or intent of the FCIC in depositing its records with NARA. Indeed this would be the best evidence of such intent. NARA's declarations indicate exactly the opposite point, that it exercised full use and control over FCIC's records when they were transferred to NARA's possession.

      B. **NARA Uses and Disposes FCIC Records As It Sees Fit and with Unlimited Discretion**

NARA has unlimited discretion to use and dispose of the FCIC records as it see fit, and accordingly satisfies the second *Burka* factor. Pl's Cross-Mot. at 33-35. NARA does not dispute its ability to use the FCIC records because the very nature of NARA's mission requires it use the FCIC records when it reviews, indexes, catalogues, and otherwise formats them. *See, e.g.*, Fulgham Supp'l Decl. ¶¶ 3-6. NARA's Opposition does not address its ability to "use" the FCIC records. That issue is therefore conceded and should be decided in CoA's favor. *Williams v. Dodaro*, 806 F. Supp 2d. 246, 256 (D.D.C. 2011) (explaining that it is "well understood in this Circuit" when a party files an opposition to a dispositive motion and addresses only certain

arguments raised by the moving party, the court may treat the arguments that the opposing party "failed to address as conceded.")

Nonetheless, NARA violated its own procedure for how and when government agents can access documents in its possession, thereby demonstrating its ability to use and dispose of the FCIC records as it sees fit. Exhibit 1, NARA Interim Guidance 1605-2, *Special Access by Government Officials to Classified and Unclassified, Closed Federal Records in NARA's Legal Custody* (Mar. 21, 2006) (hereinafter "Directive"); *see also* Def.'s Opp'n at 11.[7] This Directive requires that any congressional request to access records be made by the chairman of the committee making the request, and that such request *must* be sent to the General Counsel of NARA, specifying "the records being requested and the purpose of the request." *Id.* ¶ 5 (emphasis added). Once a congressional request for records is properly submitted to NARA, the unit of NARA possessing the documents will arrange for the requestor to review the documents "in a non-public area." *Id.* ¶ 7(a).

The February 18, 2011 letter from the Chairmen of the House Oversight and Financial Services Committees violated NARA's own Directive. First, the February 18th letter was addressed to the National Archivist, not NARA's General Counsel in violation of paragraph 5 of the Directive. There is no admissible evidence that NARA's General Counsel ever saw the letter. There is no indication that NARA's General Counsel determined that the letter was "from an appropriate official," a violation of paragraphs 4(b) and 5. The employees of NARA's Center for Legislative Activities ("CLA") violated paragraph 7(a) of the Directive when they copied and formatted the FCIC records to send to the staff of the House Oversight and Financial Services

---

[7] By its terms, the Directive applies to "accessioned Federal records" in NARA's custody, "donated materials of the Office of Records Services", but excludes "Presidential records and materials governed by the Presidential Records Act (PRA), the Presidential Recordings and Materials Preservation Act (PRMPA), or 44 U.S.C. § 2111 for donated presidential historical materials." This compels the conclusion that the PRA and PRMPA are distinct statutes dealing with a discrete category of documents, records, and materials. Defendant's conflation of presidential records with the FCIC records at issue here is erroneous.

Committees. *See* Fulgham Supp'l Decl. ¶¶ 3-6 (assuming his declaration to be true and credible). NARA provides no explanation for its disregard of its own protocol in producing voluminous FCIC records to the referenced House Committees.[8] By disregarding its own procedure in disseminating the FCIC documents, NARA demonstrates its ability to use and dispose of the records as it sees fit.

Under section 7(b) of the Directive, the House Oversight and Financial Services Committees are free to publicly release the FCIC records, and accordingly are not bound by the restrictions in Chairman Angelides' letter. By allowing these House Committees to fully possess the FCIC documents in contravention of NARA's own Directive, NARA demonstrates its autonomy and unfettered discretion to use and dispose of the FCIC records.

NARA contends that it honors the intent of "donors" depositing records with NARA. Def.'s Opp'n at 19 (quoting Mills Decl. ¶ 35). The term "donor," however, has a particular meaning within the Federal Records Act ("FRA"), applying to past presidents or private parties who voluntarily deposit records with NARA for historical preservation under 44 U.S.C. §§ 2111 & 2112(c). *See, e.g.*, *Nixon v. United States*, 782 F. Supp. 634, 639 (D.D.C. 1991) (discussing Kennedy records voluntarily donated); *Nixon v. Administrator of General Services*, 408 F. Supp. 321, 338 n.19 (D.D.C. 1976) ("donor-imposed access restrictions" used by Hoover, Eisenhower, Kennedy, and Johnson). NARA acknowledges this distinction. *See* Mills Decl. ¶ 19 (acknowledging that "donated records" come from private sources, not agency heads). The FCIC is neither a private source nor a former president, so NARA's claim that it has never "contravened the express intent of a donor of records" is irrelevant to FCIC's intent. Mills Decl. ¶ 35.

---

[8] This is particularly curious given the Mills and Fulgham declarations regarding original order, provenance and NARA's administrative scheme for processing of and access to FCIC records.

### C. NARA Used and Relied Upon the FCIC Documents in the Conduct of Its Official Duties, Satisfying the Third *Burka* Factor

NARA argues that its employees never "read or relied upon the FCIC records when conducting its *own* operations or agency decisionmaking," and therefore does not satisfy the third *Burka* factor. Def.'s Opp'n at 20. This argument is factually inaccurate and does not follow District of Columbia Circuit precedent.

NARA has read at least a portion of the FCIC records in the "legitimate conduct of its official duties." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989). Mr. Fulgham admits as much when he states that NARA's reading and review of the FCIC records is a "line-by-line review process" that "is extremely time-consuming." Fulgham Decl. ¶ 39. It is difficult to conceive how NARA would perform any analysis or review of the FCIC records without, at a minimum, reading them. *Burka v. U.S. Dep't of Health & Human Services,* 87 F.3d 508, 515 (D.C. Cir. 1996). It is also true that NARA has denied performing any "archival functions, including line-by-line review of documents to determine what information should be deemed exempt from public release" with regard to the FCIC records, having had control of the documents for two years. *See* Fulgham Supp'l Decl. ¶ 6. Defendant, however, does not specifically deny reading the documents.

Defendant argues that because the FCIC records were not part of NARA's decisionmaking, the third *Burka* factor is not satisfied. Def.'s Opp'n at 21 (citing *Judicial Watch, Inc. v. Fed. Housing Finance Agency*, 646 F.3d 924, 927-28 (D.C. Cir. 2011)). However, *Judicial Watch* is distinguished because the documents in *Judicial Watch* were never touched by anyone at the agency: "no one at the [agency] had read [the records] and that until someone at the [agency] used the requested documents, they could not be agency records for purposes of FOIA." *Id.* at 924. That is not the case here, where NARA admits its official duties include

"processing, preserving, and providing access to the FCIC records," and NARA further admits that it has begun to undertake such actions. Def.'s Opp'n. at 20.

For these reasons, and the reasons discussed in CoA's Cross-Motion, NARA has satisfied the third *Burka* factor.

### D. FCIC's Records Are Integrated Into NARA's Computer System, Satisfying the Fourth *Burka* Factor.

NARA unpersuasively argues that the FCIC documents were not integrated into NARA's computer system. Def.'s Opp'n at 22-23. NARA misinterprets integration and segregation of agency records, which under precedent in this jurisdiction, requires a case-by-case analysis of the facts to determine whether the fourth *Burka* factor is satisfied. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Secret Service*, 803 F. Supp. 2d 51, 60 (D.D.C. 2011); *CREW v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 76, 96 (D.D.C. 2007).

NARA revealed the great extent to which the FCIC records were integrated into its system when it allowed former Commissioner Wallison to review the records in December 2012. NARA took the FCIC records and made them "available on a computer" for former Commissioner Wallison to view in NARA's controlled setting. Compl., Ex. 8, letter from Gary M. Stern to Peter J. Wallison (Apr. 18, 2012). NARA admits that the FCIC records were integrated into NARA's computer system. *CREW*, 527 F. Supp. 2d at 96 (Integration is integration: "The length of time a record is saved skirts the salient issue of whether it was integrated into the agency's record system in the first place.").

NARA also reveals that the FCIC records were integrated into its computer system because NARA formatted, copied, re-formatted, and transferred the records in electronic format to the House Oversight and Financial Services Committees. *Judicial Watch,* 803 F. Supp. 2d at 60 (downloading records into an agency's system, regardless of whether they are retained or

deleted at some future point, constitutes integration under *Burka*).  Moreover, "[t]he fact that the records are transferred is not dispositive in determining whether the records are integrated." *Id.* (citing *CREW*, 527 F. Supp. 2d at 96).

The FCIC records were accessed by NARA employees in the production to the House Oversight Committee, in the Wallison production, and going forward, as NARA has controlled the documents for two years and NARA has "begun to undertake" its official duties including "processing, preserving, and providing access to the FCIC records." Def.'s Opp'n at 20.  Indeed it is mystifying that NARA contests integration of the FCIC records into its database when doing so is a threshold step in reviewing and analyzing such records.

Defendant's Opposition makes much of its "segregation" of the FCIC records by the Center for Legislative Archives. *See* Def.'s Opp'n at 22-23.  For an agency to invoke this exception to the fourth *Burka* factor, it must segregate the records for FOIA purposes, not for agency purposes.  *See CREW,* 527 F. Supp. 2d at 96 (citing *United We Stand v. IRS,* 359 F.3d 595, 607 (D.D.C. 2007)).  The FCIC records have not been segregated for FOIA purposes as permitted under 5 U.S.C. §§ 552(j)-(*l*).  Instead, to the extent the FCIC records have been segregated, they were done so for agency purposes: the records were transferred to the Legislative Center for processing and archival.  *See* Fulgham Decl. ¶ 30; Pl.'s Cross-Mot at 37. Additionally, NARA's recitation of successive segregations of the FCIC records by Mr. Fulgham's staff is proof that NARA has integrated those records into its computer system by virtue of the performance of those functions.

### IV. THE SUPPLEMENTAL FULGHMAN DECLARATION CONTAINS INADMISSIBLE MATTER THAT IS WITHOUT FOUNDATION, IS HEARSAY AND IS NOT BASED ON PERSONAL KNOWLEDGE.

The Supplemental Declaration of Robert Matthew Fulgham, Jr. ("Fulgham Supp'l Decl.") suffers from the same defects as his first Declaration.  *See* Plaintiff's Corrected Motion

15

to Strike the Declarations of Robert Matthew Fulgham, Jr. and Thomas E. Mills or in the Alternative for Leave of Court to Take Limited Discovery.

Federal Rule of Civil Procedure 56(c)(4) requires that the facts set out in an affidavit in support of a motion for summary judgment be based on personal knowledge and admissible in evidence. Mr. Fulgham states that the facts set forth are made "based on personal knowledge and information supplied to me by my staff." Fulgham Supp'l Decl. ¶ 2. Any delineation between the two sources of information is not identified in the remaining paragraphs of the Declaration. Paragraph Four of the Supplemental Declaration is based entirely on hearsay, lacks foundation and does not appear to be based on Mr. Fulgham's personal knowledge. The paragraph begins, "My understanding is that . . . ," and it goes on to specifically describe a cascade of events, interactions, and communications central to this litigation that occurred between J.R. Deng, Chief Information Officer to the Committee on Oversight and Reform; Brien Beattie, staff to House Oversight Majority; and T. Ashley Smoot, former IT specialist in Mr. Fulgham's office. The basis of Mr. Fulgham's knowledge or access to this information is not supplied. Electronic communications and oral discussions are indicated, but not independently supported as admissible facts. The formatting and conversion of the FCIC files "from .eml format to .pst format", by Mr. Smoot at the request of Mr. Deng, appear overly simplistic. What is clear is that Mr. Smoot, as NARA's IT representative, held all the cards regarding provision of and access to the FCIC records by the House Oversight Committee. Mr. Deng requested assistance several times from Mr. Smoot in successfully accessing the FCIC records. For the reasons stated above, the Mr. Fulgham's supplemental declaration contains matter that is without foundation, is hearsay, and is not based on personal knowledge, and accordingly should be stricken from the record.

## CONCLUSION

At the time of CoA's FOIA request, the FCIC records were in the possession and control of NARA, subjecting them to the disclosure regime of FOIA. The Court should grant Cause of Action's Motion for Summary Judgment.

Dated:  January 22, 2013               Respectfully submitted,

<u>/s/ Karen M. Groen</u>
Karen M. Groen
(D.C. Bar No. 501846)

<u>/s/  Daniel Z. Epstein</u>
Daniel Z. Epstein
(D.C. Bar No. 1009132)
Cause of Action
1919 Pennsylvania Ave, NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
daniel.epstein@causeofaction.org
karen.groen.olea@causeofaction.org

*Counsel for Plaintiff*