UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAUSE OF ACTION,

     Plaintiff,

         v.                             Civil Action No. 12-1342 (JEB)

NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION,

     Defendant.

## MEMORANDUM OPINION

In 2009, in the wake of the recent financial upheaval, Congress passed the Fraud

Enforcement and Recovery Act, Pub. L. No. 111-21, 123 Stat. 1617 (2009).  Among other

things, FERA created the Financial Crisis Inquiry Commission, a temporary, 10-member,

bipartisan body established within the legislative branch to "examine the causes, domestic and

global, of the current financial and economic crisis in the United States."  Id., § 5(a).  The FCIC

completed its investigatory work, submitted a report to Congress in early 2011, and terminated

pursuant to the statute a few weeks later.  Shortly after the Commission ceased to exist, its

records were transferred to the National Archives and Records Administration, the Defendant in

this case, for preservation and processing.

Plaintiff Cause of Action submitted a Freedom of Information Act request to NARA on

October 3, 2011, seeking copies of the FCIC's records.  NARA denied this request, explaining

that as the FCIC was a commission established within the legislative branch, its records were

legislative records not subject to FOIA.  After Cause of Action unsuccessfully appealed this

initial denial, it filed this suit on August 14, 2012, alleging that NARA's failure to disclose the requested records violated FOIA.

NARA has now brought the instant Motion to Dismiss or, in the alternative, for Summary Judgment, arguing again that the FCIC's records are legislative records beyond the scope of FOIA.  Cause of Action has filed a Cross-Motion for Summary Judgment, as well as a Motion to Strike certain declarations filed as exhibits to NARA's Motion.  Because the Court finds that the FCIC records are not agency records subject to FOIA, it will grant NARA's Motion to Dismiss and deny as moot Plaintiff's Cross-Motion for Summary Judgment, as well as its Motion to Strike the particular declarations.

## I.     Background

The Financial Crisis Inquiry Commission was created as a temporary body within the legislative branch.  See FERA, § 5(a).  According to the Complaint, the FCIC submitted its concluding report to Congress on January 27, 2011, and terminated by statute on February 13.  See Compl., ¶¶ 13-14.  Meanwhile, on February 10, Phil Angelides, Chairman of the Commission, wrote to David Ferriero, Archivist of the United States (the head of NARA), describing a number of restrictions the FCIC wished to impose on future access to its records, which were to be housed by NARA upon the Commission's termination.  See id., ¶ 15 & Exh. 1 (Angelides Letter).  The next day, the records were transferred to NARA, and that transfer was memorialized by the signing of a Standard Form Agreement between the FCIC and NARA.  See id., ¶ 17 & Exh. 2 (Standard Form 258).  Additional details about the restrictions and transfer are set forth in Section III.B, infra.

Plaintiff Cause of Action, a public interest organization, submitted the FOIA request that is the subject of this suit to NARA on October 3, 2011, seeking all FCIC records.  See id., ¶ 31 &

Exh. 3 (FOIA Request).  NARA denied Plaintiff's request, as well as the appeal of that denial.

Plaintiff subsequently filed this suit on August 14, 2011.  The Court now considers Defendant's

Motion to Dismiss, Plaintiff's Cross-Motion for Summary Judgment, and Plaintiff's Motion to

Strike NARA's declarations.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a suit when the

complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to

dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff

the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air

Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks

omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as true,

however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by

the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations"

are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to

state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation

omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very

remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief

above the speculative level."  Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416

U.S. 232, 236 (1974)).

In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts may consider

"the facts alleged in the complaint, any documents either attached to or incorporated in the

complaint and matters of which [the court] may take judicial notice." <u>Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997).  "Documents that are referenced in, or are an integral part of, the complaint are deemed not 'outside the pleadings'" for purposes of a motion to dismiss for failure to state a claim.  <u>Norris v. Salazar</u>, --- F. Supp. ---, 2012 WL 3541710, at *3 n.9 (D.D.C. Aug. 17, 2012).   Because the Court can grant Defendant's Motion to Dismiss relying only on the Complaint and those documents referenced therein, it will not address the separate legal standards applicable to Plaintiff's Cross-Motion for Summary Judgment or its Motion to Strike the declarations.

## III.   Analysis

FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  A FOIA plaintiff states a claim where it properly alleges that "'an agency has (1) improperly (2) withheld (3) agency records.'"  <u>United States Dep't of Justice v. Tax Analysts</u>, 492 U.S. 136, 142 (1989) (quoting <u>Kissinger v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 150 (1980)).  For purposes of FOIA, however, the definition of an "agency" specifically <u>excludes</u> Congress, legislative agencies, and other entities within the legislative branch.  <u>See</u> 5 U.S.C. §§ 551(1), 552(f); <u>see also</u> <u>United We Stand Am., Inc. v. Internal Revenue Serv.</u>, 359 F.3d 595, 597 (D.C. Cir. 2004) ("The Freedom of Information Act does not cover congressional documents."); <u>Washington Legal Found. v. United States Sentencing Comm'n</u>, 17 F.3d 1446, 1449 (D.C. Cir. 1994) ("[W]e have interpreted the . . . exemption for 'the Congress' to mean the entire legislative branch [including legislative agencies].").

Neither party seriously disputes that at the time the records were created by the FCIC, a congressional entity "established in the legislative branch," see FERA, § 5(a), they were congressional documents exempt from FOIA.  This case, then, turns on whether the records, once transferred to NARA, became "agency records" subject to FOIA.

The parties here each answer this question using a different analytic framework. Defendant essentially argues for a *per se* rule that congressional records transferred to NARA retain their legislative character and thus remain exempt from FOIA; in other words, NARA's current physical custody and control of the records does not make them agency records.  See Mot. at 9.  In contrast, Cause of Action maintains that NARA's custody and control of the records is dispositive: since NARA is an "agency" subject to FOIA, records in its possession are, by definition, agency records.  See Pl. Opp. and Cross-Mot. at 2-3.  The Court, ultimately, need not rule on NARA's proposal because, even under Plaintiff's control-based framework, these particular records did not become "agency records" subject to FOIA when they were transferred to NARA for storage.

A.  NARA's Framework

Although NARA points to no binding authority specifically dictating that legislative records transferred to it retain their legislative character for FOIA purposes, it does cite legislative, judicial, and administrative sources supporting the more general proposition that the transfer of records to NARA does not change their FOIA status.  First, in Ricchio v. Kline, 773 F.2d 1389 (D.C. Cir. 1985), the D.C. Circuit held that President Nixon's records, which had been transferred to NARA's legal custody under the Presidential Recordings and Materials Preservation Act (PRMPA), 44 U.S.C. § 2111, did not become subject to FOIA by virtue of their transfer.  See id.  Instead, the court held that "the proper method by which . . . [plaintiff] may

seek disclosure of the Watergate Force transcripts of the Nixon tapes is by proceeding under the [PRMPA] and that she cannot proceed under the Information Act." 773 F.2d at 1395.  Ricchio declined to address the specific question of whether the Nixon materials became "agency records" for FOIA purposes, but held instead that they were outside FOIA, and access to them was governed by the PRMPA.  Id.  The court thus acknowledged that some records held by NARA are not subject to FOIA, and that the transfer of such records to NARA's physical and legal custody does not change this special status.  See id.  Although Ricchio concerned presidential rather than congressional materials, its core teaching – that NARA's physical and legal custody of records does not control their FOIA eligibility – appears applicable here.

Likewise, the Presidential Records Act of 1978, 44 U.S.C. § 2201 et seq., which governs the disposition of presidential records at the conclusion of each administration, codifies the same concept.  Under the PRA, presidential records are transferred to NARA's legal custody and control at the end of each administration, but most remain generally unavailable to the public for at least five years.  See §§ 2202, 2203(f), 2204(a)-(b).  After this preliminary exclusionary period, "Presidential records shall be administered in accordance with [FOIA], . . . and for the purposes of [FOIA] . . . [are] deemed to be records of the National Archives and Records Administration."  See § 2204(c)(1).  PRA materials must not, accordingly, be "records of the National Archives and Records Administration" for FOIA purposes during the time between their transfer to NARA's legal custody and the conclusion of this preliminary exclusionary period.  See TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001) (it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (internal quotation marks omitted).  While the PRA applies only to presidential records, it lends additional

support to the idea that not all records transferred to NARA's legal custody and control become subject to FOIA immediately upon transfer.

NARA's own regulations further support this distinction.  When NARA revised its regulations interpreting FOIA and the Federal Records Act, it explicitly rejected the idea that "all records in the custody of [NARA] should be governed by FOIA . . . . including the records of Congress and judicial branch records that have been deposited with NARA for preservation." See 66 Fed. Reg. 16374.  NARA's final regulation, furthermore, made clear that NARA "believe[d] that 44 U.S.C. § 2107 allows [NARA] to accept for deposit Congressional and court records of historical value and that accepting these records does not make them records of the executive branch for purposes of FOIA."  Id.

Together, these three sources of authority recognize that the transfer of records to NARA does not necessarily "make them records of the executive branch for purposes of FOIA."  See id. This makes sense given NARA's unique nature.  As the repository for federal records of all kinds – including ones from the judicial and legislative branches – NARA does not "possess" documents in the same manner as other executive agencies.  See, e.g., Ann H. Wian, Note, The Definition of "Agency Records" under the Freedom of Information Act, 31 Stan. L. Rev. 1093, 1111 (1979) (generally proposing that "where an agency acts simply as a warehouse, and holds congressional, court, or presidential documents which it has made, and will make, no use of, it would be consistent with the purposes of the Act to deny disclosure on the grounds that such documents are not 'agency records'"); see also In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc., 184 F. Supp. 2d 1353, 1364 (N.D. Ga. 2002) (recognizing that "neither the transfer of documents to a federal storage facility nor their physical handling and review by public employees make such documents part of the public record") (citing Fund for Constitutional

7

Gov't v. Nat'l Archives and Records Serv., 656 F.2d 856 (D.C. Cir. 1981)).  In addition, because

NARA's exclusive function is to store and maintain records, its mere possession and processing

of the documents would reveal nothing about its decisionmaking processes, a key objective of

FOIA.  See Berry v. Dep't of Justice, 733 F.2d 1343, 1349-50 (9th Cir. 1984) (discussing how

FOIA's goal of "allow[ing] the public to determine how agencies reach decisions" is advanced

where documents in question are used in agency decisionmaking process).  To treat all records in

NARA's custody as "agency" records would seem to ignore these critical distinctions.

The Court, nevertheless, need not endorse NARA's broad proposal in order to decide this

case.  Instead, it is able to rule for Defendant even under the commonly used control-based test.

B.  Agency Records?

 "To qualify as an 'agency record' subject to FOIA disclosure rules, 'the agency must

either create or obtain the requested materials,' and 'the agency must be in control of [them] at

the time the FOIA request is made.'"  Burka v. Dep't of Health and Human Servs., 87 F.3d 508,

515 (D.C. Cir. 1996) (quoting Tax Analysts, 492 U.S. 136, 144 (1989)) (some internal quotation

marks omitted; brackets in original).  There is no dispute that NARA obtained the materials,

which were directly transferred to it from the FCIC.  The question is whether NARA was in

control of them.

As a preliminary matter, "mere physical location of papers and materials" does not confer

"agency-record" status.  Kissinger, 445 U.S. at 157; see also Goland v. CIA, 607 F.2d 339, 345

(D.C. Cir. 1978) ("we reject plaintiffs' argument that an agency's possession of a document per

se dictates that document's status as an 'agency record'") (footnote omitted).  Instead,

> this circuit has identified four factors relevant to a determination of
> whether an agency exercises sufficient control over a document to
> render it an "agency record": "(1) the intent of the document's
> creator to retain or relinquish control over the records; (2) the

> ability of the agency to use and dispose of the record as it sees fit;
> (3) the extent to which agency personnel have read or relied upon
> the document; and (4) the degree to which the document was
> integrated into the agency's record system or files."

Burka, 87 F.3d at 515 (quoting Tax Analysts v. Dep't of Justice, 845 F.2d 1060, 1069 (D.C. Cir.

1988), aff'd other grounds, 492 U.S. 136).

The first factor – the intent of the document's creator to retain control – clearly weighs in

favor of a finding that the records are outside FOIA's scope. The FCIC here has "manifested its

own intent to retain control" of the records. Paisley v. CIA, 712 F.2d 686, 693 (D.C. Cir. 1983),

vacated in part on other grounds, 724 F.2d 201 (D.C. Cir. 1984). It has done so through

"contemporaneous and specific instructions . . . limiting either the use or disclosure of the

documents." Id. at 694; see also id. at 692 (in considering "Congress' continuing intent to

control a document," one factor to consider is "the conditions under which it was transferred to

the agency"). The letter sent from Chairman Angelides to NARA when the records were

transferred specifically stated that "the FOIA will not apply to Commission records even after

they are transferred to NARA," and recommended that "records not already publicly available

should be made available to the public . . . consistent with the terms of this letter, beginning on

February 13, 2016." See Angelides Letter at 1. Likewise, the letter imposed four specific

restrictions beyond this initial period, including:

> Records should not be disclosed immediately after February 13,
> 2016, if they contain (a) personal privacy information that the
> Commission agreed to protect from public disclosure for longer
> than 5 years; (b) confidential financial supervisory or regulatory
> information which remains sensitive at the time of release; (c)
> proprietary business information which remains confidential or
> contains trade secrets at the time of release, including any such
> information that the Commission has agreed will remain
> confidential for a longer period of time; or (d) information which is
> otherwise barred from public disclosure by law, as determined by
> [NARA].

9

Id.  When the form transferring the documents was signed, it expressly incorporated the

Angelides letter and, along with it, these restrictions on disclosure.  See SF-258.  The SF-258

also includes additional indicia of the FCIC's intent to control future access to its records: it was

hand annotated to remove the reference to FOIA, and the parties answered "no" to the question

in Box 12 of the form, which asked whether the records transferred were to be fully available for

public use.  Id.

These specific, contemporaneous instructions restricting access to the FCIC records long

after their transfer to NARA mean that the first factor clearly tips in favor of a finding that the

records retain their legislative character.[1]  Because of the importance of intent in the control-

based framework, this factor carries even greater weight.  See, e.g., United We Stand, 359 F.3d

at 597 ("In this circuit, whether the [document] is subject to FOIA turns on whether Congress

manifested a clear intent to control [it]."); Paisley, 712 F.2d at 693 (if "Congress has manifested

its own intent to retain control, then the agency – by definition – cannot lawfully 'control' the

documents").

The second factor – "the ability of the agency to use and dispose of the record as it sees

fit" – benefits NARA largely for the reasons just articulated.  NARA does not have wide

discretion in its use and disposal of the FCIC records because of the specific limiting instructions

placed on the records at the time they were transferred.  Similarly, the third factor, which

considers "the extent to which agency personnel have read or relied upon the document," tilts the

same way since NARA is merely a repository, and its personnel do not act in reliance on these

---

[1] While Plaintiff argues that because Chairman Angelides "is not a member of Congress . . . [he] cannot . . . express the will of Congress," see Pl. Opp. and Cross-Mot. at 11, 31-32, the law of this Circuit is clear that actions by an agent of Congress – including a senior staff member of a Congressional Committee, or, here, a senior Congressional appointee of a legislative body – are sufficient.  See United We Stand, 359 F.3d at 595.

types of documents.  The Court may, for purposes of this Motion, presume that the final factor –

namely, the records' integration into NARA's system – favors Plaintiff since the essential

reasons for depositing records at NARA are categorization and safekeeping.  To the extent that

the records were integrated into NARA's system, however, that system only serves the purpose

of categorizing and preserving documents, rather than agency decisionmaking, and this fact thus

carries little weight.

A weighing of the factors, therefore, tips decisively in favor of NARA and a conclusion

that the FCIC's documents are not "agency records" subject to FOIA.  The Court will,

accordingly, grant Defendant's Motion to Dismiss.

C.  <u>Procedural Considerations</u>

In addition to its substantive arguments, Plaintiff also raises several procedural points in

opposing NARA's Motion to Dismiss.  First, Plaintiff moved to strike two declarations appended

to the Motion or, in the alternative, for leave to take limited discovery prior to the Court's

consideration of Defendant's Motion as one for summary judgment.  <u>See</u> Pl. Mot. to Strike (ECF

No. 14).  Because the Court is able to resolve NARA's Motion to Dismiss without resort to these

declarations, the Court will deny Plaintiff's Motion as moot.  Likewise, Plaintiff also argues that

because Defendant failed to submit a statement of undisputed material facts in support of its

Motion, it must be denied for failure to comply with Local Rule 7(h).  <u>See</u> Pl. Opp. and Cross-

Mot. at 11-12.  Since the Court dismisses the case without considering summary judgment, this

argument is moot as well.  No statement of facts need be appended to a motion to dismiss, so

Defendant's Motion suffers from no procedural shortcoming.

**IV.     Conclusion**

For the aforementioned reasons, the Court will grant Defendant's Motion to Dismiss,

deny Plaintiff's Cross-Motion for Summary Judgment, and deny as moot Plaintiff's Motion to

Strike the declarations.  A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 1, 2013